# EXHIBIT 33

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.

     Plaintiffs,

         v.

ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

     Defendants.

Case No. 1:25-cv-00196

## DECLARATION OF CHRISTINA TAN

I, Christina Tan, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.     I am the State Epidemiologist and Assistant Commissioner of the Division of Epidemiology, Environmental, and Occupational Health at the New Jersey Department of Health (NJDOH). The information in the statements set forth below were compiled through personal knowledge, through NJDOH personnel who have assisted in gathering this information, or from documents that have been provided to and reviewed by me.

2.     I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

3.     I am an Assistant Commissioner at the NJDOH, where I have been serving as the State Epidemiologist and Assistant Commissioner since 2009 and previously served as the Medical Director of the Communicable Disease Service since 2002.  During this time, I have directed investigations, public health responses, and planning efforts regarding numerous emerging issues such as West Nile virus, bioterrorism-related anthrax, SARS, pandemic H1N1

influenza, post Hurricane Sandy efforts, vinyl chloride release associated with a train derailment, imported viral hemorrhagic fever cases, Zika, e-cigarette/vaping product use-associated lung injuries, and COVID-19. I am board-certified in internal medicine and completed an applied epidemiology fellowship with the US Centers for Disease Control and Prevention.

4.      NJDOH's Consumer, Environmental, and Occupational Health Service (CEOHS) serves New Jersey communities and workers through activities aimed at improving the health and well-being of all residents. At the core of its mission are preventive initiatives to decrease disease and injury by reducing exposure to chemical, physical and biological hazards. Its activities are organized into three programs, including Environmental and Occupational Health Surveillance, Public Health and Food Protection, and Environmental and Occupational Health Assessment. Its services include child care center health assessments, hazardous site health evaluation, food and drug safety, asbestos and lead training and certification, and environmental and occupational disease surveillance.

5.      CEOHS regularly partners with NIOSH to fulfill its mission. It relies on NIOSH to:

  a. Provide support in developing the ability to monitor work-related injuries, illnesses, exposures, and fatalities among New Jersey workers and develop interventions to reduce diseases and injuries.

  b. Provide assistance in establishing systems for the collection of information concerning the nature and frequency of occupational injuries and diseases. For example, NIOSH provided guidance in the implementation of the NIOSH Industry and Occupation Computerized Coding System (NIOSCCS) in the

NJDOH Communicable Disease Reporting and Surveillance System (CDRSS) to

autocode industry and occupational for all disease conditions collected.

c.  Provide technical assistance from NIOSH's Health Hazard Evaluation (HHE) unit

to conduct investigations and develop intervention strategies and

recommendations for workers exposed to hazardous substances.

d.  Identify priority areas based on state level surveillance data and case studies,

resulting in the development of recommendations for worker protection and

developing public health interventions at the state level.

e.  Provide a forum for states to discuss recommendations to protect workers during

emergent events such as COVID-19 and avian influenza.

6.      It is my understanding and belief that as a result of the massive reduction in force

across HHS, over 90% of the staff of the National Institute for Occupational Safety and Health

(NIOSH), housed in the Centers for Disease Control and Prevention (CDC), have been placed on

administrative leave and will be permanently terminated on or after June 1, 2025.

7.      Since April 1, 2025, NJDOH has seen significant changes in its interactions with

NIOSH.  CEOHS lost all contact with NIOSH following the April 1, 2025 Reduction In Force

(RIF).  The Project Officer role, which had been primarily responsible for ensuring grant

deliverables were met, providing information on when annual and progress reports were due as

well as information on new grant applications, was eliminated as a result of the RIF. CEOHS has

received no information on whether or if this position will be replaced.

8.      The gutting of NIOSH staff overall has and will continue to harm New Jersey.

For years, NJDOH has regularly partnered with NIOSH for surveillance and outreach related to

workplace injuries and illnesses. NIOSH compiles data on occupational injuries, illnesses, and

fatalities nationwide. This is critical because NIOSH's compilation of state-level data provides states, including New Jersey, more insight into occupational health issues and emerging trends. For example, NIOSH recently compiled data on silica exposure from sanding granite countertops that proved essential for New Jersey to develop its response and strategy.

9.      NIOSH is also one of the few programs within CDC that conducts industry-specific research on work-related illnesses and injuries that is not performed at the state level. Data and publications from these projects conducted by NIOSH will not be available, making it difficult for NJDOH to create recommendations and outreach material for certain New Jersey working populations. This is particularly notable for industries such as fire protection and healthcare, which rely on NIOSH to ensure their respirators, and other personal protective equipment, are certified.

10.      Without NIOSH staff in place, NJDOH also will not be able to access data that NIOSH compiles on a national level. For example, the NIOSH Industry and Occupation Computerized Coding System (NIOCCS), which is a web-based software tool created to translate industry and occupation text into standardized industry and occupation codes, will no longer be maintained.  NIOCCS is used to code industry and occupation of all disease conditions in NJDOH's CDRSS. As a result of the elimination of NIOCCS, standardization of the collection of work-related injuries and illnesses to identify at risk industries and occupations will be impacted. Efforts to rapidly identify worker populations most at risk for all diseases will be compromised. Additionally, data from NIOSH's investigations of fire fighter fatalities to formulate recommendations for prevention of future deaths and injuries will not be available. These data are used to create outreach materials for protecting New Jersey fire fighters, and fire departments across the state will not have access to findings and recommendations.

11.     With respect to personal protective equipment, the loss of the National Personal Protective Technology Laboratory will also have an impact on worker protection in New Jersey. The National Personal Protective Technology Laboratory certifies the self-contained breathing apparatus, which prevents using unapproved aftermarket parts, such as air cylinders.

12.     Beyond compiling data, the loss of NIOSH staff and expertise will have extensive impacts on NJDOH. NIOSH staff lead discussions with state partners on priority areas and case studies based on the compilation of state-level surveillance data from throughout the country. These discussions have resulted in recommendations for worker protection at the state level against the avian influenza, chemical and toxic substances exposure, and youth worker injuries and fatalities. The gutting of NIOSH means New Jersey will lose this critical partnership and actionable recommendations from NIOSH that protect New Jersey workers. Additionally, NIOSH staff collaborate with states on publishing key findings based on state surveillance data to report on emergent events and sentinel events to raise awareness and develop intervention strategies nationally.

13.     Without NIOSH staff in place, NJDOH will also no longer be able to request technical assistance from NIOSH's Health Hazard Evaluation (HHE) unit to investigate and develop intervention strategies and recommendations for workers exposed to hazardous substances. Recent examples of the HHE's work in New Jersey include responding to and evaluating a municipal building in Princeton for mold exposure and concerns about cancer incidence, a metals processing facility in Deptford where employees were being exposed to lead, and a train derailment in Gloucester County, where first responders were exposed to vinyl chloride.

14.     NJDOH's partnership with NIOSH's HHE has been critical to respond to workplace hazardous material exposures. The NIOSH HHE is able to provide authoritative assistance in evaluating new and recurring workplace health hazards. The HHE also allows a more hands-on approach to working directly with employers in New Jersey to help keep their workers safe, which usually cannot be provided by NJDOH alone. NIOSH can go onsite and evaluate the workplace, identify and make recommendations to interrupt exposure pathways where federal Occupational Safety and Health Administration (OSHA) and state Public Employees Occupational Safety and Health (PEOSH) regulatory authority is limited. This means that NIOSH can identify more nuanced and complex exposure pathways beyond those identifiable by NJDOH, OSHA, or PEOSH, and ultimately, drawing on its expertise in current research and innovative best practices, provide immediate feedback and recommendations for worker health and safety.   Indeed, where NJDOH and other federal entities would encounter extensive regulatory delay, NIOSH HHE is able to immediately provide authoritative assistance in evaluating new and recurring workplace health hazards. NIOSH HHE can work directly with employers in New Jersey to keep their workers safe through onsite evaluation and detailed recommendations to respond quickly to any emergent issue. A recent example includes the above-mentioned metals processing facility. Without NIOSH's assistance, NJDOH's ability to respond to new hazards will be meaningfully impeded.

15.     In addition to the loss of on-site partnership and the ability to rely on industry-specific data, the loss of NIOSH funding will also significantly and negatively impact New Jersey.  NJDOH is currently in Year Four of a five-year program award. On April 24, 2025, NJDOH received a communication from a NIOSH-funded Education and Research Center who indicated they were asked to notify states that the end date of our program had been changed

from June 30, 2026 to June 30, 2025. Based on this communication, NJDOH does not expect to receive funding for the fifth year of its program as it had expected, and all NIOSH funding is expected to end at the end of the current budget cycle on June 30, 2025. Lack of NIOSH funding will harm New Jersey directly because NJDOH has relied on NIOSH funding to track and address occupational injuries, illnesses, and fatalities. With NIOSH funding, NJDOH has tracked and addressed adult lead poisoning, lung diseases such as silicosis and asbestosis, extreme weather events, and other communicable diseases. NIOSH funding also supports 47% of a full-time employee Research Scientist 2 within NJDOH.

16.     Losing NIOSH has been and will be devastating for NJDOH. NIOSH has developed subject-matter expertise that is irreplaceable and critical to NJDOH's mission to protect the health and wellbeing of New Jersey residents. Without access to NIOSH's Subject Matter Experts, and without being able to predict what next crisis may occur, NJDOH will struggle to effectively respond to crises by having to figure out where specific expertise may lie while simultaneously being forced to find alternative funding for staff as well as surveillance systems and applications.

17.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 7, 2025, at Trenton, New Jersey.

*Christina Tan*
_____
Christina Tan