# EXHIBIT 36

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>    Defendants. | Case No. 1:25-cv-196 |

## DECLARATION OF ERIC BERG

I, Eric Berg, declare under penalty of perjury, pursuant to 28 U.S.C. section 1746, that the foregoing is true and correct:

1. I am the Deputy Chief of Health for California's Division of Occupational Safety and Health (Cal-OSHA) at the Department of Industrial Relations (DIR). I have personal knowledge of the facts set forth in this declaration, and if required to testify, would and could competently do so.

2. I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

3. I have been Deputy Chief of Health for Cal-OSHA since 2015, and began my career in Cal-OSHA in 1997 as an industrial hygienist. I hold a Masters of Public Health Degree in Environmental Health Engineering and Bachelor of Science Degree in Civil Engineering.

4. As Deputy Chief of Health for Cal-OSHA, I am responsible for the following offices at Cal-OSHA:

- Medical Unit,

- Research and Standards Health Unit,

- Research and Standards Safety Unit,

- Calibration and Inventory Control Laboratory,

- Asbestos and Carcinogen Unit,

- Crane Unit,

- Census of Fatal Occupational Injuries, and

- Research Data Unit.

5. One of my key roles as Deputy Chief of Health is to administer and execute the investigation, research, and development of occupational health standards for California, which are codified in Title 8 of the California Code of Regulations. Some of the recent standards I have worked on include: Workplace Violence Prevention in Healthcare; Indoor Heat Illness Prevention; Occupational Exposures to Respirable Silica; Process Safety Management in Refineries; Hotel Housekeeping Musculoskeletal Injury Prevention; Agricultural Personnel Transport Carriers; Protection from Wildfire Smoke, Lead, Airborne Contaminants; and COVID-19 Prevention.

6. Cal-OSHA's mission is to protect and improve the health and safety of workers in California, and the safety of passengers riding on elevators, amusement rides, and tramways – through the following activities:

- Setting and enforcing standards

- Providing outreach, education, and assistance

- Issuing permits, licenses, certifications, registrations, and approvals

7. Pursuant to the California Occupational Safety and Health Act of 1973 (California Labor Code section 6300 et seq.), Cal-OSHA has "the power, jurisdiction, and supervision over

every employment and place of employment in the state, which is necessary … [ ] to enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment." (California Labor Code section 6307.)

8. Pursuant to California Labor Code section 147.1, Cal-OSHA is responsible for determining the necessity for occupational health standards, and to develop, present, and propose occupational health standards for adoption.

9. Pursuant to California Labor Code section 144.6, occupational health standards developed by Cal-OSHA, to the extent feasible, must ensure that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to a hazard regulated by the standard for the period of their working life.

10. Pursuant to California Labor Code section 147.1, Cal-OSHA is required to maintain liaison with the National Institute for Occupational Safety and Health ("NIOSH"), which is housed in the Centers for Disease Control and Prevention ("CDC"), within the U.S. Department of Health and Human Services ("HHS") in the development of recommended federal standards.

11. It is my understanding and belief that, as a result of the massive reduction in force (RIF) across HHS, over 90% of the staff of NIOSH have been placed on administrative leave and will be permanently terminated on or after June 1, 2025.

12. Established in 1970 under the federal Occupational Safety and Health Act, NIOSH was created alongside the Occupational Safety and Health Administration ("OSHA") to protect workers across the country. While OSHA enforces workplace safety regulations, NIOSH

focuses on science, research, laboratory testing, quality assurance, and education and training to improve occupational safety and health in the United States.

13. NIOSH is the sole agency in the United States responsible for conducting studies and other comprehensive reviews of workplace physical and chemical hazards. NIOSH has issued hundreds of authoritative publications that determine the exposure limits to prevent acute and chronic work-related diseases and injuries, including cancer.

14. Losing NIOSH would be devastating for Cal-OSHA and California as a whole.

15. NIOSH is the sole agency in the United States responsible for testing and certifying respirators to protect workers against inhaling toxic chemicals, dusts, and infectious agents. Employers must use NIOSH-approved respirators when required by federal OSHA and Cal-OSHA standards to prevent acute and chronic diseases of the lung, nervous system, kidney and liver, and to prevent cancer and other serious diseases and conditions. From 2021-2023, there were 1,776 respirator models that were evaluated by NIOSH.

16. Losing NIOSH will prevent California workers from accessing high-quality respirators to protect them from toxic exposures. Per federal and state law, respirators must be certified by the National Personal Protective Technology Laboratory ("NPPTL") (https://www.cdc.gov/niosh/divisions-offices/personal-protective-tech-lab.html) of NIOSH. The elimination of the NIOSH NPPTL means that there is no way for California workers and employers to get access to improved and new respirators, as there is no method for them to be certified with the elimination of NIOSH NPPTL.

17. NIOSH NPPTL was policing the sales of imported fraudulent and counterfeit respirators (https://www.cdc.gov/niosh/ppe/counterfeit_respirators/index.html) that do not provide meaningful protection to workers. These fraudulent imports put workers at great risk and

reduce workers' access to American-made bona fide respirators. Shutting down NIOSH NPPTL rewards foreign manufacturers who have not made the same investments in quality and safety while reducing American workers' access to reliable, high-quality protective equipment that actually meet NIOSH standards.

18. Losing NIOSH is preventing Cal-OSHA from moving forward on a working model of a new respirator for firefighters in wildland and urban interface fires, which was already in motion with NIOSH prior to the RIF Directive. The development of all other new respirators and new respiratory protection technology for use in America will be halted. Also, respirator manufacturers will be unable to make any changes or improvements to existing respirators. Major American respirator manufacturers are continually making improvements to their products and are selling their newer products overseas, but not in America, as they cannot be certified here due to the shuttering of NIOSH NPPTL. California workers who will be severely impacted by this loss include the following: firefighters at risk of chronic obstructive pulmonary disease (COPD) and lung cancer caused by toxic smoke from wildland and urban interface fires; agricultural workers at risk of stroke and heart disease caused by wildland fires; construction workers at risk of pneumonia caused by Coccidioidomycosis (Valley Fever); nurses at risk of respiratory illnesses caused by infectious agents in hospitals (tuberculosis, COVID-19, measles); and dairy and poultry workers at risk from avian influenza (Bird Flu).

19. NIOSH is the sole agency in the United States that responds to outbreaks of disease and injury caused by toxic substances, excessive noise, extreme temperatures, vibration, other physical hazards, and infectious agents in the workplace. Through the NIOSH Health Hazard Evaluation (HHE) (https://www.cdc.gov/niosh/hhe/default.html) program, California employers, employees and State agencies request technical assistance from NIOSH experts in

occupational medicine, industrial hygiene, and engineering to evaluate and help control workplace injury and disease outbreaks. NIOSH has conducted 187 HHE investigations in California, including large-scale studies after an outbreak of bronchiolitis obliterans ("popcorn lung") in food flavoring workers. The NIOSH studies of food flavoring workers provided the scientific information that was needed and used by Cal-OSHA for standards to control exposure to the artificial flavor diacetyl. Cal-OSHA also depended on NIOSH's HHE Program for development of the 2024 silica, lead, and indoor heat illness prevention regulations. Such studies from NIOSH will no longer be conducted and available for future Cal-OSHA rulemaking.

20. Losing NIOSH means that funding for eighteen education and research centers (ERC Program) (https://www.cdc.gov/niosh/extramural-programs/php/about/ercs.html) will be lost. The ERC Program, established in 1977, conducts research and offers professional training in occupational safety and health in areas such as industrial/occupational hygiene, ergonomics, occupational epidemiology, toxicology, and occupational medicine. The ERC supports faculty research and student training, graduate students and post-graduate (master's and doctoral) trainees at accredited occupational health programs at UC Berkeley, UC Davis, UC San Francisco and UCLA. The University of California campuses provide the only occupational health professional degree programs in the state, including two occupational medicine residency programs, ensuring a steady supply of workforce safety and health specialists for employers, including the California Department of Public Health (CDPH), and Cal-OSHA. Research and science conducted at these UC programs help identify and find cures for chronic diseases caused by occupational exposures. The UC-based research and training programs receive $3.6 million in annual NIOSH support and have trained over 750 occupational health specialists over the past decade. There is already a deficit of occupational health specialists in California to meet the

needs of the growing workforce, and NIOSH cuts will end all these training and education programs.

21. Losing NIOSH means that it will no longer develop criteria for recommended occupational safety and health standards (https://www.cdc.gov/niosh/pubs/all_niosh_desc.html). Cal-OSHA frequently relies upon and used these NIOSH criteria as a starting point for its rulemaking proposals, such as the heat illness prevention, ergonomics, lead, silica, and many other toxic substance regulations.

22. Losing NIOSH means that it will no longer publish groundbreaking research for worker protection. For example, one of NIOSH's innovative studies produced data for OSHA and Mine Safety and Health Administration regulations, which were later adopted by California, to limit exposure to toxic chemicals and dusts such as lead, vinyl chloride, silica, coal dust and beryllium.

23. The RIF will eliminate support for state-based occupational disease surveillance (https://simpler.grants.gov/opportunity/357417), which has been vital in tracking the burden of work-related illness and injury and uncovering outbreaks. For example, Cal-OSHA relied on data tracking artificial stone silicosis among California countertop workers to support its 2024 silica rulemaking. NIOSH is the sole agency in the United States that maintained national registries of occupational illnesses and diseases and collects and releases detailed information about the causes of workplace deaths through support of State-based public health tracking and investigation programs.

24. The RIF will also shut down the Fatality Assessment and Control Evaluation (FACE) Program (https://www.cdc.gov/niosh/face/about/index.html), which is critical in identifying factors that contribute to fatal injuries at work and developing recommendations for

prevention. California has its own FACE program (https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/OHB/FACE/Pages/FACE.aspx) that is funded by NIOSH, but, as a result of Defendants' actions, it is also being defunded and shut down. Cal-OSHA used the national and California FACE reports in its rulemaking and enforcement actions.

25. Losing NIOSH means it will stop producing the wealth of educational materials (https://www.cdc.gov/niosh/pubs/default.html) related to occupational safety and health used regularly by Cal-OSHA staff, workers, unions and employers.

26. Due to the RIF, the non-profit Center for Construction Research and Training (CPWR) (https://www.cpwr.com), which provides services to the construction industry and is largely funded by NIOSH grants, has been forced to terminate its CPWR's Small Studies program (https://www.cpwr.com/research/small-studies-program/). CPWR's research-to-practice program (https://www.cpwr.com/research/research-to-practice-r2p/), which support the falls, struck-by and other national campaigns for the construction industry, will be significantly reduced or terminated.

27. Losing NIOSH means that the NIOSH National Construction Center https://www.cdc.gov/niosh/extramural-programs/php/about/construction-center.html), which is administered by CPWR, will likely be forced to shut down.

28. Losing NIOSH means that all National Occupational Research Agenda (NORA) (https://www.cdc.gov/nora/default.html) Programs will be cancelled and shut down. NORA is a partnership program of multiple stakeholders to stimulate innovative research and improved workplace practices in specific industries. NORA includes 10 industrial sector councils that develop strategic objectives for their industry to research and address.

29. Losing NIOSH means that for the California construction industry, there will be less: investigation, research and studies on construction industry risks and hazards; generation of practical solutions for protecting workers; and safety and training for the construction industry.

30. Losing NIOSH means the end of the National Firefighter Registry for Cancer (https://www.cdc.gov/niosh/firefighters/registry/index.html) to study cancer among firefighters. Firefighters are exposed to many toxic substances that can increase their risk of developing cancer. The research aimed to find answers about how cancer risk may vary across our nation's diverse fire service, but this research will be discontinued before its completion.

31. Losing NIOSH means the end of the Fire Fighter Fatality Investigation and Prevention Program (https://wwwn.cdc.gov/NIOSH-fire-fighter-face/). NIOSH conducted investigations of firefighter line-of-duty deaths to formulate recommendations for preventing future deaths and injuries and for learning from these tragic events and preventing future similar events.

32. Losing NIOSH ultimately will result in greater morbidity and mortality for California's workers.

33. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on May 8, 2025 in Oakland, California.

*Eric Berg*

_____
Eric Berg
Deputy Chief of Health, Cal-OSHA
California Department of Industrial Relations