UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, et al.,<br><br>    Defendants. | Civil Action No. 1:25-cv-00196<br><br>**EXPEDITED RELIEF REQUESTED** |

**DEFENDANTS' MOTION TO VACATE PRELIMINARY INJUNCTION
OR, IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL**

    The United States Supreme Court's entry of a stay pending appeal this week in *McMahon v. New York*, 606 U.S. __, 2025 WL 1922626 (July 14, 2025) (Mem.), reflects the Court's determination that the Government is likely to prevail against a challenge to a reduction-in-force (RIF) at the Department of Education. The First Circuit's contrary decision underlay much of this Court's reasoning for granting a preliminary injunction here. A second preliminary-injunction order on which this Court placed significant reliance—and which covered the same RIFs and restructuring at issue in this case—has also now been stayed by the Supreme Court. *Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. __, 2025 WL 1873449 (July 8, 2025) (Mem.) (*AFGE 2*). The stays in those two cases make clearer than ever the infirmity of sweeping preliminary injunctions against discretionary exercises of core Executive authority. Therefore, Defendants move the Court to vacate its July 1, 2025, injunction. And because expedited relief is necessary to prevent additional irreparable harm to significant interests of the Government and public, Defendants request a ruling on this motion by July 28, 2025.

In the alternative, Defendants move for a stay pending appeal of the injunction. *See* Fed. R. App. P. 8(a)(1).[1] The Supreme Court's entry of stays in *McMahon* and *AFGE 2* makes clear that the Government should be able to proceed with reforming and streamlining Executive agencies during the pendency of litigation. Indeed, those stays necessarily reflect the Court's conclusions both that the Government is likely to succeed on merits arguments similar or identical to those it is pressing here and that the balance of harms and the equities favor the Government. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). Thus, if this Court does not vacate its preliminary injunction, it should stay the injunction pending appeal to avoid the need for yet another round of emergency appellate motions.

## BACKGROUND

**1.** On July 1, 2025, this Court entered an injunction enjoining Defendants from taking "any actions to implement or enforce the planned RIFs or sub-agency restructuring announced in" a March 27, 2025, press release "with respect to the specific sub-agencies and programs that are the subject of the instant motion for preliminary injunction." ECF No. 73 at 56. As discussed further below, the Court relied heavily on the lower courts' analysis in *McMahon* and *AFGE 2* in deciding the legal issues en route to granting the injunction.

On July 11, 2025, Defendants moved the Court to narrow its injunction consistent with *Trump v. CASA, Inc.*, Nos. 24A884, 24A885, 24A886, --- S. Ct. ---, 2025 WL 1773631 (June 27, 2025), and to clarify that the injunction applies only to six components within the Centers for

---

[1] The Solicitor General has authorized Defendants to appeal and seek a stay of this Court's injunction, *see* 28 C.F.R. § 0.20(b), and Defendants will file a notice of appeal in short order if the Court does not vacate the injunction. Defendants are filing this motion in advance of a notice of appeal to avoid any possibility of affecting this Court's jurisdiction to vacate the injunction.

Disease Control and Prevention (CDC); one component within the Office of the Assistant Secretary for Planning and Evaluation (ASPE); the Center for Tobacco Products (CTP) within the Food and Drug Administration; and the Office of Head Start (OHS) and OHS regional office staff. ECF No. 75 at 4. That motion is pending. It will be moot if the Court vacates its injunction.

**2.** The *AFGE 2* injunction restricted the contemplated RIFs and restructuring that are also at issue in this case. *See* ECF No. 73 at 57 (stating that "HHS is already enjoined, as of the entering of this Order, from moving forward with its reorganization plans, including finalizing the employee terminations" and citing *Am. Fed'n of Gov't Emps. v. Trump*, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025)); *see also id.* at 9-10. In *AFGE 2*, the plaintiffs challenged Executive Order 14210, a joint memorandum of the Office of Personnel Management and the Office of Management and Budget (the same Executive Order and memorandum under which RIFs and restructuring were contemplated in this case), and Agency RIF and Reorganization Plans (ARRPs). 2025 WL 1482511, at *6. A significant subset of the RIFs at issue were at the Department of Health and Human Services (HHS). *Id.* at *5. On the merits, the *AFGE 2* district court determined (*inter alia*) that the plaintiffs were likely to succeed in showing that the Executive Order and the memorandum were invalid. *Id.* at *24.

In its preliminary-injunction order, this Court relied on "the Ninth Circuit's reasoning and conclusion in" *AFGE 2*. ECF No. 73 at 24. Specifically, the Court relied on the Ninth Circuit's reasoning to support its holding that the Civil Service Reform Act (CSRA) does not preclude jurisdiction. *Id.* at 24-26. It also quoted the *AFGE 2* district court several times when setting up the background for analyzing "Executive [a]ction." *Id.* at 5-6.

On July 8, 2025, the Supreme Court stayed pending appeal the injunction in *AFGE 2*, thereby clearing the way for agencies to implement their RIFs and reorganization plans (to the extent not enjoined in other litigation). 2025 WL 1873449, at *1.

**3.** Although involving a different agency, *McMahon* is very similar to this case. *See* ECF No. 73 at 51 (describing *McMahon* as "a similar case"). Like this case, it involves a preliminary injunction against a RIF at an executive agency—there, the Department of Education. *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 67 (1st Cir. 2025). The legal issues are very similar: the plaintiffs in *McMahon* argued that the contemplated RIFs violated the Administrative Procedure Act (APA) and doctrines governing constitutional separation of powers and *ultra vires* action. *Id.* at 67-68. The plaintiffs included a group of states and the District of Columbia, as in this case. And the injunction issued by the District of Massachusetts looked much like the one this Court entered against Defendants here: *inter alia*, it enjoined the Department of Education "from carrying out the RIF"; "from implementing the President's March 20, 2025 Executive Order" under which the RIFs were authorized; "and from carrying out the President's March 21, 2025 Directive to transfer management of federal student loans and special education functions out of the Department." *Id.* at 68 (cleaned up).

This Court's preliminary-injunction order relied heavily on the First Circuit's order denying a stay pending appeal of the District of Massachusetts injunction. For example, the Court "look[ed] to" the First Circuit's reasoning to "conclud[e] that" the CSRA does not preclude the Court's exercise of jurisdiction and that "the States were not required to channel their claims through an administrative forum." ECF No. 73 at 24; *see also id.* at 25 (quoting the First Circuit's decision), 27 (relying on the underlying District of Massachusetts preliminary-injunction order "finding the CSRA inapplicable"). And the Court explicitly "[f]ollow[ed]" the First Circuit's

decision in determining that Plaintiffs here have established irreparable harm. *Id.* at 52; *see also id.* at 51 (quoting *Somerville* in discussion of irreparable harm).

The Court also relied on the District of Massachusetts' underlying preliminary-injunction order when addressing the merits of Plaintiffs' arbitrary-and-capricious and contrary-to-law claims under the APA. It quoted the district court's opinion when holding that "the record shows that the Defendants did not consider the 'substantial harms and reliance interests' of the States and the devastating consequences that would be felt by the populations served by these critical public health programs." *Id.* at 40 (quoting *New York v. McMahon*, 2025 WL 1463009, at *60 (D. Mass. May 22, 2025)). It cited the District of Massachusetts' opinion to support its decision not to "remand for further explanation" from Defendant HHS and to instead hold that Defendants had likely "unreasonably exercised their discretion, in violation of the APA." *Id.* at 41 (citing *McMahon*, 2025 WL 1463009, at *28). The Court also quoted the District of Massachusetts' decision when rejecting Defendants' arguments that they had acted consistent with law. *Id.* at 48 (quoting *McMahon*, 2025 WL 1463009, at *28).

On July 14, 2025, the Supreme Court stayed pending appeal the injunction in *McMahon*. 2025 WL 1922626, at *1.

## ARGUMENT

The Court should follow the Supreme Court's clear guidance and vacate the July 1 preliminary injunction. The Supreme Court's decisions "on the interim legal status of" Executive activities are entitled to great weight: they "will often constitute a form of precedent (*de jure* or *de facto*) that provides guidance throughout the United States during the years-long interim period until a final decision on the merits." *Trump v. CASA, Inc.*, 606 U.S. __, 2025 WL 1773631, at *22 (June 27, 2025) (Kavanaugh, J., concurring). The *McMahon* and *AFGE 2* stays provide particularly

weighty guidance here. They necessarily reflect the Supreme Court's conclusions that the Government's likelihood of success on the merits, "the equities," and the public interest—factors that also guide a district court's preliminary-injunction analysis—support implementation of the RIFs at issue pending resolution of the appellate process in each case. *See McMahon*, 2025 WL 1922626, at *5 (Sotomayor, J., dissenting); *Labrador v. Poe*, 144 S. Ct. 921, 929 n.2 (2024) (Mem.) (Kavanaugh, J., concurring); *Hollingsworth v. Perry*, 558 U.S. at 190. Because the facts and legal issues in those cases are so similar to those presented here, the stays signal that a majority of the Supreme Court would likely reach the same conclusion if asked to consider this case. This Court should vacate its injunction to preclude any need for a higher court to again review the same arguments about preliminary relief against exercises of Executive authority.

       Defendants request expedited consideration of this motion under LR Cv 9. Every day that the injunction remains in place irreparably harms the Government and the public interest. And it stands on increasingly shaky footing with each new stay of a similar injunction by the Supreme Court. Where the merits, balance of harms, public interest, and equities so strongly favor vacatur (or, alternatively, a stay), expeditious relief is critical. Thus, Defendants request a ruling by July 28, 2025.

       **1.** The two stays confirm that Defendants are likely to succeed on the merits in challenging this Court's injunction. *See generally* ECF No. 52 at 11-37 (Defendants' opposition to preliminary-injunction motion explaining why multiple jurisdictional bars preclude Plaintiffs' claims and why those claims are substantively meritless). *McMahon* is almost on all fours with this case. It addressed a RIF at the Department of Education. Like this Court's analysis of the RIFs in this case, the First Circuit's opinion determined (among other findings) that the Department of Education RIF "made it effectively impossible for the Department to carry out its statutorily mandated

functions." *Compare Somerville*, 139 F.4th at 69 (cleaned up), *with* ECF No. 73 at 47 (holding that HHS was "for all intent and purpose dismantling critical, statutorily mandated functions of the Agency"). That reasoning—and the First Circuit's other reasons for denying a stay pending appeal, which this Court followed when enjoining Defendants here—has been rejected. *See McMahon*, 2025 WL 1922626, at *1. Moreover, many of the plaintiffs in *McMahon* are states—as are all plaintiffs here. Jurisdictional reasons why states should not be allowed to challenge the RIFs apply in both cases.

And although the *AFGE 2* stay order (which held that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful") did not opine on "the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum," 2025 WL 1873449, at *1, its reasoning and result indicate the Court's likelihood of siding with the Government on core issues the RIF cases present about the scope of Executive authority to reorganize Executive agencies.

**2.** The balance of harms and the equities also favor vacating the Court's preliminary injunction. Every day that the injunction is in effect, it causes irreparable harm to the Government and the public, whose interests "merge" here. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Executive Branch officials responsible for running HHS have determined that it can perform its statutory functions with a lower headcount; in our constitutional order, politically accountable Article II actors are entrusted with such judgment calls. But the preliminary injunction wrests core Executive responsibility and accompanying accountability from HHS leadership. In addition, if Defendants prevail on the merits, the Government will likely never recover the salaries that it has been ordered to continue paying. That harm could theoretically have been addressed by an appropriate bond under Rule 65(c), but the Court set only a nominal bond of $100—which does

not protect Defendants' interests. ECF No. 73 at 57. As the Supreme Court recently confirmed, such considerations counsel in favor of a stay. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025) (per curiam) (staying preliminary injunction where "respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed" and "the District Court declined to impose bond"). They also support vacatur here.

The stays in *McMahon* and *AFGE 2* support Defendants' position on the balance of harms and equities. In *AFGE 2*, after addressing the merits, the Supreme Court held that "the other factors bearing on whether to grant a stay" were also "satisfied." 2025 WL 1873449, at *1. When it reached that conclusion, the Court was aware that staying the injunction would allow HHS to remove thousands of employees via RIFs (as to components that are not still under this Court's order). *See Am. Fed'n of Gov't Emps.*, 2025 WL 1482511, at *5 (noting that HHS was "issuing RIF notices to 8,000-10,000 employees"). Indeed, the plaintiffs in *AFGE 2* highlighted alleged harms flowing from the proposed HHS RIFs as a reason the injunction should remain in place. *See* Respondents' Response to Stay Application at 13-14, *AFGE 2*, No. 24A1174 (U.S. June 9, 2025) (contending that "HHS's reorganization has gutted the agency's programs and functions" in a way that would have "serious, adverse impacts" on "Respondent local governments that rely heavily on, for example, CDC laboratories and expertise to control disease outbreaks"). The Supreme Court did not find those arguments compelling enough to justify the sweeping relief entered by the Northern District of California. Indeed, it found the Government had carried its burden to stay that relief. And although the *McMahon* stay was unreasoned, its entry also reflects the Supreme Court's conclusion that "the equities" and the public interest support the Government. *See McMahon*, 2025 WL 1922626, at *5 (Sotomayor, J., dissenting).

Meanwhile, Plaintiffs here have established no irreparable harm—let alone harm that "override[s] the[] factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Sampson v. Murray*, 415 U.S. 61, 84 (1974). Even if Plaintiffs had established irreparable harm—and they have not—it is "outweigh[ed]" by the importance of permitting the Executive Branch to exercise its own judgment about how best to serve the public interest. *See Winter v. NRDC*, 555 U.S. 7, 26 (2008). Although the Court disagreed with similar arguments in issuing its injunction, the stays in *McMahon* and *AFGE 2* make clear that the Court's irreparable-harm determination was incorrect.

For all of these reasons, the Court should vacate the July 1, 2025, injunction.

**3.** In the alternative, the Court should stay its injunction pending appeal. For much the same reasons that vacatur is appropriate—including that the preliminary injunction is not justified, and the Supreme Court's recent stays cast increased doubt on its reasoning—Defendants have satisfied the requirements for a stay pending appeal. *See Nken*, 556 U.S. at 434 (describing the standard for obtaining a stay and noting the "substantial overlap" between that standard and "the factors governing preliminary injunctions"); *Dep't of Educ.*, 145 S. Ct. at 969 (staying a preliminary injunction that required the Government to pay funds that it would be "unlikely to recover" once disbursed).[2]

---

[2] Although Defendants requested a stay pending a potential appeal in their opposition to the preliminary-injunction motion, *see* ECF No. 52 at 43, the Court's rejection of that request was predicated on circumstances that have since changed. Specifically, the Court found Defendants' request to be "premature" but "preemptively den[ied]" it "because HHS [was] already enjoined . . . from moving forward with its reorganization plans, including finalizing the employee terminations." ECF No. 73 at 57. After the Supreme Court's stay in *AFGE 2*, that reasoning no longer applies. Now, as long as this Court's injunction remains in effect, it causes independent, ongoing harm to the Executive Branch. Additionally, the Solicitor General has now authorized Defendants to appeal in this case, and they plan to do so imminently if the Court does not vacate its injunction. Thus, it can no longer be said that a stay is "premature." To the extent the Court might construe this motion as seeking reconsideration of the Court's earlier denial of a stay

**4.** Finally, if the Court declines to vacate or stay its injunction notwithstanding the Supreme Court's clear guidance in *McMahon* and *AFGE 2*, Defendants reiterate their July 11, 2025, request that the Court narrow the scope of the injunction consistent with *CASA* and modify it to clarify that it applies only to the components on which Plaintiffs focused in their preliminary-injunction motion. *See* ECF No. 75 at 4. The stays in *McMahon* and *AFGE 2* make even more plain than before the importance of appropriately tailoring preliminary relief to the parties and issues.

---

pending appeal, the standard for reconsideration is satisfied for the reasons stated throughout this motion.

Dated: July 17, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ *Elizabeth Hedges*
ELIZABETH HEDGES
Counsel to the Assistant Attorney General
Civil Division
950 Pennsylvania Ave NW
Washington, DC 20530
Telephone: (202) 616-0929
Email: Elizabeth.T.Hedges@usdoj.gov

*Counsel for Defendants*