UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.<br><br>    Defendants. | Case No. 1:25-Civ-00196 |

**PLAINTIFF STATES' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY AND MODIFY THE PRELIMINARY INJUNCTION AND PLAINTIFF STATES' CROSS-MOTION TO CLARIFY THE PRELIMINARY INJUNCTION**

Defendants' motion to modify the preliminary injunction, ECF No. 75, fails to acknowledge that, under Federal Rule of Civil Procedure 60(b), Defendants bear the burden of establishing their entitlement to the requested modifications.[1] Defendants fail to carry their burden here because the unrebutted factual evidence already in the record supports the geographic and agency scope of the preliminary injunction as issued. Moreover, the more limited injunction Defendants seek makes no sense, as it would not be "workable or sustainable or desirable to have a patchwork scheme, potentially for several years, in which" certain offices within HHS operate with respect to "some people or organizations in certain States or regions, but not to others." *See*

---

[1] While Defendants style their motion as one "to clarify and modify," the requested relief (rewriting the injunction) is to modify the injunction.

1

*Trump v. CASA, Inc.*, 606 U.S. \_\_, 2025 WL 1773631, at \*21 (2025) (Kavanaugh, J., concurring). Accordingly, there is no basis for the requested modifications to the preliminary injunction.

Separately, Plaintiff States have learned that many of the employees who originally received RIF notices have not been reinstated to their posts and therefore ask the Court to clarify that the preliminary injunction requires HHS to reinstate employees to their posts. Reinstatement is necessary for HHS and its sub-agencies to provide the services, programmatic support, data analysis, and grants management that the States rely upon and the absence of which is causing irreparable harm to the States.

## BACKGROUND

On July 1, 2025, this Court entered a preliminary injunction, which provided in relevant part:

> HHS and all other named defendants are ENJOINED from taking any actions to implement or enforce the planned RIFs or sub-agency restructuring announced in the March 27 Communiqué or set in motion after the Communiqué's release with respect to the specific sub-agencies and programs that are the subject of the instant motion for preliminary injunction, until further order of this Court. The actions enjoined by this order include but are not limited to:
>
> (a) any further execution of any existing RIF notices (including final separation for any employees previously notified of impending termination);
>
> (b) issuance of any further RIF notices; and
>
> (c) placement of additional employees on administrative leave.

ECF No. 73 at 56.

In their motion, Defendants have proposed two significant modifications to the Order. First, they seek to have it narrowed to apply only to activities "within the boundaries of" the Plaintiff States. ECF No. 75 at 4. Second, they seek to have the injunction limited to only subgroups within the Centers for Disease Control and Prevention (CDC) and the Assistant Secretary for Planning

2

and Evaluation (ASPE). *Id*. Defendants' motion to clarify and modify the preliminary injunction in this case introduced no new evidence.

Since the preliminary injunction was entered, Plaintiff States have found that service levels have been mixed, and it appears that in many cases, HHS employees who work at the affected agencies have not returned to their jobs. *See, e.g.*, Larkin Decl., Ex. 78 ¶¶ 12–14 (ongoing failures by HHS impacting Rhode Island State Tobacco Program and Overdose Data to Action Grants);[2] Eilers Suppl. Decl., Ex. 79 ¶¶ 3–4 (recounting failures of CDC to provide services related to Pregnancy Risk Assessment Monitoring Systems (PRAMS) and Early Hearing Detection, Diagnosis, and Intervention (EHDDI)); Jacobs Decl., Ex. 80 ¶¶ 8–10 (describing current status of CDC employees who originally received RIF notices); Cummings Suppl. Decl., Ex. 81 ¶ 13 ("Without the full complement of experts and support staff, NIOSH is unable to adequately carry out its functions."); Rosenberg Suppl. Decl., Ex. 87 ¶¶ 4–8 (CDC is "unresponsive" and not fulfilling its obligations regarding the PRAMS Notice of Award); Davis Suppl. Decl., Ex. 88 ¶ 4 (OSH remains unstaffed and/or dismantled).

## ARGUMENT

Federal Rule of Civil Procedure 60(b) allows courts to modify injunctions where, in relevant part, the party affected by the injunction shows, "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," or that "applying [the injunction] prospectively is no longer equitable." On a motion to modify a preliminary injunction, the burden belongs to the party seeking modification. *See Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 38 (1st Cir. 2006) ("the defendant would have to show" that the criteria in Federal Rule of Civil Procedure

---

[2] Citations herein to "Ex. __" are to the exhibits attached to the Declaration of Andres Ivan Navedo in Support of Plaintiff States' Opposition to the Defendants' Motion to Modify the Injunction, unless otherwise indicated.

60(b) are met for the court to modify a preliminary injunction); *see also* Mary Kay Kane & Alexandra D. Lahav, *Modification of Injunctions*, 11A Fed. Prac. & Proc. Civ. § 2961 (3d ed. 2025) ("Courts also require a strong showing by the moving party."). Defendants fail to carry their burden here.

    **I.    Defendants Have Not Shown that the Court's Order Should Be Narrowed Geographically**

The Court's injunction was properly crafted to provide relief to Plaintiff States by requiring HHS to continue staffing the agency so that it can continue to provide information and services to Plaintiff States while the litigation proceeds. But that necessitated enjoining the challenged RIFs and restructurings because of the inherently nationwide nature of HHS's operations. To the extent any third parties have benefited, that is "merely incidental" and not a basis for narrowing the Court's injunction. *Trump v. CASA, Inc.*, 606 U.S. __, 2025 WL 1773631 at *11 (2025).

Defendants nonetheless propose a geographic narrowing of the injunction such that the order would enjoin Defendants only "insofar as they employ individuals, run programs, or provide services to, or within the boundaries of, the plaintiff states." ECF No. 75 at 4. Defendants introduce no evidence as to how such geographic narrowing would work in practice. Nor could they, as the unrebutted factual record establishes such a narrowing would fail, because individuals, programs, and services are not discretely directed towards, or provided to, only certain states.

The record shows that the RIFs and restructurings that the Court enjoined are inherently nationwide in scope. HHS employees, programs, and services are not typically dedicated to specific States. Rather, HHS employees administer nationwide programs that provide nationwide services and information. CDC labs test for infectious diseases to monitor outbreaks that cross state lines. *See, e.g.*, Gallagher Decl., ECF No. 44-23 ¶ 18 (noting that the "shift to analysis at commercial laboratories will significantly hamper the ability compare results across States," which

4

"is an extremely important component of data analysis in the Northeast Region where there is often interstate mobility and clusters and outbreaks frequently involve multiple jurisdictions"); Hertel Decl., ECF No. 44-59 ¶ 20 ("[T]he CDC no longer sends out-of-state travel notifications about potential disease exposures to Michigan residents . . . CDC was not available to coordinate a recent multi-state effort to investigate a complex and urgent case of human rabies."). NIOSH certifies personal protective equipment for the nation, not just Plaintiff States. *See, e.g.*, Tan Decl., ECF No. 44-33 ¶ 9. CDC administers the PRAMS program to provide all States with nationwide services to standardize collection of relevant data and then publishes nationwide data. *See* Larkin Decl., ECF No. 44-24 ¶ 15 ("If the CDC does not provide critical resources including adequate funding, scientific and technical support, and information technology assistance, Rhode Island will no longer be able to administer the survey, have weighted data, or contribute to national data trends."). "Without the national surveillance data from PRAMS," states like Washington "would need to greatly expand [their] survey example to be able to examine data geographically, by family income, or other characteristics which may have implications [for] healthy outcomes." Eilers Decl., ECF No. 44-27 ¶ 5. The same HHS employees that provide nationwide services provide nationwide information and the current injunction protects Plaintiff States from losing the benefit of that information, such as NIOSH's Pocket Guide to Chemical Hazards and the NIOSH Manual of Analytic Methods, Cummings Decl., ECF No. 44-52 ¶ 13, or "national trends in tobacco usage." Brown Decl., ECF No. 44-26 ¶ 19.

Furthermore, some employees and services were not actively "provide[d]" a Plaintiff State at the time of the injunction, ECF No. 75 at 4, but stood ready and would be called upon for immediate action in case of an emergency. For instance, the experts who work at the National Center for Environmental Health respond to wildfires and other natural disasters in whichever

State they occur. Doe 1 Decl., ECF No. 44-46 ¶ 6. These employees and services thus are not "provide[d]" to particular States and are instead available nationally. Defendants' proposed geographic modification fails to grapple with this lack of geographic specificity for the employees and services covered by the preliminary injunction, and fails to provide any meaningful way to distinguish between which of the thousands of employees within the four sub-agencies of HHS would be enjoined from termination and which would not.

Defendants bore the burden to establish "Grounds for Relief" under Rule 60(b), and they have introduced no evidence showing their entitlement to such a modification.

## II. The Proposed Limitation to Seven Specified Entities Ignores the Court's Reasoning and the Record Before the Court

Defendants also move to limit the application of the injunction within HHS.[3] Specifically, instead of enjoining CDC, they seek to limit the injunction to six centers or divisions within CDC: (1) the National Center for HIV, Viral Hepatitis, STD, and Tuberculosis Prevention (NCHHSTP); (2) the National Institute for Occupational Safety and Health (NIOSH); (3) the Division of Reproductive Health (DRH) (which is located within the National Center for Chronic Disease Prevention and Health Promotion); (4) the Office on Smoking and Health (OSH) (which is also located within the National Center for Chronic Disease Prevention and Health Promotion); (5) the National Center for Environmental Health (NCEH); and (6) the National Center on Birth Defects and Developmental Disabilities (NCBDDD). They additionally seek to narrow the application of the injunction to only a Division within ASPE (the Division of Data and Technical Analysis, which

---

[3] Defendants call this a motion to "clarify" around the meaning of "sub-agency." However, the Court clearly defined "sub-agency" as "all the entities that fall within HHS's organizational structure." ECF No. 73 at n.1. Thus, CDC and ASPE, themselves, are sub-agencies subject to the injunction and this motion would more properly be described as a motion for reconsideration.

updates the Federal Poverty Guidelines). Here, too, Defendants have not met their burden. The scope of the injunction was justified by unrebutted facts in the record before this Court. The Defendants' motion ignores the mountain of evidence pertaining to the effects of the reductions-in-force in other divisions and introduces nothing to countervail that evidence.

Defendants claim that beyond the seven specified entities, "Plaintiffs' motion made little more than fleeting references to other components or programs within CDC or ASPE." ECF No. 75 at 3. While Plaintiff States' motion did highlight certain sub-components within HHS, it also made clear that these were illustrative examples. *See*, *e.g.*, Mot. for Prelim. Inj., ECF No. 43 at 14 ("The devastating effects of these terminations and reorganizations were felt outside HHS immediately in many ways. Here are six examples.").

Moreover, the unrebutted evidence shows that the March 27 Directive has resulted or will soon result in institutional failures across CDC, OHS, CTP, and ASPE. At CDC alone, setting aside the divisions that Defendants concede are appropriately within the scope of the injunction, the record established harms to the Plaintiff States from closures at a range of entities.

First, while the Defendants try to limit the injunction to sub-parts of the **National Center for Chronic Disease Prevention and Health Promotion**, the unrebutted record shows harms to the States from RIFs of employees beyond the Center's Division of Reproductive Health, Office on Smoking and Health, and the Division of Population Health – i.e. across wide swaths of the Center. For instance, the State of Oregon, "relied on the Healthy Aging Branch in Division of Population & Health at CDC for technical assistance in implementing Healthy Aging programs responding to Alzheimer's Diseases and Related Dementia, arthritis, and other chronic diseases." Biggs Decl., ECF No. 44-28 ¶ 13; *see also* Juthani Decl., ECF No. 44-62 ¶ 25. The State of Michigan relies upon numerous programs managed by the National Center for Chronic Disease

Prevention and Heath Promotion to address chronic health problems as varied as arthritis and dementia. Hertel Decl., ECF No. 44-59 ¶ 35. Similarly, the State of New York relies upon the National Center for Chronic Disease Prevention and Health Promotion for its Alcohol Program, which "provided guidance and technical assistance to states to build capacity to conduct alcohol surveillance and epidemiology, disseminate consistent messaging about the harms of alcohol use and promote information about evidence-based solutions." Rosenberg Decl., ECF No. 55-10 ¶¶ 19. Specifically, this office provided assistance in the form of "reviewing all NY-generated alcohol reports for accuracy/alignment with the evidence base, sharable graphics for messaging, and they developed, hosted and maintained key data systems like the Alcohol-Related Disease Impact (ARDI) application, which is the primary source for states about alcohol-attributable disease and death." *Id.*

Additionally, the record is replete with examples of harm at other Centers, Divisions, and Offices within the CDC. Among those examples are the following:

- Plaintiff States presented evidence about the **National Center for Emerging and Zoonotic Infectious Diseases** for its Division of Healthcare Quality Promotion and its Division of High-Consequence Pathogens and Pathology (especially its Viral Special Pathogens Branch). *See, e.g.*, Juthani Decl., ECF No. 44-62 ¶ 10 (describing impact of the work of the Healthcare Infection Control Practices Advisory Committee); Hertel Decl., ECF No. 44-59 ¶ 17 (describing delays in rollout for hospital acquired infection testing strategy); Underwood Decl., ECF No. 44-21 ¶ 22 (describing delays in response to adverse events following certain injections); Peruski Decl., ECF No. 44-20 ¶ 17 (New York's public health laboratory "would send suspect Marburg specimens to the

CDC Viral Special Pathogens Laboratory for diagnostic testing in order to identify this deadly disease, which is not present in the U.S.").

- Plaintiff States presented evidence about the **National Center for Immunization and Respiratory Diseases** for its Immunization Services Division, Influenza Division, Division of Viral Diseases, Respiratory Virus Laboratories, Partnerships Branch, and other Divisions. *See, e.g.*, Peruski Decl., ECF No. 44-20 ¶ 16 ("New York's public health laboratory "would send specimens for enterovirus and Parechovirus to the CDC Respiratory Virus laboratory for diagnostic testing"); Underwood Decl., ECF No. 44-21 ¶ 18 ("With respect to diagnostic testing for H. influenzae and Neisseria meningitidis, CDC is now redirecting testing requests to MDH-PHL and one other state public health laboratory, both under a contract with the Association for Public Health Laboratories."); Underwood Decl., ECF No. 44-21 ¶ 22 (describing impact of disbanding of Immunization Partners Branch); Standridge Decl., ECF No. 44-50 ¶ 19–22 (describing Wisconsin's reliance on CDC for infectious disease testing, including for Hantavirus infection, Chikungunya IgM, and polio isolation and genotyping that is no longer being performed); Juthani Decl., ECF No. 44-62 ¶¶ 7–16 (describing impact of closures at Center for Immunization and Respiratory Diseases and concluding that these cuts are having significant ability on state and local responses to infectious diseases, including avian influenza).

- Plaintiff States presented evidence about the **National Center for Injury Prevention and Control** for its Division of Violence Prevention and Division of Overdose Prevention. For instance, the State of Michigan relies upon multiple programs run by these Divisions, from the Michigan Overdose Data to Action program, to Preventing

9

Suicide in Michigan Men, to the Rape Prevention and Education Program, and the Violent Death Reporting System and as a result of staffing shortages and loss of contracts, Michigan has been left "with little or no guidance . . . cancellations of scheduled technical assistance calls, and . . . uncertainty regarding the future of these programs." Hartel Decl., ECF No. 44-59 ¶ 35. *See also* Biggs Decl., ECF No. 44-28 ¶ 17; Juthani Decl., ECF No. 44-62 ¶ 27 (Connecticut "was notified that the CDC's subject matter experts in sexual violence within the Division of Violence Prevention of the National Center for Injury Prevention and Control had been placed on administrative leave. This has resulted in a lack of technical assistance following the submission of the Department's Annual Progress Report in this area, no planning guidance on the upcoming funding year, and no input on updates to Connecticut's State Action Plan – a key document that guides Connecticut's sexual violence prevention efforts. Without CDC to facilitate interstate collaboration, there is a risk that recent gains in this critical area will be undone.").

- Plaintiff States presented evidence about the **Office of the Director** for its Office of Laboratory Systems and Response, which provided central coordination, including through state-to-state calls and the Laboratory Outreach Communication System calls, and Division of Regulatory Science and Compliance, which, among other things, houses the Federal Select Agent Program. *See, e.g.*, Hertel Decl., ECF No. 44-59 ¶ 16. The Federal Select Agent Program "oversees the possession, use and transfer of select agents and toxins, which pose a threat to public, animal or plant health."[4] The State of

---

[4] *Federal Select Agent Program*, Ctr. For Disease Control & U.S. Dep't of Agric. (Nov. 8, 2024), https://www.selectagents.gov/.

>Michigan "reached out to the CDC's FSAP program two times to try to schedule an inspection for a renovated laboratory space. Several weeks have passed, but the FSAP program has not responded." Hertel Decl., ECF No. 44-59 ¶ 16.

Defendants' argument is thus at odds with an unrebutted factual record that shows harms to States stemming from the RIFs and reorganizations across these agencies and Plaintiffs States' briefing, which was clear that the highlighted agencies were illustrative.

Second, there is no basis in the record (and Defendants have not attempted to provide any) to distinguish between parts of the CDC that only provide direct "services" to Plaintiff States and those that do not. Instead, the record shows that CDC cannot be so easily cleaved into discrete parts. The CDC, like many agencies, needs logistical and support staff in order to properly function. But staff members who provide the necessary logistical support for critical research and services at CDC remain subject to the RIFs.

Defendants have not met their burden on this motion.

### III. Plaintiffs Cross-Move for Clarification that the Injunction Requires Reinstatement

Separately, Plaintiff States cross-move to clarify that the Court's Order, ECF No. 73 at 56, requires reinstatement of the employees at the enjoined sub-agencies. As is clear from the Order's reasoning and the provided evidence, reinstatement of employees is necessary for Defendants to resume their statutorily mandated activities. As noted in Plaintiff States' Motion, Plaintiff States sought "to preserve the status quo as it existed before the unlawful March 27, 2025, Directive—to preserve the agency structure that Congress intended, with the various mandatory HHS programs in properly-staffed and working order." ECF No. 43 at 61. Doing so requires reinstatement, as leaving those employees on administrative leave does not fully remedy the irreparable harm felt by Plaintiff States.

Plaintiff States' unrebutted evidence showed that their injuries all began on April 1, when Defendants placed thousands of employees on administrative leave. The proper remedy that will fully redress Plaintiffs injuries, therefore, is to reinstate the employees not only so they may perform their statutorily required duties, but also to avoid employees being left to languish on administrative leave where they cannot perform their duties, and the harms continue. As noted above, Plaintiff States have learned in recent weeks that many of the employees who have received RIF notices have not been reinstated or, if they were reinstated, many of them have been transferred to other departments to perform unrelated work. *See* Jacobs Decl., Ex. 80 ¶¶ 9–10 (many reinstated workers at CDC not performing the same work they did prior to April 1 and instead being instructed to "'reorient' toward shutting themselves down," and 1,874 CDC employees have not been reinstated at all); Doe 2 Second Suppl. Decl., Ex. 82 ¶ 3 ("Following this Court's Order Granting Plaintiffs' Motion for Preliminary Injunction on July 1, 2025, to my knowledge, there have been no further reinstatements or restoration of any staff at NIOSH"); Doe 4 Suppl. Decl., Ex. 83 ¶ 4 ("To date, no one has been reinstated at OSH."); Doe 7, Suppl. Decl., Ex. 84 ¶ 5 ("Roughly 130 staff at CTP have not had their initial RIF notice rescinded since the July 1, 2025 Preliminary Injunction and remain on administrative leave or on active status pending final separation."); Doe 8 Decl., Ex. 85 ¶¶ 7, 18 ("Since the July 1, 2025, Preliminary Injunction, none of the roughly 76 RIF'd employees at DRH have been reinstated" including "[t]he entire PRAMS team").

The Defendants' failure to reinstate employees leaves HHS and its sub-agencies incapacitated and leaves Plaintiffs to suffer more of the same harms that warranted the injunction in the first place. *See, e.g.,* Doe 2 Second Suppl. Decl., Ex. 82 ¶ 6 ("I believe NIOSH's broader research and service capabilities to protect the health and safety of American workers remain

12

crippled absent full reinstatement."); Doe 4 Suppl. Decl., Ex 83 ¶ 4–8 (describing effects of OSH's work stoppage, from unavailability of managers to process applications from States to un-updated databases and a continuing unavailability of tobacco education campaign materials); Doe 7 Suppl. Decl., Ex 84 ¶ 6 (CTP employees who were reinstated have been involuntarily detailed to perform non-tobacco budget execution work for FDA's Center for Devices and Radiological Health.); Doe 8 Decl., Ex. 85 ¶18 ("Ultimately, due to the absence of CDC PRAMS Staff to coordinate and assist, 2025 data collection efforts lack standardization, making cross-state data comparisons impossible"); Larkin Decl., Ex. 78 ¶¶ 16–17 (only one person at CDC is available to review all one-time funding applications from all fifty states, leading to months long delays and "the future of the RI State Tobacco Program is left in a precarious state"); Eilers Suppl. Decl., Ex. 79 ¶ 3 (describing non-responsiveness from CDC inhibiting State participation in PRAMS) and ¶¶ 4–5 (attaching correspondence from CDC with regards to EHDI program indicating that "CDC 'will not have the capacity' to provide the required cooperation"); Larkin Decl., Ex. 78 ¶ 16 (describing the impact of CDC's shuttering of the Office of Smoking and Health, including termination of funding and delays in one-year extension of funding "because there is only one person at the CDC reviewing all 50 states' one-time funding applications"); Good Decl., Ex. 86 ¶¶ 5, 8–11 (describing Colorado's previous reliance on the "essential occupational health programs and education, outreach, and research" provided by NIOSH and the Western States Division, and noting that, "the Western States Division has been effectively dismantled," with the result that Colorado lost "crucial expertise and support" and that funding opportunities have not been offered because of a lack of staff to administer the application process); Rosenberg Suppl. Decl., Ex. 87 ¶ 6 (CDC has not provided (clean) weighted data for PRAMS, without which the data is not usable). In a sign of how completely the CDC has shut down its PRAMS data analysis, the CDC is now directing

researchers to contact the New York State Department of Health with requests for PRAMS data that CDC is supposed to maintain and make available to researchers. *Id.* ¶ 7.

This continues to harm Plaintiff States, and they thus seek clarification of the injunction.

IV. **In the Alternative, Plaintiffs Seek Limited Discovery and a Status Conference as To Current Plans For Reinstatement Of Employees and The Workability Of Defendants' Proposed Narrowed Injunction.**

In the alternative, Plaintiff States request limited discovery to assist the parties and the Court in resolving Defendants' pending motion and Plaintiff States' cross-motion. Defendants' proposed modifications here would lead to the kind of "patchwork injunction" that the federal government proposed in *CASA*, and which the Supreme Court remanded for consideration by the lower courts. *Trump v. CASA, Inc.*, 2025 WL 1773631 at *12. The *CASA* Court found that "whether an injunction will offer complete relief to the plaintiffs before the court" requires lower court analysis and can be "more complicated" when awarded to a state. *Id.* at *11. "The lower courts should determine whether a narrower injunction is appropriate; we therefore leave it to them to consider these and any related arguments." *Id.* at *12. Thus, in the alternative, Plaintiff States request that the Court allow limited discovery and conduct a hearing to determine the workability of Defendants' proposed modifications that would narrow the injunction and the current plans for reinstatement of employees under the injunction.

Dated: July 25, 2025                                          Respectfully submitted,

| | |
|---|---|
| **NICHOLAS W. BROWN** | **LETITIA JAMES** |
| Attorney General of Washington | Attorney General for the State of New York |
| | |
| By: */s/ Spencer W. Coates* | By: */s/ Molly Thomas-Jensen* |
| Spencer W. Coates | Molly Thomas-Jensen |
| Kelsey E. Endres | Jessica Ranucci |
| *Assistant Attorneys General* | *Special Counsel* |
| Cynthia Alexander | Rabia Muqaddam |
| William McGinty | *Chief Counsel for Federal Initiatives* |

14

*Deputy Solicitors General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
spencer.coates@atg.wa.gov
kelsey.endres@atg.wa.gov
cynthia.alexander@atg.wa.gov
william.mcginty@atg.wa.gov

*Counsel for the State of Washington*


**PETER F. NERONHA**
Attorney General for the State of Rhode Island

*/s/ Sarah Rice*
Kathryn M. Sabatini (RI Bar No. 8486)
Chief, Civil Division
Sarah Rice (RI Bar No. 10588)
Deputy Chief, Public Protection Bureau
Chandana Pandurangi (RI Bar No. 10922)
Dorothea Lindquist (RI Bar No. 6661)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400
Fax: (401) 222-2995
ksabatini@riag.ri.gov
srice@riag.ri.gov
cpandurangi@riag.ri.gov
dlindquist@riag.ri.gov
*Counsel for the State of Rhode Island*

Andres Ivan Navedo
Molly Brachfeld
*Assistant Attorneys General*
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
jessica.ranucci@ag.ny.gov
ivan.navedo@ag.ny.gov
molly.brachfeld@ag.ny.gov

*Counsel for the State of New York*


**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Alexa Salas*
Alexa Salas
*Assistant Attorney General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Alexa.Salas@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

**ROB BONTA**
Attorney General for the State of California

By: /s/ Crystal Adams
Crystal Adams
*Deputy Attorney General*
Michael L. Newman
Neli Palma
*Senior Assistant Attorneys General*
Kathleen Boergers
Virginia Corrigan
Srividya Panchalam
*Supervising Deputy Attorneys General*
Jesse Basbaum
Jeanelly Orozco Alcala
*Deputy Attorneys General*
1515 Clay Street
Oakland, CA 94612-1499
(510) 879-3428
Crystal.Adams@doj.ca.gov
Michael.Newman@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Virginia.Corrigan@doj.ca.gov
Srividya.Panchalam@doj.ca.gov
Jesse.Basbaum@doj.ca.gov
Jeanelly.OrozcoAlcala@doj.ca.gov

*Counsel for the State of California*

**WILLIAM TONG**
Attorney General of the State of Connecticut

By: /s/ Michael K. Skold
Michael K. Skold
Solicitor General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

*Counsel for the State of Connecticut*

**PHILIP J. WEISER**
Attorney General of Colorado

By: /s/ Tanya E. Wheeler
Tanya E. Wheeler
*Associate Chief Deputy Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
tanja.wheeler@coag.gov

*Counsel for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: /s/ *Vanessa L. Kassab*
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew C. Mendrala*
Andrew C. Mendrala
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov

*Counsel for the District of Columbia*

**KWAME RAOUL**
Attorney General of the State of Illinois

By: */s/ Caitlyn G. McEllis*
Caitlyn G. McEllis
Senior Policy Counsel
Katharine P. Roberts
Assistant Attorney General
Office of the Illinois Attorney General
115 S. Lasalle Street
Chicago, IL 60603
312-814-3000
Caitlyn.McEllis@ilag.gov

*Counsel for the State of Illinois*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Michael Drezner*
Michael Drezner
*Senior Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6959
mdrezner@oag.state.md.us

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Margaret Machaiek*
Margaret Machaiek
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
August, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
margaret.machaiek@maine.gov

*Counsel for the State of Maine*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti
Danny Haidar
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
HaidarD1@michigan.gov

*Counsel for the State of Maryland*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 300-0711
Lindsey.middlecamp@ag.state.mn.us

*Counsel for the State of Minnesota*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Astrid Carrete*
Astrid Carrete
Impact Litigation Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
acarrete@nmdoj.gov

*Counsel for the State of New Mexico*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

*Counsel for the People of the State of Michigan*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

By: */s/ Justine M. Longa*

Justine M. Longa
Jessica L. Palmer
  *Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Justine.Longa@law.njoag.gov
Jessica.Palmer@law.njoag.gov

*Counsel for the State of New Jersey*

**DAN RAYFIELD**
Attorney General of the State of Oregon

 By: */s/ Elleanor H. Chin*
Elleanor H. Chin
*Senior Assistant Attorney General*
100 Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
elleanor.chin@doj.oregon.gov

*Counsel for the State of Oregon*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218  (phone)
(608) 294-2907 (Fax)

*Counsel for the State of Vermont*

Charlie.Gibson@wisdoj.gov

*Counsel for the State of Wisconsin*