UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, et al., <br><br> Defendants. | Civil Action No. 1:25-cv-00196 |

**DEFENDANTS' OPPOSITION TO CROSS-MOTION REGARDING REINSTATEMENTS**

In their cross-motion, Plaintiffs argue that they are merely seeking to "clarify that the Court's Order requires reinstatement of the employees at the enjoined sub-agencies." ECF No. 83 ("Opp.") at 11. But Plaintiffs identify no language in the Court's Memorandum and Order that is unclear on the subject. That is because the Court's order could hardly be clearer that it does *not* require reinstatements. Indeed, the language of the order closely tracks that of the Northern District of California's preliminary injunction in *AFGE 2*—which restricted the same contemplated reductions-in-force (RIFs) and restructuring that are at issue in this case—but conspicuously excludes the language in the *AFGE 2* district court's order regarding RIF rescissions and returning employees to active status. *See Am. Fed'n of Gov't Emps. v. Trump*, 2025 WL 1482511, at *27-28 (N.D. Cal. May 22, 2025). In short, this Court's order cannot be read to require reinstatements.[1]

---

[1] Even the *AFGE 2* court stayed that portion of its order pending appeal, recognizing that the court's "ability to impose retrospective relief is limited by practical considerations." *Id.* at *28. The entire injunction has since been stayed by the Supreme Court. *Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. __, 2025 WL 1873449 (July 8, 2025) (Mem.).

Thus, Plaintiffs' motion really seeks modification in the guise of "clarification." Opp. at 1. As further discussed below, both the doctrinal and practical impediments to such relief counsel strongly against modifying the preliminary injunction as Plaintiffs desire. Not to mention that Plaintiffs failed to ask for this relief when they had the chance three months ago. The cross-motion should be denied.

**1.** To be clear: any assertion that Defendants have "fail[ed] to abide by the Preliminary Injunction," ECF No. 84-1 ¶ 7 (Larkin Decl.), is baseless. Defendants have been complying with the Court's preliminary-injunction order since it was entered. *See generally* ECF No. 74 (Defendants' status report regarding compliance filed on July 11, 2025). Plaintiffs offer no evidence to the contrary. Instead, they make unsupported allegations of non-compliance based on Defendants' not having completed additional activities, including employee reinstatements—relief to which Plaintiffs established no right and which the Court did not grant. Whatever the merits of Plaintiffs' request to modify and expand the injunction to require reinstatements—addressed below—their assertions that Defendants have not complied with the terms of the injunction this Court entered on July 1, 2025, are unfounded.

**2.** The Court should not expand its order to require additional relief to which Plaintiffs did not establish entitlement in their preliminary-injunction motion. Plaintiffs did not include a request for reinstatements in their motion. Although they point to their argument that the Court should order the relevant subcomponents to return to the conditions that existed before March 27, 2025, "to preserve the agency structure that Congress intended, with the various mandatory HHS programs in properly-staffed and working order," they can hardly dispute that that sentence was vague at best: for instance, whatever "properly-staffed" might mean was open to interpretation.

2

ECF No. 43 (PI Motion) at 53. Any argument that the exact staffing level that existed on March 27 is the statutorily required level would not be serious, and Plaintiffs did not make that argument.

Had Plaintiffs briefed a request for reinstatements together with the other relief they sought, the Court would have had ample opportunity to decide whether reinstatements were appropriate. Instead, the Court considered the motion Plaintiffs actually submitted, along with Defendants' opposition, and issued a 58-page Memorandum and Order addressing both sides' arguments and granting in large part the relief Plaintiffs *did* ask for. ECF No. 73. Although Plaintiffs argue that the order's "reasoning" supports their argument that reinstatements are "necessary," Opp. at 11, they fail to identify any such reasoning. And even if any reasoning in the Court's order could be read to support reinstatements in addition to the relief the Court did order, that would not change the reality that the Court did not grant reinstatements. That Plaintiffs now wish that it had is no basis for modifying and extending the Court's order.

Because Plaintiffs seek modification, their motion must meet one of the conditions in Federal Rule of Civil Procedure 60(b). *See Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 38 (1st Cir. 2006). They do not explain which of those conditions they believe they meet. In any event, under any of Rule 60(b)'s conditions, Plaintiffs have not carried their "burden of demonstrating any change in the law, or the facts, which would warrant modification of the injunction." *See Gilday v. Dubois*, 124 F.3d 277, 284 (1st Cir. 1997) (emphasis removed). They have not shown "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," *id.* R. 60(b)(2), "fraud . . . , misrepresentation, or misconduct by an opposing party," *id.* R. 60(b)(3), or "any other reason that justifies relief," *id.* R. 60(b)(6). On the contrary, the reason Plaintiffs give for modification—that reinstatements are necessary to fully

remedy their alleged harms—was equally knowable at the time they filed their original preliminary-injunction motion. It is too late for Plaintiffs to rewrite that motion. *See id.* R. 60(b)(2).

**3.** The new declarations Plaintiffs submitted with their motion do not justify modification. As an initial matter, the declarations contain several inaccuracies. A non-exhaustive list of those inaccuracies, specific to the Centers for Disease Control and Prevention (CDC) and based on Defendants' review to date of Plaintiffs' declarations, is provided in the attached declaration of Christa Capozzola.[2] Ex. 1 (Capozzola Decl.). For example, one declaration asserts that "more than 70% of NIOSH [National Institute for Occupational Safety and Health] employees are still on administrative leave." ECF No. 84-4 (Cummings Decl.) ¶ 4. However, CDC's own review shows that approximately 46% of NIOSH employees are on administrative leave. Capozzola Decl. ¶ 13. Another declaration submitted by Plaintiffs states that "no one is available to continue preserving and protecting the sensitive ART [Assisted Reproductive Technology] data the contractors collect, or to ensure the data already collected is properly stored consistent with security protocols." ECF No. 84-8 (Jane Doe 8 Decl.) ¶ 15. But, in fact, other Division of Reproductive Health (DRH) employees still work on ART data, and "CDC continues to preserve and protect all sensitive ART data consistent with legal requirements and security protocols." Capozzola Decl. ¶ 17. Those are just two examples of inaccuracies in Plaintiffs' declarations. *See generally* Capozzola Decl. And in addition to containing inaccuracies, some of the declarations contain assertions that seem to have nothing to do with employee reinstatements. *E.g.*, ECF No. 84-1 (Larkin Decl.) ¶¶ 12-13 (alleging harms from a "loss of funding" for Rhode Island); *cf.* Capozzola Decl. ¶¶ 6-7 (explaining the availability of supplemental Fiscal Year 2025 funding for the National and State Tobacco

---

[2] Defendants reserve the right to identify additional inaccuracies in Plaintiffs' declarations upon further review.

Control Program and describing the status of Rhode Island's funding application). The Court should disregard such allegations and any other portions of the declarations that do not pertain to Plaintiffs' arguments about reinstatements.

To the extent the declarations contain information that is not inaccurate, they are still beside the point. Plaintiffs had all the information they needed in May, when they were briefing the preliminary-injunction motion, to argue that reinstatements were necessary to remedy their alleged harms. They missed that opportunity. *Cf. Pub. Serv. Co. of N.H. v. Patch*, 202 F.3d 29, 32 (1st Cir. 2000) (affirming denial of motion to modify injunction and noting that if movant believed a change that occurred "over a year before" decision in previous appeal "changed everything, it certainly should have stressed this in its original appeal . . . , or asked for a remand to consider the effect of the change" at the time). And the declarations do not show that reinstatement of particular employees is necessary to grant Plaintiffs the relief they sought in their preliminary-injunction motion (even assuming they established entitlement to any relief, which Defendants maintain they did not). As the Capozzola declaration shows, CDC components continue to perform statutorily required functions and other duties even with reduced staffing. And Plaintiffs have not established that any other components are failing to meet statutory obligations. Thus, they have established no injury to legally protected interests that is redressable by reinstatements.

**4.** Even if Plaintiffs had made some showing that reinstatements would remedy their alleged harms, this Court should not expand the injunction to require them. That is because it lacks the power to enter such a remedy. Reinstatement is not an available remedy under the Administrative Procedure Act (APA)—the statute under which this Court granted relief—because it exceeds courts' historical authority in equity. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974); *White v. Berry*, 171 U.S. 366, 377 (1898). The creation of new remedies is "a legislative

endeavor," *Egber v. Boule*, 596 U.S. 482, 491 (2022), and courts of equity lack "the power to create remedies previously unknown to equity jurisprudence," *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999); *see generally Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). Where Congress departs from equitable tradition, it does so expressly. For example, in the Civil Service Reform Act (CSRA), Congress authorized the Merit Systems Protection Board (MSPB) to award "reinstatement," as well as "backpay," to prevailing employees, and it has authorized review of the MSPB's decisions in the Federal Circuit. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 6 (2012) (collecting authorities). But Plaintiffs are not entitled to bring claims under the CSRA, and they did not follow CSRA-required procedures. And no statute authorizes courts to reinstate public employees in order to improve government services to third parties such as Plaintiffs here.

Even where Congress has authorized reinstatement, a grant of preliminary injunctive relief of reinstatement in government-personnel cases requires an elevated showing. *See Sampson*, 415 U.S. at 84. The Supreme Court has emphasized the historical denial of a reinstatement power to courts of equity, citing "the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs, and the traditional unwillingness of courts of equity to enforce contracts for personal service." *Id.* at 83-84 (citation and quotation marks omitted). Thus, a plaintiff in a "Government personnel case[]" must "at the very least . . . make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions." *Id.* at 84. This Court therefore lacks the power to require reinstatement of employees to redress speculative potential harms to entities other than the employees themselves. Were there any doubt, the First Circuit decision disregarding these limitations and ordering reinstatements of Department of Education

6

employees has now been stayed by the Supreme Court. *McMahon v. New York*, 606 U.S. __, 2025 WL 1922626 (July 14, 2025) (Mem.); *see id.* at *5 (Sotomayor, J., dissenting) (describing portion of injunction that required reinstatements). The Supreme Court's action in *McMahon* makes clear—at a bare minimum—that the Executive Branch should not be required to bring employees back to active status pending the outcome of litigation.

To reiterate: the Court's preliminary-injunction order does not require and has never required reinstatements. Serious doctrinal impediments would stand in the way of any such requirement. And Plaintiffs have not made the elevated showing required to override the general presumption against injunctive relief requiring employee reinstatements.

**5.** Any contemplation of Plaintiffs' untimely request should also consider the harms to Defendants. Ordering reinstatements of hundreds (or more) of employees would cause even more disruption to discretionary Executive functions than does the existing preliminary injunction. Setting aside that Plaintiffs have not established that Defendants violated any statute, it is one thing for a court to order the carrying out of statutorily mandated functions. It is quite another to order that particular employees be brought back to carry out those functions—especially at the behest of third parties like Plaintiffs, who have established no interest in which particular employees carry out the functions they argue are mandated. Such an order would effect an extreme intrusion into discretionary agency-management decisions. *See Sampson*, 415 U.S. at 83-34.

Specific harms are threatened as well. For example, security concerns may arise if employees who were placed on leave—and whose employment may yet be terminated if Defendants prevail in this litigation—are brought back to work pending the outcome of this litigation. Such employees would have reduced incentives to comply with standard operating

procedures, including critical security safeguards. In sum, practical as well as doctrinal considerations strongly undermine Plaintiffs' case for reinstatements.

**6.** In the event the Court grants any of the relief requested by Plaintiffs' cross-motion, that relief should be limited to reinstatements in the divisions Plaintiffs specifically discuss in their cross-motion: NIOSH, Office on Smoking and Health (OSH), and DRH (all within CDC), and the Center for Tobacco Products (CTP) (within the Food and Drug Administration). *See* Opp. at 11-14. Plaintiffs improperly fail to tailor their request to restoring the particular functions upon which they allegedly rely and as to which they believe reinstatements are required to restore those functions. Echoing a problem with their preliminary-injunction motion, they also fail to establish that statutorily required functions will in fact not be completed on required timelines absent reinstatements. Instead, they seek blanket reinstatement of employees who HHS has determined are unnecessary. That blanket request is improper. To the extent the Court expands its injunction—and it should not—it should limit relief to the specific divisions discussed in Plaintiffs' cross-motion.

**7.** The Court should also deny Plaintiffs' alternative request for discovery. Insofar as that request relates to Defendants' arguments on the effect of *CASA*, Defendants already responded in last week's filing. ECF No. 85 ("Reply") at 4. The same principles outlined there apply here: ordinary discovery is inappropriate in an APA case.[3]

Moreover, Plaintiffs offer zero basis for their suggestion that discovery would "assist . . . the Court" in resolving their cross-motion. Opp. at 14. They simply state that they would like discovery into "the current plans for reinstatement of employees under the injunction."

---

[3] As noted in last week's filing, Reply at 4, Defendants maintain that review is unavailable under the APA in this case. However, the Court has disagreed in this preliminary posture, and that disagreement has implications for the nature and scope of discovery.

8

*Id.* But they provide no legal authority that would justify such discovery. Although Plaintiffs quote *CASA*, that decision said nothing about discovery. And because the current injunction does not require reinstatements, any discussion of "plans" for reinstatements "under the injunction" simply assumes the conclusion that Plaintiffs would like this Court to reach about the propriety of expanding its injunction. Discovery into such "plans" would be a meaningless exercise. It would provide no useful information regarding the proper scope of relief in this case, which is governed by strict equitable limitations that preclude ordering employee reinstatements. The Court should not permit discovery that would serve little purpose other than to intrude on the operations of a government agency.

Dated: August 8, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division, Federal Programs Branch

CHRISTIAN DIBBLEE
Trial Attorney
Civil Division, Federal Programs Branch

/s/ *Elizabeth Hedges*
ELIZABETH HEDGES
Counsel to the Assistant Attorney General
Civil Division
950 Pennsylvania Ave NW
Washington, DC 20530
Telephone: (202) 616-0929
Email: Elizabeth.T.Hedges@usdoj.gov

*Counsel for Defendants*