## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
|         Plaintiffs, | |
|    v. | Civil Action No. 1:25-cv-00196 |
| ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, et al., | |
|         Defendants. | |

## <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ............................................................................................................ 1

I.    Plaintiffs Must Demonstrate Entitlement To Relief As To Each Allegation And Claim In The Amended Complaint. .......................................................... 2

II.    The Court Lacks Jurisdiction. ................................................................. 4

    A.    The CSRA Precludes District-Court Jurisdiction Over Plaintiffs' Claims. 4

    B.    Plaintiffs Lack Article III Standing. ........................................... 6

    C.    Some of Plaintiffs' Claims Belong In The Court Of Federal Claims. ...... 16

    D.    Plaintiffs' APA Claims Do Not Seek Judicial Review of a Discrete, Final Agency Action. ....................................................................... 18

III.    The Amended Complaint Does Not State a Claim for Violation of the APA. ...... 19

    A.    Section 706(1) of the APA Applies. ........................................... 19

    B.    Plaintiffs Fail to State an Arbitrary and Capricious Claim. ..................... 20

    C.    Plaintiffs Fail to State A Claim That The RIFs And Restructuring Are Contrary To Law. ....................................................................... 21

IV.    Plaintiffs' Freestanding Constitutional Claims Fail. ................................... 22

V.    Plaintiffs Have Not Asserted An *Ultra Vires* Claim. ................................ 24

CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alder v. Tenn. Valley Auth.*,
  43 F. App'x 952 (6th Cir. 2002) ................................................................. 5

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ................................................................. 23

*Atieh v. Riordan*,
  727 F.3d 73 (1st Cir. 2013) ................................................................. 21

*Brown v. Sec'y of Health and Human Servs.*,
  46 F.3d 102 (1st Cir. 1995) ................................................................. 20

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................. 3

*City of Fall River, Mass. v. FERC*,
  507 F.3d 1 (1st Cir. 2007) ................................................................. 16

*Climate United Fund v. Citibank, N.A.*,
  154 F.4th 809 (D.C. Cir. 2025) ................................................................. 18, 23

*Connectu LLC v. Zuckerberg*,
  522 F.3d 82 (1st Cir. 2008) ................................................................. 12

*Conservation L. Found., Inc. v. Acad. Express, LLC*,
  129 F.4th 78 (1st Cir. 2025) ................................................................. 6

*DaimlerChrylser Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................. 2, 6

*Dalton v. Specter*,
  511 U.S. 462 (1994) ................................................................. 22, 23

*Davis v. FEC*,
  554 U.S. 724 (2008) ................................................................. 6

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ................................................................. 4, 5

*FDA v. All. for Hippocratic Medicine*,
  602 U.S. 367 (2023) ................................................................. 7, 8

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ................................................................. 19

*Friends of Animals v. Jewell,*
    828 F.3d 989 (D.C. Cir. 2016) ........................................................................ 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ........................................................................................ 14

*Gill v. Whitford,*
    585 U.S. 48 (2018) ..................................................................................... 2, 15

*Glob. Health Council v. Trump,*
    153 F.4th 1 (D.C. Cir. 2025) ......................................................................... 23

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ........................................................................................ 20

*Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healy,*
    844 F.3d 318 (1st Cir. 2016) ......................................................................... 16

*Lance v. Coffman,*
    549 U.S. 437 (2007) .......................................................................................... 8

*Laufer v. Acheson Hotels, LLC,*
    50 F.4th 259 (1st Cir. 2022) .................................................................... 11, 14

*Lewis v. Casey,*
    518 U.S. 343 (1996) .......................................................................................... 2

*Liberty Mut. Ins. Co. v. Aftermath Servs. LLC,*
    2023 WL 5435878 (D. Mass. Aug. 23, 2023) ............................................... 14

*Lyman v. Baker,*
    954 F.3d 351 (1st Cir. 2020) ........................................................................... 7

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ........................................................................................ 19

*Madsden v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ..................................................................................... 2, 3

*Maryland v. USDA,*
    151 F.4th 197 (4th Cir. 2025) .................................................................... 4, 15

*Milk Train, Inc. v. Veneman,*
    310 F.3d 747 (D.C. Cir. 2002) ....................................................................... 22

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ....................................................................................... 6, 7

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ........................................................................................ 15

*Nat'l Treasury Employees Union v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025) ............................................................ 18, 19, 23

*New York v. Kennedy*,
    155 F.4th 67 (1st Cir. 2025) ..................................................................... 18

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................................. 19, 20

*NRC v. Texas*,
    605 U.S. 665 (2025) ............................................................................... 24, 25

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................... 9

*Reddy v. Foster*,
    845 F.3d 493 (1st Cir. 2017) .................................................................. 15, 16

*Roman Catholic Bishop of Springfield v. City of Springfield*,
    724 F.3d 78 (1st Cir. 2013) .......................................................................... 16

*Roth v. United States*,
    952 F.2d 611 (1st Cir. 1991) .......................................................................... 4

*Steir v. Girl Scouts of the USA*,
    383 F.3d 7 (1st Cir. 2004) ........................................................................... 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................ 2, 8, 13

*United States ex rel. Banigan v. PharMerica, Inc.*,
    950 F.3d 134 (1st Cir. 2020) ......................................................................... 3

*United States v. Fausto*,
    484 U.S. 439 (1988) ...................................................................................... 5

**Statutes**

5 U.S.C. § 706 ............................................................................................ 19, 20

15 U.S.C. § 1335a ............................................................................................ 12

15 U.S.C. § 1341 ........................................................................................ 11, 20

15 U.S.C. § 4403 ............................................................................................. 12

42 U.S.C. § 242c ............................................................................................. 22

42 U.S.C. § 263a-5 ........................................................................................... 12

42 U.S.C. § 274f-3 ........................................................................................... 25

42 U.S.C. § 290aa ............................................................................................ 25

42 U.S.C. § 290aa-4 ......................................................................................... 25

42 U.S.C. § 290bb-36c ................................................................................................ 13

42 U.S.C. § 299 ........................................................................................................... 25

42 U.S.C. § 9902 ......................................................................................................... 12

**Regulations**

90 Fed. Reg. 5917 (Jan. 17, 2025) ............................................................................ 12

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ............................................................... 17, 18

FDA, *Searchable Tobacco Products Database*,
    https://www.accessdata.fda.gov/scripts/searchtobacco/ ......................................... 9

FDA, *Tobacco Compliance Check Outcomes*,
    https://timp-ccid.fda.gov/ ................................................................................... 9, 10

*FY 2023 Cooperative Agreements for States and Territories to Improve Local 988 Capacity*,
Notice of Funding Opportunity No. FG-23-006,
    https://www.samhsa.gov/sites/default/files/grants/pdf/fy-2023-988-state-and-territory-
    nofo.pdf ............................................................................................................. 13

HHS, *Welfare Indicators and Risk Factors, Twenty-Fourth Report to Congress*,
    https://aspe.hhs.gov/reports/welfare-indicators-risk-factors-24th-report-congress ............... 13

*Welfare Indicators and Risk Factors: 24th Report to Congress* (Aug. 2025),
    https://aspe.hhs.gov/sites/default/files/documents/0cfb67b2619c9f7ef4fd40b14a5d4da7/24th
    %20Welfare%20Indicators%20Report%20to%20Congress.pdf ........................................... 13

**ARGUMENT**

Plaintiffs' opposition to the Department's motion to dismiss obfuscates the key issues. The Court's preliminary-injunction decision—which considered a different pleading with different allegations and addressed only a subset of the relevant agencies—cannot by itself greenlight Plaintiffs' Amended Complaint. *See* ECF No. 94 (Am. Compl.). A new complaint requires new analysis. And Plaintiffs fail to persuasively rebut the Department's reasons for dismissal.

The Civil Service Reform Act (CSRA) precludes this Court's jurisdiction over what is essentially an employment dispute, and a large portion of Plaintiffs' allegations are not justiciable because they lack Article III standing. Moreover, the reductions in force ("RIFs") and agency restructuring that Plaintiffs challenge are not the kind of discrete, final agency action that can be reviewed under the Administrative Procedure Act (APA). Even if those actions did qualify for judicial review, Plaintiffs have failed to state claims under the APA. Finally, Plaintiffs' constitutional and *ultra vires* claims should be dismissed.

Even if the Court does not grant the motion in full—as it should—Plaintiffs may not obtain relief beyond the injuries they have alleged and may ultimately prove. If Plaintiffs do not plead an injury or state a claim as to particular allegations, Plaintiffs may not obtain relief based on that allegation, nor may it proceed further in this case. This is a fundamental limitation on the power of Article III courts, and it is why the Department urged the Court to consider each specific allegation made against each component. *See* ECF No. 98 (Mot.) at 48–55. Plaintiffs' failure to respond to many of these arguments makes it even more straightforward for the Court to specify which components remain in this case and which do not—even if it does not grant the motion to dismiss in full, as it should.

I.   **Plaintiffs Must Demonstrate Entitlement To Relief As To Each Allegation And Claim In The Amended Complaint.**

Plaintiffs' opposition muddies the analysis needed to rule on the Department's motion. Rather than engage with the Department's specific arguments regarding each allegation in the Amended Complaint, Plaintiffs ask the Court to simply rely on its preliminary-injunction decision and what they describe as their "copious, well-pleaded allegations." ECF No. 101 (Opp.) at 52.[1] According to Plaintiffs, so long as they have alleged some injury, they can obtain relief against the entire RIF and restructuring plan. The Amended Complaint alleges many grievances, but Plaintiffs fail to tie each grievance against each sub-agency to a specific, current injury (as opposed to a hypothetical, vague claim of possible future injury), to a specific statutory requirement (as opposed to a broad or discretionary grant of authority), and/or to the March 27 press release Plaintiffs purport to challenge.

Each purported grievance must do all of these things before Plaintiffs are entitled to relief as to that grievance. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). In other words, a court cannot grant relief for just any injury—the plaintiff must establish that he, she, or it has suffered an injury. "Article III does not give federal courts the power to order relief to any uninjured plaintiff[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotation marks omitted). Any "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *DaimlerChrylser Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). And "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsden v. Women's Health Ctr., Inc.*,

---

[1] All pinpoint citations to papers filed in this case are to the page numbers at the bottom of the filing, not the ECF pagination.

512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  Thus, Plaintiffs can seek to enjoin only those portions of the RIFs and restructuring that allegedly injure them.  Otherwise, they would receive relief beyond their alleged injuries.

Plaintiffs also make much of this Court's preliminary-injunction decision, as if it controls the outcome now.  *See, e.g.*, Opp. 21, 22, 43, 44.  But that decision did not consider all agencies or components.  *See* ECF No. 73 at 15–23 (discussing certain agencies and their components); ECF No. 89 (clarifying injunction to apply only to certain agencies and components).  Moreover, the Amended Complaint was not the operative pleading underlying that preliminary injunction. Plaintiffs cannot wave this fact away by referencing "the bones of the Amended Complaint" and their supposed similarity to the initial Complaint.  Opp. 18.  As Plaintiffs acknowledge either directly or impliedly in the Amended Complaint, the relevant facts have changed significantly since they filed suit.  This motion considers the Amended Complaint, and the Court must analyze that pleading, not the predecessor complaint Plaintiffs have voluntarily superseded.

The Department explained in Section IV of its motion why the allegations in the Amended Complaint as to each agency or component are deficient.  Plaintiffs do not respond to many of those arguments, instead urging the Court to rely on previous decisions rather than analyzing each allegation to ensure the presence of all the elements necessary to support jurisdiction and to state a claim for relief.[2]  Article III, however, requires this Court to undertake just that analysis.

---

[2] That lack of response merits granting the motion as to any allegations challenged in Section IV to which Plaintiffs did not respond.  *See United States ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 144 n.14 (1st Cir. 2020).

II.    **The Court Lacks Jurisdiction.**

A.  **The CSRA Precludes District-Court Jurisdiction Over Plaintiffs' Claims.**

The Civil Service Reform Act (CSRA) precludes district-court jurisdiction over Plaintiffs' claims.  *See* Mot. 10–14.  Congress enacted the CSRA "to provide an exclusive procedure for challenging federal personnel decisions."  *Roth v. United States*, 952 F.2d 611, 615 (1st Cir. 1991) (quotation marks omitted).  That "comprehensive system" is the "exclusive means" for reviewing federal employment decisions.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 8 (2012).

Plaintiffs respond that this "is not an employment dispute."  Opp. 31.  Plaintiffs' main theory, though, is that because certain employees received RIF notices, Plaintiffs have lost services or information attributable to those employees.  *See, e.g.*, *id*. at 22 ("lack of staffing" at NIOSH means that certain funding "will not be administered"); *id.* (Office on Smoking and Health cannot comply with certain mandates due to "the loss of staff"); 24 ("Because of the absence of PRAMS staff to coordinate and assist," usable PRAMS data is not being collected.).  In that way, this case is like *Maryland v. USDA*, where state plaintiffs alleged that large-scale probationary employee removals—which they characterized as "constructive" RIFs—deprived states of benefits they were entitled to and imposed burdens attributable to removed employees' loss of employment.  *See* 151 F.4th 197, 208–09 (4th Cir. 2025); *contra* Opp. 34 (attempting to distinguish *Maryland*).  Indeed, the primary relief that Plaintiffs have preliminarily obtained here is an injunction prohibiting execution of RIF notices to certain Department employees.  *See* ECF No. 73 at 56.  And Plaintiffs even requested additional relief to reinstate these employees.  *See* ECF No. 83 at 11–14.

Plaintiffs deny their own characterizations of their theory by saying they don't challenge "any specific decisions about individual employees."  Opp. 32.  But that is precisely what their claims attempt—Plaintiffs want these employees to be reinstated.  *See* ECF No. 83 at 11–14.  Such

a challenge to a reduction-in-force is "a fundamental employment claim." *Alder v. Tenn. Valley Auth.*, 43 F. App'x 952, 956 (6th Cir. 2002).

Plaintiffs also argue that the Department "point[s] to nothing in the text of the CSRA" foreclosing Plaintiffs' ability to seek judicial review of employment decisions. Opp. 31. That is incorrect. As the Department argued, the exclusion of Plaintiffs from the comprehensive scheme establishing administrative and judicial review for the types of personnel actions challenged here necessarily prevents these Plaintiffs from seeking review of those actions under different provisions. *See* Mot. 13–14. That argument follows from the text and context of the CSRA— indeed, the Supreme Court relied on "the statutory language" and "the structure of the statutory scheme" when it determined in *United States v. Fausto* that certain plaintiffs were excluded from the CSRA's provisions. *See* 484 U.S. 439, 449 (1988).

Plaintiffs also fault the Department for supposedly not "attempt[ing] to argue that the MSPB or FLRA has any expertise in the claims raised in this case." Opp. 33. Their premise is incorrect, as the Supreme Court in *Elgin* held that the MSPB had sufficient expertise to adjudicate both statutory and constitutional claims (and that its inability to adjudicate facial constitutional challenges to a federal statute was of no moment). *Elgin*, 567 U.S. at 22–23. And again, consistent with the Supreme Court's holding in *Elgin*, the Department cited multiple cases in which courts have ruled that the CSRA precludes district-court jurisdiction even over broad statutory and constitutional claims. *See* Mot. 12–13.

The Department otherwise maintains its previous reasons for why the CSRA precludes jurisdiction.

### B. Plaintiffs Lack Article III Standing.

Plaintiffs similarly decline to engage with the Department's substantive arguments regarding the required specificity of relief. Plaintiffs instead rely on this Court's preliminary-injunction decision and the First Circuit's decision denying the Department's request for a stay of that decision. *See* Opp. 21. As noted, though, that decision involved a different pleading and analyzed standing as to only some claims made in the Amended Complaint. *See* ECF No. 73 at 15–23. Standing is determined based on the Amended Complaint currently before the Court. *See Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 85–86 (1st Cir. 2025).

Nor can Plaintiffs leverage one demonstrated injury to get injunctive relief as to all their allegations. The injury-in-fact requirement ensures that courts do not enjoin actions beyond those found to have harmed the plaintiff. As the Supreme Court has noted, "[t]he actual-injury requirement would hardly serve the purpose . . . of preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration." *Cuno*, 547 U.S. at 353 (quotation marks omitted). And plaintiffs must demonstrate standing "for each form of relief" that they seek, again to ensure that a court does not grant relief based on an action that has not injured the plaintiff. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

For that reason, standing to challenge an action by one government actor does not allow standing to challenge an action by a different government actor. *See, e.g.*, *Davis v. FEC*, 554 U.S. 724, 733–34 (2008) (standing to challenge one statutory provision "does not necessarily" confer standing to challenge a related provision); *Cuno*, 547 U.S. at 353 (an injury with respect to municipal taxes did not entitle plaintiffs to seek a remedy regarding state taxes). "Heeding these

conditions is critically important in a sprawling suit like this one" where Plaintiffs seek to enjoin RIFs at multiple programs within multiple agencies and the restructuring of multiple agencies within the Department. *Murthy*, 603 U.S. at 62.

      1.   Plaintiffs Do Not Allege A Particularized Injury In Many Allegations.

Standing requires a "particularized" injury, which means the injury must "manifestly 'affect the plaintiff in a personal and individual way.'" *Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020) (citation omitted). "Injuries that are too widely shared or are comparable to the common concern for obedience to the law" cannot establish standing. *Id.* (quotation marks omitted).

Plaintiffs largely do not refute the Department's arguments for why certain alleged injuries are not particularized. For example, Plaintiffs say that they "partner with" the World Trade Center Health Program (WTCHP), Opp. 4, but the Amended Complaint includes no details about the WTCHP support Plaintiffs have allegedly lost because of RIFs within NIOSH. *See* Am. Compl. ¶¶ 160–64 (nearly two pages of WTCHP allegations without a single allegation of injury to Plaintiffs). Complaints about what the Zadroga Act requires, meanwhile, *see* Opp. 11, are simply exhortations that the Department "act in accordance with law," and such allegations cannot establish standing, *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 381 (2023) (quotation marks omitted). Similarly, Plaintiffs double down on allegations regarding reductions in the Office of Infectious Disease and HIV/AIDS Policy without explaining how they rely on that Office. *See* Opp. 17. So too for CDC's Strategic Plan—Plaintiffs allege that they "are less protected against disease and conditions" without that Plan, Am. Compl. ¶ 114, but they do not explain with any particularity how they rely on that Plan "to protect themselves against disease," Opp. 26. Or consider Plaintiffs' response regarding the Maternal and Child Health Epidemiology Program— they assert that the program "provided direct assistance to states," Opp. 12, but they still fail to

argue that they have actually lost any such assistance due to RIFs. As for their claims regarding NIOSH's mining research divisions, that a Washington state agency "frequently collaborated" with NIOSH Spokane employees in the past does not mean that RIFs to the Spokane division have affected an ongoing collaboration. Am. Compl. ¶ 151 (cited at Opp. 22). Plaintiffs do not allege any ongoing collaboration affected by the RIFs or that they benefit from the "specialized equipment" that allegedly cannot be operated due to the RIFs. *Id.* ¶ 156 (cited at Opp. 22).

Plaintiffs have also failed to allege a particularized injury from any future restructuring of the Department's various agencies. Nowhere in the Amended Complaint do Plaintiffs allege that simply moving one agency or part of an agency elsewhere within the Department's structure would cause any injury to Plaintiffs. Indeed, in the section of the opposition meant to catalogue "effects of the March 27 Directive," Plaintiffs focus only on how "termination notices" led to alleged injuries at various agencies. Opp. 9. This is problematic because Plaintiffs seek to enjoin all parts of the RIFs and restructuring—in fact, Plaintiffs admit that their *ultra vires* claim asserts violations of laws dictating the structure of the Department. *See* Opp. 50–51. But without any specific injury, Plaintiffs' exhortation that the Department should abide by those laws is a "general complaint[] about the way in which the government does its business" that could, in theory, be shared by every member of the public. *FDA*, 602 U.S. at 379 (quotation marks omitted). That "generally available grievance about government" does not allege "an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quotation marks omitted). At the very least, then, the Court should dismiss the portion of Plaintiffs' claims challenging any future restructuring of the Department.

Requiring a particularized injury ensures "that federal courts exercise their proper function in a limited and separate government." *TransUnion*, 594 U.S. at 423 (quotation marks omitted).

Plaintiffs cannot evade this requirement.

    2.   Many Alleged Injuries Are Speculative.

As with their other standing arguments, Plaintiffs assert that some of the prospective injuries they will suffer are not speculative because they "have already occurred or are imminent." Opp. 21. This *ipse dixit* doesn't work. Plaintiffs rely almost exclusively on evidence from the preliminary-injunction phase of this case to show that injuries have already occurred, *see* Opp. 22, but "past exposure to [allegedly] illegal conduct does not in itself" create an entitlement to the prospective injunctive relief that Plaintiffs seek, *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The Amended Complaint is now the operative pleading, not the Complaint on which the preliminary-injunction motion was based, and the injuries that allegedly existed at the time of filing the Amended Complaint are determinative of Plaintiffs' standing. The Department made that point in its Motion, and Plaintiffs do not respond to it.

Plaintiffs also continue to speculate about injuries they think they might suffer because of the RIFs, despite the Department's citation of publicly accessible and judicially noticeable materials. Consider CTP, which Plaintiffs still say cannot meet its mandates under the Tobacco Control Act. Opp. 15. As the Department has demonstrated numerous times, Plaintiffs are mistaken. CTP continues to review premarket applications and enforce tobacco sales laws. *See* FDA, *Searchable Tobacco Products Database*, https://www.accessdata.fda.gov/scripts/searchtobacco/ (last accessed Dec. 5, 2025) (demonstrating continued review of applications and issuance of decisions);[3] FDA, *Tobacco*

---

[3] Relying on the web page previously cited by the Department, certain proposed *amici* assert that FDA has taken only three Premarket Tobacco Product Applications (PMTA) actions this year. *See* ECF No. 104 at 20. FDA has recently changed how it publicizes PMTA review decisions on its website. The web page cited in this brief, *see* FDA, *Searchable Tobacco Products Database*, https://www.accessdata.fda.gov/scripts/searchtobacco/, is a searchable database of tobacco actions

*Compliance Check Outcomes*, https://timp-ccid.fda.gov/ (last visited Dec. 5, 2025) (demonstrating that compliance checks have continued to occur and that CTP has issued thousands of civil money penalties in 2025). In fact, because Plaintiffs' only allegations regarding FDA relate to these alleged failures by CTP, the Court can easily dismiss all claims regarding FDA.

Similarly, Plaintiffs also do not dispute that SAMHSA has released the annual report for TEDS and has publicized its intent to release more data this year. *See* Mot. 22. And Plaintiffs admit that staff previously subject to the RIF have returned to NCHHSTP labs. *See* Opp. 13, n.7. Not only are Plaintiffs' alleged injuries from lapses in these services not imminent, they are nonexistent.

Plaintiffs similarly speculate that they "will be harmed in numerous ways *if Head Start programs in their States are forced to pause operations or close*." Am. Compl. ¶ 282 (emphasis added). Plaintiffs do not allege that Head Start programs have closed; they instead speculate about harm that might come "if" they close. They cannot manufacture an imminent injury simply by saying they "could be subjected in the future to the effects of an unlawful policy or illegal conduct." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir. 2004) (quotation marks omitted). Yet that is precisely what Plaintiffs attempt to do as to Head Start.

So too regarding the NIOSH Education Resource Centers (ERCs). Contrary to what Plaintiffs say, the Department did not "forget[]" that some State agencies run ERCs. Opp. 22. Rather, the Department explained that Plaintiffs' alleged ERC-related injuries rest on speculation. The Amended Complaint simply alleges that "the *threatened* elimination" of ERCs would harm

---

by FDA. When filtering for calendar year 2025 and PMTA Marketing Authority, that database reflects 25 Marketing Granted Orders issued this year by FDA, not three total PMTA actions as *amici* claim. CTP has taken many additional actions accepting, filing, refusing to accept, refusing to file, and denying PMTAs, not all of which are reflected in this database.

certain state agencies, Am. Compl. ¶¶ 158–59 (emphasis added), and merely speculates that NIOSH funding "will now not be administered due to a lack of staffing," Opp. 22.   Plaintiffs similarly speculate that RIFs at the Office on Smoking and Health (OSH) will render the Department unable to meet the requirements of 15 U.S.C. § 1341(a), but that provision does not require that OSH—as opposed to some other component of the Department—administer compliance with those statutory mandates, nor does that statute specifically require the many programs that Plaintiffs say OSH must take under that statute.   *See* Opp. 22.   The Amended Complaint is full of allegations like these, presupposing that reduction of certain employees necessarily means the functions historically performed by those employees will no longer be performed.   Such predictions are insufficient to establish standing.

> 3.   Plaintiffs Fail To Assert A Cognizable Informational Injury.

Plaintiffs do not dispute that an informational injury requires deprivation of information to which they are legally entitled.   Plaintiffs' primary authority acknowledges as much.   *See Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 275 (1st Cir. 2022), *vacated for mootness*, 601 U.S. 1 (2023) (plaintiff had suffered a "pure informational injury" because she "was not given information she personally had a right to under [the statute] and its regulations").   That fact alone dispenses with many of their alleged informational injuries.   Plaintiffs never allege that a statute entitles them to particular guidance from Head Start and SAMHSA, *see* Am. Compl. ¶¶ 285–86, 310, 312, a report from Community Counts on inhibitor development, *see id.* ¶¶ 238–39, or the National Electronic Injury Surveillance System, *see id.* ¶ 255.   Those allegations thus cannot establish injury-in-fact.   So too for any allegations that OSH has failed to manage tobacco ingredient reports.   Plaintiffs never assert that a statute requires OSH to collect and analyze those reports at a particular time—

the only deadline involved rests on regulated entities.[4]  *See* Mot. 18.  Plaintiffs cannot enforce a deadline that "by its terms does not require the public disclosure of information" at a particular time.  *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

The same principles doom any informational injury stemming from their allegations regarding the poverty guidelines.  The Secretary must update those guidelines annually and has already done so for 2025.  *See* 42 U.S.C. § 9902(2); 90 Fed. Reg. 5917 (Jan. 17, 2025).  The Department thus has not deprived Plaintiffs of any information to which they are legally entitled. That the time of year during which the Secretary typically publishes the poverty guidelines is getting closer, *see* Opp. 26 n.10, does not change the fact that Plaintiffs have not (and could not have) alleged the deprivation of this information.  So too for the alleged nonpublication of Assisted Reproductive Technology (ART) data, *see* Am. Compl. ¶ 189, which must be published "annually," 42 U.S.C. § 263a-5.  Plaintiffs respond that the Department does not dispute that other types of data regarding "maternal mortality, and the needs of pregnant and postpartum people and infants in emergencies, ha[ve] not been collected."  Opp. 26.  But this allegation is yet again devoid of details—*e.g.*, what specific data are they missing, when was it required by statute to be provided, etc.—and is thus insufficiently specific to confer standing.  The Department need not do that work for Plaintiffs.  If they allege a deprivation of data, they should allege which programs are not providing that data.  "After all, the plaintiff is both the author and the master of its complaint." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 93 (1st Cir. 2008).

---

[4] Proposed *amici* cite 15 U.S.C. §§ 1335a(a) and 4403(a) to suggest that OSH has a mandatory deadline to collect and analyze ingredient reports.  *See* ECF No. 104 at 9 n.15.  But just like the regulations that the Department cited in its motion, those statutes place the burden on importers to "annually" file ingredient lists. 15 U.S.C. §§ 1335a(a), 4403(a).  There is no required timeline for the Department to publish any reports about those ingredients, so a temporary pause does not violate a statute or deprive Plaintiffs of any information to which they are legally entitled.

In other instances, the Department has published information that Plaintiffs say has not been published.  ASPE provided the required report on welfare indicators to Congress in August 2025.  *See Welfare Indicators and Risk Factors: 24th Report to Congress* (Aug. 2025), https://aspe.hhs.gov/sites/default/files/documents/0cfb67b2619c9f7ef4fd40b14a5d4da7/24th%20 Welfare%20Indicators%20Report%20to%20Congress.pdf; *contra* Am. Compl. ¶ 319; Opp. 17.[5] And SAMHSA continues to meet the requirements of 42 U.S.C. § 290bb-36c(e).  *Contra* Opp. 16, Am. Compl. ¶ 311.  Under an existing cooperative agreement, SAMHSA provides money to States to collect and aggregate data from the National Suicide Prevention Lifeline Program.[6]  Contrary to Plaintiffs' claim, aggregated demographic data is thus available to the Plaintiffs because they collect it themselves and aggregate it.

Regarding PRAMS, Plaintiffs admit that data collection has resumed.  *See* Opp. 24, Am. Compl. ¶ 183.  Their allegations of past lapses cannot justify prospective relief regarding future data collection efforts.  *See* Mot. 24–25.  Moreover, whether the collected data is usable or not is a discussion about the format of the data, not whether data required to be disclosed was not disclosed.  *See TransUnion*, 594 U.S. at 441 (allegations about data formatting did not create an informational injury).

---

[5] This report has also been published on the Department's website.  *See* HHS, *Welfare Indicators and Risk Factors, Twenty-Fourth Report to Congress*, https://aspe.hhs.gov/reports/welfare-indicators-risk-factors-24th-report-congress (last accessed Dec. 5, 2025).

[6] *See FY 2023 Cooperative Agreements for States and Territories to Improve Local 988 Capacity*, Notice of Funding Opportunity No. FG-23-006, available at https://www.samhsa.gov/sites/default/files/grants/pdf/fy-2023-988-state-and-territory-nofo.pdf.

### 4. Plaintiffs Do Not Dispute That Downstream Budgetary Effects Do Not Constitute Cognizable Injuries In Fact.

Plaintiffs notably do not respond to the Department's argument that downstream effects on Plaintiffs' budgets from the RIFs and restructuring do not constitute a cognizable injury in fact. *See* Mot. 25–27. As the Department asserted, that argument is not foreclosed by the First Circuit's decision in this case, which analyzed whether Plaintiffs asserted a *parens patriae* theory of standing. *See* Mot. 26, n.8. The closest response appears to be Plaintiffs' citation of *Laufer* and its discussion of "downstream" injuries. 50 F.4th at 275. That case deals only with informational injury, however, *see id.* at 267, and some of Plaintiffs' asserted downstream effects do not stem from alleged informational injuries, *see, e.g.*, Am. Compl. ¶ 197 (alleging that Plaintiffs must take on the cost of producing tobacco ads because OSH is not producing those ads).

### 5. Plaintiffs' Asserted Injuries Still Are Not Redressable By The Requested Relief.[7]

Plaintiffs have not asserted that it is "likely," rather than "merely speculative," that their requested relief—undoing the RIFs and blocking the restructuring—would redress their injuries. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). As discussed, many of Plaintiffs' asserted injuries are speculative to begin with. And where information or services have allegedly been withheld, Plaintiffs' alleged injuries would be relieved not by an order undoing the RIFs and blocking the restructuring, but by a more narrowly tailored

---

[7] The Department did not (and does not) contest that Plaintiffs have alleged that most of their injuries are traceable to the RIFs and restructuring, *see* Opp. 20, n.9, but it clearly contested the traceability between Plaintiffs' allegations related to the 988 Lifelines and the challenged RIFs and restructuring. *See* Mot. 55. Plaintiffs now say that despite that clear argument and citation of a Supreme Court case in support, *see id.*, the Department "fail[ed] to provide a legal basis to argue against traceability," Opp. 20, n.9. That is incorrect. The Department made clear that it was challenging traceability as to a subset of Plaintiffs' alleged injuries and is not raising that argument anew now such that Plaintiffs are entitled to file a sur-reply. Rather, Plaintiffs' failure to respond to the argument waives any objection to it. *See Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*, 2023 WL 5435878, at *4 (D. Mass. Aug. 23, 2023).

order directing the Department to provide the requested information or services. *See Maryland*, 151 F.4th at 214. Although a court need not redress every aspect of an alleged injury, it still must tailor any remedy to address a plaintiff's particular injuries. *See Gill*, 585 U.S. at 73. Plaintiffs' asserted injuries are based on the Department's alleged failure to provide information or services. At most, those injuries would merit an order directing the Department to provide those things, not an expansive order directing the Department to reinstate particular employees, as Plaintiffs have already requested and this Court has denied. *See* ECF No. 89 (denying request for reinstatement). Nor would those injuries merit an order dictating the structure of the Department though vacatur of the Secretary's restructuring announcement.

6. Plaintiffs' Ostensible Challenge To The Restructuring Is Not Ripe.

This Court lacks jurisdiction over any challenge to the restructuring of the Department because that challenge is not ripe.

The ripeness doctrine prevents "adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quotation marks omitted). It also prevents courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies[.]" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (quotation marks omitted). Here, Plaintiffs' challenge to the restructuring is not fit for judicial review because no restructuring has yet occurred. No agencies or components have moved, nor has the Department otherwise altered its organizational structure yet. Any allegations about what will happen in a future restructuring are thus premature.

Ripeness has two prongs, both of which also counsel against this Court prematurely inserting itself into any dispute about restructuring. The fitness prong "has both jurisdictional and

prudential components." *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013). The former component "concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts." *Id.* As discussed already, there is no live case or controversy here because Plaintiffs do not allege a particularized injury from the restructuring. *See supra* at 7–9. As for the prudential component, it asks "whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues; if elements of the case are uncertain, [or if] delay may see the dissipation of the legal dispute without need for decision." *Roman Catholic Bishop*, 724 F.3d at 89. The Department has already stated that its steps to this point regarding the restructuring are preliminary, *see* Mot. 36, and the exact details of any restructuring are yet to be determined. The Court should wait to involve itself until the context is "sufficiently concrete to allow for focus and intelligent analysis" of the Department's restructuring. *City of Fall River, Mass. v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007).

Ripeness also includes a hardship prong probing "the harm to the parties seeking relief" if the Court withheld a decision. *Reddy*, 845 F.3d at 501 (quotation marks omitted). There is no hardship here to withholding any decision on the restructuring because Plaintiffs have failed to allege any particularized injury from the placement of various agencies or components in particular spots within the Department's organizational chart. Nor do they allege that any such particularized injury will ever arise from the restructuring. Such "contingent harm" means there is no hardship or prejudice by withholding a decision now. *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healy*, 844 F.3d 318, 330 (1st Cir. 2016).

### C. Some of Plaintiffs' Claims Belong In The Court Of Federal Claims.

Plaintiffs' responses regarding the Tucker Act's applicability to their claims are not persuasive. Plaintiffs' primary response is that their allegations focus on statutory violations "apart

from any particular grant agreement." Opp. 35. As with other arguments, this comment disregards Plaintiffs' actual allegations, some of which allege a failure by the Department to provide services or money required by particular agreements.

For example, Plaintiffs claim that CDC no longer provides data systems that "were required under the terms of the *PRAMS agreements*." Am. Compl. ¶ 184 (emphasis added). They claim, in other words, that the Department's RIFs and restructuring have deprived Plaintiffs of a service required by a contract with the United States. *See also id.* ¶ 185 (challenging CDC's failure to provide "substantial programmatic involvement" as "required" by the PRAMS agreement). Similarly, Plaintiffs allege that a lack of staff has prevented the Department from providing services under "agreements related to [the] Disease Intervention Training Centers[,]" *id.* ¶ 211, and "cooperative agreements" under the Sickle Cell Data Collection program, *id.* ¶ 237. These are allegations about the Department's supposed failure to abide by particular contracts and grant agreements.

Plaintiffs are also incorrect when they profess not to be asking for specific performance of those agreements. *See* Opp. 28, 36–37. Multiple allegations are premised on the allegation that "there are no staff" to administer agreements or provide services required by them. Am. Compl. ¶ 214; *see also id.* ¶¶ 237 ("[T]here has been no staff to manage this program."); 184 (Plaintiffs "lost access" to particular PRAMS staff); 241 (alleging lack of subject matter expert to provide technical assistance from NCBDDD); 244 (alleging Department cannot support EHDI grant recipients due to lack of EHDI staff). If these services are required by the agreement (as Plaintiffs allege) and if the requested vacatur of the RIFs and restructuring would "permit reinstatement" of those required services (as Plaintiffs say it would, *see* Opp. 28–29), then the requested remedy is one that would require the Department to "fulfill . . . contractual obligation[s]." *Specific*

- 17 -

*Performance*, Black's Law Dictionary (12th ed. 2024).  That is a request for specific performance under the agreements, and such a request can be heard only in the Court of Federal Claims.  *See Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 822–23 (D.C. Cir. 2025).

The Department acknowledges the First Circuit's conclusion in its stay decision that the Tucker Act likely would not apply to allegations in Plaintiffs' original pleading.  *See New York v. Kennedy*, 155 F.4th 67, 74 n.4 (1st Cir. 2025).  But, again, that decision was made in a preliminary posture and considered a different complaint containing different allegations, as did this Court's previous determination regarding the Tucker Act.  *See* ECF No. 73 at 30.  Moreover, the Amended Complaint includes allegations about services required under various agreements that were not present in the original complaint.  *See, e.g.*, Am. Compl. ¶¶ 184–85 (adding that services were required under PRAMS agreements); 214 (adding allegation about lost funding from HIV Medical Monitoring Project); 241 (adding allegations about effects on Sickle Cell Data Collection cooperative agreements).

### D.  Plaintiffs' APA Claims Do Not Seek Judicial Review of a Discrete, Final Agency Action.

As explained in the Department's motion, the RIFs and restructuring challenged by Plaintiffs are not the kind of discrete and final agency action that this Court has jurisdiction to review under the APA.  *See* Mot. 33–37.  Plaintiffs point to the First Circuit's stay decision since then, *see* Opp. 38 & n.12, but fail to meaningfully acknowledge that the Amended Complaint is different from the pleading before the First Circuit then.

Plaintiffs are wrong, moreover, about the relevance of *National Treasury Employees Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025), a decision that post-dates this Court's decision on the preliminary injunction.  There, the D.C. Circuit concluded that a putative decision to shut down an agency was insufficiently discrete to qualify for APA review.  *See id.* at 784.  As pleaded, that

alleged decision covered "a constellation" of actions, all of which were "discrete" but could not be aggregated into a single action for purposes of review. *Id.* Those "separate, discrete actions" included "firing employees," "cancelling contracts" and "declining additional funding." *Id.*

The March 27 press release similarly contemplates multiple actions, such as sending RIF notices to thousands of employees and relocating approximately a dozen components within the Department. Just like the plaintiffs in *Vought*, Plaintiffs have "dress[ed] up 'these many individual actions'"—including RIFs of thousands of employees—"as a single decision in order to challenge all of them at once[.]" *Id.* That is precisely the kind of "broad programmatic attack" that the Supreme Court has rejected because it would entangle this Court in programmatic oversight across a large swath of the Department. *Norton v. S. Utah Wilderness All.*, 541 U.S. 55, 65 (2004) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

Regarding finality, Plaintiffs do not dispute that they are not the subject of the RIFs and restructuring and, as a result, the RIFs and restructuring will not affect Plaintiffs' rights and obligations such that the RIFs and restructuring is final agency action. *See* Mot. 36 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)). And the restructuring of various agencies and sub-agencies has not yet occurred. *See supra* at 15–16. Any APA claims regarding restructuring should therefore be dismissed because the Department has yet to reach the end of its decisionmaking.

## III.  The Amended Complaint Does Not State a Claim for Violation of the APA.

### A.  Section 706(1) of the APA Applies.

Plaintiffs continue to assert that they allege claims under 5 U.S.C. § 706(2), rather than § 706(1). *See* Opp. 40. Yet their entire theory is that the RIFs and restructuring are preventing the Department "from conducting work that is fully funded by Congress and *required by statute*." *Id.* at 32 (emphasis added). As the Department has consistently argued, these are allegations that the

Department is withholding services or information which are "legally required," the heartland of a § 706(1) claim. *Norton*, 542 U.S. at 63 (2004) (emphasis omitted). For that reason, the Court should analyze Plaintiffs' allegations based on whether the allegedly lapsed services are actually required by law. Many of them are not, as the Department has pointed out. *See* Mot. 39–40, 48–55.

Consider 15 U.S.C. § 1341(a), for example, which requires the Secretary to establish a program "to inform the public of any dangers to human health presented by cigarette smoking." 15 U.S.C. § 1341(a). The statute then directs that, "[i]n carrying out such a program," the Secretary "shall," among other things, "collect, analyze, and disseminate (through publications, bibliographies, and otherwise) information, studies, and other data relating to the effect of cigarette smoking on human health." *Id.* § 1341(a)(4). That language does require the Secretary to establish programs to collect, analyze, and disseminate data. But it does not require the Secretary to publish particular studies or tools, such as the National Youth Tobacco Survey or the Best Practices for Comprehensive Tobacco Control Program Guide, both referenced in the Amended Complaint. *See* Am. Compl. ¶¶ 175, 177; *contra* Opp. 22. To hold otherwise would read requirements for those specific programs into otherwise broad statutory language that leaves to the Secretary the best way to collect data and the best format in which to disseminate it. Indeed, that is often a decision about resources, and this Court cannot "second guess" such a decision. *Brown v. Sec'y of Health and Human Servs.*, 46 F.3d 102, 111 n.15 (1st Cir. 1995); *see Heckler v. Chaney*, 470 U.S. 821, 830–32 (1985). In any event, Plaintiffs' claims fail whether analyzed under § 706(1) or § 706(2).

### B. Plaintiffs Fail to State an Arbitrary and Capricious Claim.

Plaintiffs largely avoid addressing the Department's argument that Plaintiffs have failed to state an arbitrary-and-capricious claim, arguing instead that the plausibility standard from Civil

Rule 12(b)(6) "has no place in APA review." Opp. 44 (quoting *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013)). But Plaintiffs' only authority for that proposition acknowledges that the plausibility standard is still appropriate "where the agency claims that the underlying premise . . . is legally flawed (rather than factually unsupported)." *Atieh*, 727 F.3d at 76 n.4. Because the Department identifies multiple legal problems with the Amended Complaint, including that programmatic decisions regarding the Department's handling of its statutorily required duties are committed to agency discretion, the plausibility standard is still appropriate.

Otherwise, Plaintiffs still do not dispute the cost-saving value of actions undertaken as part of the RIFs and restructuring. *See* Mot. 41. Again, their disagreement with how the Department decides to meet its stated goal of improving efficiency and streamlining the Department, *see* ECF No. 44-1, does not mean that the Department's RIFs and restructuring have no rational connection to that stated goal.

### C. Plaintiffs Fail to State A Claim That The RIFs And Restructuring Are Contrary To Law.

Plaintiffs largely do not rebut the Department's arguments regarding their contrary-to-law claim, instead relying on this Court's preliminary-injunction decision. *See* Opp. 42–43. That preliminary decision, however, considered only certain components referenced in the original complaint. *See* ECF No. 73 at 42–47. It did not consider some Department components at all, such as SAMHSA or the National Center for Injury Prevention and Control (NCIPC), or whether the RIFs and restructuring violate statutory mandates associated with those components. Nor did the Court consider every program in the original Complaint. For example, the Court did not decide whether Plaintiffs were likely to succeed on their claim that the RIFs and restructuring violated any statutory mandate related to the WTCHP, *see* ECF No. 1 ¶¶ 153–54, or whether CDC violated any statutory mandate when it allegedly closed certain virus labs, *see id.* ¶ 115. Both of those

violations are re-alleged in the Amended Complaint, as are many others not previously addressed, and this Court has yet to decide whether Plaintiffs have stated a claim as to those alleged violations.

Moreover, Plaintiffs cannot allege that an agency action is contrary to a statutory mandate when there is no actual mandate. *Cf. Milk Train, Inc. v. Veneman*, 310 F.3d 747, 755 (D.C. Cir. 2002) (when challenged action did not violate the "plain language" of a statute, the action was not contrary to law). Many of the allegedly required programs identified by Plaintiffs are not actually required by any statute. For example, Plaintiffs have not identified a statute that requires Community Counts to publish a report on inhibitor development. *See* Am. Compl. ¶ 238. Plaintiffs thus have not alleged a contrary-to-law claim as to that report. Similarly, although CDC must "communicate . . . with public and private entities," 42 U.S.C. § 242c(b)(7), that statute does not require communication to occur through any particular staff and, therefore, the challenged RIFs do not violate any mandate, *contra* Am. Compl. ¶ 115; *see also* Mot. 48–55 (providing other instances in which an allegedly required program is not actually required or where the Department has not violated any statutory mandates).

## IV.    Plaintiffs' Freestanding Constitutional Claims Fail.

Plaintiffs urge that they have asserted freestanding constitutional claims in Counts I and II. *See* Opp. 45–49. But their arguments do not pass muster.

As an initial matter, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses repackaging statutory claims as purportedly freestanding constitutional claims. *See* Mot. 45–46. Plaintiffs respond that *Dalton* is inapplicable because their claims are about an absence of authority, not what the Department does with statutory authority provided by Congress. *See* Opp. 48. Again, Plaintiffs disregard their own allegations, which assert that the Department has violated numerous statutes by not performing allegedly required duties in the way it has previously performed them or has refused to expend funds appropriated by Congress in appropriations statutes. *See* Am.

Compl. ¶¶ 335, 341.  These alleged violations of statutes are statutory claims, and the Court should "decline to adopt a principle that would convert every statutory challenge to agency action into a constitutional claim." *Climate United Fund*, 154 F.4th at 827.  The D.C. Circuit in *Vought* concluded that *Dalton* precludes putative constitutional claims alleging violations of statutes "creat[ing] the agency and requir[ing] it to perform various mandatory tasks." 149 F.4th at 793. Plaintiffs' claims fit squarely into that bucket.  *See* Am. Compl. ¶ 335 (alleging that "where Congress has created the Department and many of its operating divisions, the Executive and its agencies cannot incapacitate them"); ¶ 341 (alleging that Congress appropriated money for various programs).

Furthermore, *Dalton* does not apply even when the defendant allegedly has acted without authority.  The Supreme Court in *Dalton* "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Dalton*, 511 U.S. at 472. A claim that the Executive acted "without any authority," Opp. 48, is functionally the same as a claim that the Executive acted in excess of designated authority, which Plaintiffs admit was the factual scenario presented in *Dalton*, *see id.*  And although Plaintiffs cite *Armstrong v. Exceptional Child Center, Inc.*, *see* Opp. 47, the Supreme Court there held that the plaintiffs *lacked* a cause of action under the Supremacy Clause of the Constitution.  *See* 575 U.S. 320, 324–27 (2015); *see also Glob. Health Council v. Trump*, 153 F.4th 1, 15–16 (D.C. Cir. 2025) (making this same point). In other words, "*Armstrong* as well as *Dalton* rejected the idea that a plaintiff may transform a statutory claim into a constitutional one to avoid limits on judicial review." *Glob. Health Council*, 153 F.4th at 16.

Even if Plaintiffs can assert their freestanding constitutional claims, their Appropriations Clause claim is deficient and should be dismissed.  *See* Mot. 43–44, 46–47.  That Clause constrains

the Executive's authority to spend funds; it does not require the Executive to spend whatever Congress appropriates, and history has shown that the Executive has always understood the Clause in that way. *See id.* at 46. Regardless, Plaintiffs' claim assumes that Congress has "expressly directed that funds be expended" on various programs. Am. Compl. ¶ 341. Yet Plaintiffs have not identified any language in recent appropriations statutes that would require expenditures, even after the Department argued there is no such mandatory language. *See* Mot. 44. The mere existence of an appropriation does not impose a command, as the Department has explained.[8]

Finally, Plaintiffs again try to recast their complaint as seeking "only an injunction" rather than the "expenditure of all funds appropriated by Congress." Opp. 49. But here, that is a distinction without a difference. By Plaintiffs' own telling, the RIFs and restructuring have allegedly resulted in a failure to administer programs funded by supposedly mandatory congressional appropriations. *See* Am. Compl. ¶ 341. An injunction essentially requiring the Department to administer programs in a particular way going forward, as Plaintiffs request, would deprive the Department of its "discretion to administer the various programs Congress has directed HHS to perform." Opp. 49.

## V.    Plaintiffs Have Not Asserted An *Ultra Vires* Claim.

Plaintiffs have not asserted a cognizable *ultra vires* claim in Count III, which is "essentially a Hail Mary pass" that "rarely succeeds." *NRC v. Texas*, 605 U.S. 665, 681 (2025) (quotation marks omitted). They say that the RIFs and restructuring have violated "statutes that dictated" who must "run the program or agency," Opp. 50, but these arguments plainly fail.

---

[8] For these reasons, the portion of Count IV alleging a violation of appropriations statutes should also be dismissed.

As an initial matter, these claims are not justiciable for standing and ripeness reasons. *See supra* at 8, 15–16. Beyond that, they fail to allege an action that is "entirely in excess of the Department's delegated powers and contrary to a specific prohibition in a statute." *NRC*, 605 U.S. at 681 (quotation marks omitted). As for the Agency for Healthcare Research and Quality (AHRQ), 42 U.S.C. § 299 does not prohibit the Department from nesting that agency in a new Office of Strategy, provided that AHRQ is run by a Director appointed by the Secretary and conducts its required functions. *See* 42 U.S.C. §§ 299, 274f-3. The March 27 press release does not contemplate otherwise.

The same is true of SAMHSA. Moving SAMHSA into a new Administration for a Healthy America would not eliminate the Assistant Secretary position required by 42 U.S.C. § 290aa(d). *Contra* Opp. 51. And SAMHSA can still maintain the congressionally mandated Center for Behavioral Health Statistics and Quality whether or not SAMHSA is a component of a new Administration for a Healthy America. *See* 42 U.S.C. § 290aa-4(b).

In sum, nothing about the planned restructuring would violate any of the statutory provisions cited in Plaintiffs' opposition.

## CONCLUSION

For the reasons in the Department's Motion to Dismiss, Plaintiffs' Amended Complaint should be dismissed.

Dated: December 5, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division, Federal Programs Branch

ELIZABETH HEDGES
Counsel to the Assistant Attorney General
Civil Division

/s/ *Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*