**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

STATE OF NEW YORK, *et al.*,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., *in his official capacity as* SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, *et al.*,

Defendants.

Civil Action No. 1:25-cv-00196

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR DISCOVERY**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I. Procedural Background ........................................................................................ 2

II. Legal Background ................................................................................................ 3

ARGUMENT ............................................................................................................. 5

I. Plaintiffs' Merits Arguments Are Not a Basis for Expanding the Administrative Record. ........................................................................................................ 5

II. The Administrative Record Is Complete, and Plaintiffs' Motion to Complete That Record Should Be Denied. ........................................................................ 6

A. Plaintiffs Identify Post-decisional Documents Not Properly Part of the Administrative Record. ........................................................................ 7

B. Plaintiffs Identify Materials Protected by the Deliberative Process Privilege Not Properly Part of the Administrative Record. ........................ 9

C. Plaintiffs Are Not Entitled To A Privilege Log. ........................................ 15

III. Plaintiffs Have Not Made the Strong Showing of Bad Faith Necessary to Justify Extra-Record Discovery. ........................................................................ 16

IV. There Is No Basis To Supplement The Administrative Record. ........................ 18

V. The Constitutional and *Ultra Vires* Claims Do Not Permit Discovery. ............... 19

VI. If the Court Orders Any Relief, It Must Be More Narrowly Tailored Than What Plaintiffs Propose. ........................................................................................ 20

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Zinke*,
265 F. Supp. 3d 1161 (D. Mont. 2017) ........ 8

*Al-Saidi v. Noem*,
No. 23-CV-4979, 2025 WL 959094 (S.D.N.Y. Mar. 31, 2025) ........ 21

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ........ 4

*Am. Ctr. for L. & Just. v. DOJ*,
325 F. Supp. 3d 162 (D.D.C. 2018) ........ 12

*Bacchi v. Mass. Mut. Life Ins. Co.*,
110 F. Supp. 3d 270 (D. Mass. 2015) ........ 16

*Blue Mountains Biodiversity Project v. Jeffries*,
99 F.4th 438 (9th Cir. 2024) ........ 4, 13

*Bradley v. Weinberger,*
483 F.2d 410 (1st Cir. 1973) ........ 3

*Brown v. Dep't of State*,
317 F. Supp. 3d 370 (D.D.C. 2018) ........ 15

*California v. U.S. Dep't of Labor*,
No. 2:13-CV-02069-KJM-DAD, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) ........ 15

*Cayuga Nation v. Zinke*,
302 F. Supp. 3d 352 (D.D.C. 2018) ........ 3

*Citizens for Resp. & Ethics in Wash. v. FEC*,
No. 22-cv-35, 2024 WL 2110141 (D.D.C. May 10, 2024) ........ 7

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ........ 3, 4, 7

*Clinch Coal. v. U.S. Forest Serv.*,
693 F. Supp. 3d 643 (W.D. Va. 2023), *reconsideration denied,*
2024 WL 3454993 (W.D. Va. July 18, 2024) ........ 20

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ........ 11

*Common Sense Salmon Recovery v. Evans*,
217 F. Supp. 2d 17 (D.D.C. 2002) ........ 4, 5, 7

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......... 4, 9, 17

*Dep't of Interior v. Klamath Water Users Protection Ass'n*,
532 U.S. 1 (2001) .......... 13

*E. Bridge, LLC v. Chao*,
320 F.3d 84 (1st Cir. 2003) .......... 19

*Emhart Indus., Inc. v. New England Container Co., Inc.*,
274 F. Supp. 3d 30 (D.R.I. 2017) .......... 3

*Fla. Power & Light Co. v. Lorion,*
470 U.S. 729 (1985) .......... 3, 6

*Friends of the Clearwater v. Dombeck*,
222 F.3d 552 (9th Cir. 2000) .......... 7

*Great Am. Ins. Co. v. United States*,
No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) .......... 15

*Harvard Pilgrim Health Care of New Eng. v. Thompson*,
318 F. Supp. 2d 1 (D.R.I. 2004) .......... 19, 22

*Hesai Tech. Co., Ltd. v. U.S. Dep't of Def.*,
No. 24-cv-1381, 2024 WL 3673574 (D.D.C. Aug. 5, 2024) .......... 8

*Housatonic River Initiative v. U.S. EPA*,
75 F.4th 248 (1st Cir. 2023) .......... 18

*IMS, P.C. v. Alvarez*,
129 F.3d 618 (D.C. Cir. 1997) .......... 3

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008) .......... 10, 12, 13

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .......... 14

*In re Subpoena Duces Tecum*,
156 F.3d 1279 (D.C. Cir. 1998) .......... 4, 5, 10, 13

*Manker v. Spencer*,
No. 3:18-cv-372, 2019 WL 1506654 (D. Conn. Apr. 5, 2019) .......... 20

*Marcum v. Salazar*,
751 F. Supp. 2d 74 (D.D.C. 2010) .......... 6

*Marine Mammal Conservancy, Inc. v. Dep't of Agric.*,
134 F.3d 409 (D.C. Cir. 1998) .......... 19

*Mayor & City Council of Balt. v. Trump*,
429 F. Supp. 3d 128 (D. Md. 2019) .......... 17, 18

*McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*,
849 F. Supp. 2d 47 (D.D.C. 2012) .......... 15

*Midcoast Fishermen's Ass'n v. Gutierrez*,
592 F. Supp. 2d 40 (D.D.C. 2017) .......... 5

*Mullins v. U.S. Dep't of Energy*,
50 F.3d 990 (Fed. Cir. 1995) .......... 17

*N. Dartmouth Props., Inc. v. HUD*,
984 F. Supp. 65 (D. Mass. 1997) .......... 11

*New York v. Kennedy*,
155 F.4th 67 (1st Cir. 2025) .......... 7

*New York v. McMahon*,
826 F. Supp. 3d 184 (D. Mass. 2026) .......... 17, 18

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) .......... 13

*NVE, Inc. v. Dep't of Health & Hum. Servs.*,
436 F.3d 182 (3d Cir. 2006) .......... 17

*Oceana, Inc. v. Pritzker*,
217 F. Supp. 3d 310 (D.D.C. 2016), *aff'd sub nom.*
*Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019) .......... 7

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) .......... 4, 9, 15

*P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*,
59 F. Supp. 2d 310 (D.P.R. 1999) .......... 20

*Patel v. Johnson*,
2 F. Supp. 3d 108 (D. Mass. 2014) .......... 4

*Providence Journal Co. v. U.S. Dep't of Army*,
981 F.2d 552 (1st Cir. 1992) .......... 10, 11

*Roe v. Mayorkas*,
No. 22-cv-10808, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) .......... *passim*

*Rybachek v. U.S. EPA*,
904 F.2d 1276 (9th Cir. 1990) ........ 3

*Safari Club Int'l v. Jewell*,
111 F. Supp. 3d 1 (D.D.C. 2015) ........ 16

*Sara Lee Corp. v. Am. Bakers Ass'n,*
252 F.R.D. 31 (D.D.C. 2008) ........ 5, 6

*Save the Colo. v. Spellmon*,
No. 18-cv-03258-CMA, 2023 WL 2402923 (D. Colo. Mar. 7, 2023) ........ 15

*Skull Valley Band of Goshute Indians v. Cason*,
No. 07-cv-0526-DME-DON, 2009 WL 10689787 (D. Utah Mar. 2, 2009) ........ 21

*Stamps v. Town of Framingham*,
38 F. Supp. 3d 134 (D. Mass. 2014) ........ 14

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
255 F. Supp. 3d 101 (D.D.C. 2017), *aff'd* 985 F. 3d 1032 (D.C. Cir. 2021) ........ 5

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
60 F.3d 867 (1st Cir. 1995) ........ 10

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
968 F.2d 1438 (1st Cir. 1992) ........ 4, 10, 12

*Town of Winthrop v. FAA*,
535 F.3d 1 (1st Cir. 2008) ........ 18

*Trower v. Blinken*,
No. 4:22-CV-77, 2022 WL 2304041 (E.D. Mo. June 27, 2022) ........ 21

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021) ........ 9, 10

*United States v. Shaffer Equip. Co.*,
11 F.3d 450 (4th Cir. 1993) ........ 17

*Univ. of Colo. Health at Mem. Hosp. v. Burwell*,
151 F. Supp. 3d 1 (D.D.C. 2015) ........ 18

*USA Grp. Loan Servs., Inc. v. Riley*,
82 F.3d 708 (7th Cir. 1996) ........ 16

*Valley Citizens for a Safe Env't v. Aldridge,*
969 F.2d 1315 (1st Cir. 1992) ........ 3

*Walter O. Bowell Mem'l Hosp. v. Heckler*,
749 F.2d 788 (D.C. Cir. 1984) ........ 3

**STATUTES**

5 U.S.C. § 706 ........ 3

**REGULATIONS**

5 C.F.R. § 1201.14(b)(2) ........ 14

**OTHER AUTHORITIES**

HHS, *Fact Sheet: HHS' Transformation to Make America Healthy Again*, Mar. 27, 2025,
https://perma.cc/FG8E-X794 ........ 2

HHS, *HHS Announces Transformation to Make America Healthy Again*, Mar. 27, 2025,
https://perma.cc/KED7-65Q8 ........ 2

## INTRODUCTION

Plaintiff States have brought APA, *ultra vires*, and constitutional claims against last year's reductions-in-force (RIFs) by the Department of Health and Human Services (HHS) and the planned restructuring of certain agency components announced at the same time. *See* Am. Compl., ECF No. 94. HHS produced the administrative record more than four months ago, and this case has been ready since then to proceed to summary judgment briefing and resolution. Plaintiffs, however, wish instead to take this case through a period of prolonged discovery. They claim the administrative record is incomplete based on their speculation about the sorts of materials they think should have been considered by the agency, based on a series of post-decisional documents, and based on documents reflecting the agency's deliberations.

None of their arguments is a basis for green-lighting discovery in a case challenging agency action. Arguments about what information the agency should have considered are merits arguments that belong in Plaintiffs' summary-judgment brief; they do not justify discovery and are inappropriate in a lawsuit challenging agency action, where the only question before the court is whether the record presented by the agency supports its decision. Furthermore, post-decisional materials are, by definition, not materials the agency considered in making its decision, and precedent clearly excludes from the administrative record any materials reflecting the agency's deliberations. Nor have Plaintiffs made the showing of bad faith necessary to justify discovery into materials that HHS did not consider. And finally, they cannot rely on their constitutional and *ultra vires* claims to obtain discovery.

That Plaintiffs are unwilling to proceed to summary judgment on a record they deride as "plainly deficient" suggests that they are less concerned about effective judicial review and more

interested in discovery for discovery's sake. Pls. First Mot. for Disc. at 3, ECF No. 122 (Mot.).[1] The Court should not indulge Plaintiffs' apparent strategy and should instead deny the Motion and set a schedule for summary-judgment briefing. If, after summary-judgment briefing, the Court concludes that the record does not support the agency's decision, the proper remedy is remand. There is no basis for discovery in this case, and Plaintiffs' Motion should be denied.

## BACKGROUND

### I. Procedural Background

In this action, 19 States and the District of Columbia challenge HHS's March 27, 2025, announcement of a planned reduction-in-force (RIF) and agency restructuring, and the RIF notices that immediately followed, on March 31 and April 1. *See* HHS, *HHS Announces Transformation to Make America Healthy Again*, Mar. 27, 2025, https://perma.cc/KED7-65Q8 ("March 27 Announcement"); HHS, *Fact Sheet: HHS' Transformation to Make America Healthy Again*, Mar. 27, 2025, https://perma.cc/FG8E-X794. On July 1, 2025, this Court enjoined portions of the agency's planned RIF and restructuring, *see* ECF No. 73, and subsequently clarified and narrowed the scope of that relief, *see* ECF No. 89.

On June 8, 2026, after the court denied Defendants' motion to dismiss, *see* ECF No. 113, Defendants produced the administrative record, *see* ECF No. 117. Plaintiffs subsequently advised Defendants that they believed the record was incomplete. ECF No. 123-3 at 3. Defendants agreed to produce one email and its accompanying attachments that Plaintiffs had identified, *see* ECF No. 123-4 at 4, but otherwise did not agree that the administrative record was deficient. Over two months later, Plaintiffs filed the pending Motion for Discovery.

---

[1] To avoid confusion, any pincite to filings in this case refer to a filing's docket number and the pagination generated by the Court's CM/ECF electronic filing system.

## II. Legal Background

In contrast to Plaintiffs' Motion, Defendants provide a full accounting of the legal standards governing the proper contents of administrative records. The APA directs courts to evaluate agency action upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, judicial review in an APA case is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The agency's "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Emhart Indus., Inc. v. New England Container Co., Inc.*, 274 F. Supp. 3d 30, 45 (D.R.I. 2017) (citation omitted). The record must be the record already in existence, not a new record made by the reviewing court. *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985); *Valley Citizens for a Safe Env't v. Aldridge,* 969 F.2d 1315, 1319 (1st Cir. 1992) (noting that the relevant legal question is whether the agency action was lawful "in light of the information and comments before the agency at the time" of the decision); *Bradley v. Weinberger,* 483 F.2d 410, 414 (1st Cir. 1973).

It is therefore "widely accepted" that courts "base their review of an agency's actions on the materials that were before the agency at the time its decision was made," not at some later time. *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997); *see also Walter O. Bowell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency *when it made its decision*." (emphasis added)); *Rybachek v. U.S. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) ("[I]t is not appropriate for either party to use post-decision information as a new rationalization either for sustaining or attaching the Agency's decision." (cleaned up) (citation omitted); *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 352, 357 (D.D.C. 2018) ("[T]he administrative record should not

include materials that were not considered by agency decisionmakers ." (citation omitted)); *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 21 (D.D.C. 2002) (administrative record should not include "documents created after the agency made its . . . decision or documents that concern post-decisional events"). This rule is necessary because when reviewing agency action under the APA, the district court sits not as a factfinder, but rather as "an appellate tribunal," determining whether the evidence in the record before the agency at the time of the decision permitted the agency to make the decision that it did. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001); *see Patel v. Johnson*, 2 F. Supp. 3d 108, 117 (D. Mass. 2014) (same).

For similar reasons, "privileged materials are ordinarily not part of the administrative record." *Roe v. Mayorkas*, No. 22-cv-10808, 2024 WL 5198705, at *9 (D. Mass. Oct. 2, 2024); *see also Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (excluding from administrative record materials protected by attorney-client privilege and deliberative process privilege); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (Documents covered by deliberative process privilege "are not part of the administrative record to begin with." (citation omitted)); *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024) (same). Because deliberative materials are "prepared to aid the decision-maker in arriving at a decision," they are "ordinarily not relevant" to "assess[ing] the lawfulness of agency action based on the reasons that the agency gave for its decision." *Blue Mountains*, 99 F.4th at 445; *see also In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998) "[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law."); *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019) ("[F]urther judicial inquiry into executive motivation represents a substantial intrusion into the workings of other branches of Government and should normally be avoided." (internal quotations omitted)); *Overton Park*, 401 U.S. at 420

("[i]nquiry into the mental processes of administrative decisionmakers is usually to be avoided."); *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.").

## ARGUMENT

### I. Plaintiffs' Merits Arguments Are Not a Basis for Expanding the Administrative Record.

Merits arguments may not be used to justify an expanded administrative record. *See Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 44 (D.D.C. 2017) (denying motion to expand administrative record in part because "plaintiffs basically make a merits argument in a discovery motion" by arguing that the agency should have considered additional factors in reaching its decision); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 125 (D.D.C. 2017) ("Disagreement with an agency's analysis is not enough to warrant the consideration of extra-record evidence."), *aff'd* 985 F. 3d 1032 (D.C. Cir. 2021); *Sara Lee Corp. v. Am. Bakers Ass'n,* 252 F.R.D. 31, 35–36 (D.D.C. 2008) (rejecting motion for extra-record discovery because supposed "deficiencies in the [agency's] reasoning" had "nothing to do with the fundamental question of whether [the] record is to limited to the administrative record that has been filed and on which the [agency's] determination will rise or fall").

Plaintiffs' Motion does just that. For example, Plaintiffs argue that the record lacks documents explaining why the decision to implement the March 27 Announcement was made or why particular RIF notices were sent. *See* Mot. 3. Plaintiffs later contend that the administrative record lacks analysis of which employees were to be retained and why. *See* Mot. 14. They similarly fault the record for not "explain[ing] why the RIFs and reorganization would achieve the goals" Defendants announced. *Id.* at 24. Plaintiffs thus assert that the RIFs and restructuring were

unsupported by the record, which is a *merits* issue, not a question of whether the administrative record is incomplete. The Court should not permit Plaintiffs to assert "deficiencies in the [agency's] reasoning" as a basis to expand the administrative record. *Sara Lee Corp.*, 252 F.R.D. at 35.

Instead, the proper approach is to proceed to summary-judgment briefing after which, if the Court determines that "the record before the agency does not support the agency action," the remedy "is to remand to the agency." *Fla. Power & Light*, 470 U.S. at 744. A "reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.* Plaintiffs cannot short-circuit that process simply by claiming now that the record does not support HHS's actions.

## II. The Administrative Record Is Complete, and Plaintiffs' Motion to Complete That Record Should Be Denied.

Defendants have produced a complete administrative record that includes all non-privileged materials directly or indirectly considered by agency decision-makers at the time the decision being reviewed (i.e., the March 27 press release and the RIFs that immediately followed) was made.[2] The designation of that record, "like any established administrative procedure, is entitled to a presumption of administrative regularity." *Roe*, 2024 WL 5198705, at *2. A party may move to complete the administrative record by providing "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record." *Id.* at *7; *see also Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (adopting same standard).

[2] The administrative record also includes communications dated May 1 and 2, *see* NYvK-AR-000198–205, because they complete the set of OPM approval requests that were made in connection with the challenged RIF action. If the Court views these communications as post-decisional, it may disregard these communications in its review of the challenged action.

Plaintiffs' contention that the administrative record is incomplete fails. To overcome the presumption of regularity, Plaintiffs must identify documents that "should have been properly a part of the administration record" and yet were omitted. *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 316 (D.D.C. 2016) (citation omitted), *aff'd sub nom. Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019); *see also Citizens for Resp. & Ethics in Wash. v. FEC*, No. 22-cv-35, 2024 WL 2110141, at *4 (D.D.C. May 10, 2024) (same). Documents that were not before the agency at the time it made its decision and documents that are protected by the deliberative process privilege are not properly part of an administrative record. *See supra* Legal Background. But those are the only types of documents that Plaintiffs identify to support their contention.

**A. Plaintiffs Identify Post-decisional Documents Not Properly Part of the Administrative Record.**

Plaintiffs and this Court are entitled to "the full administrative record that was before [the agency] at the time [it] made [its] decision." *Overton Park,* 401 U.S. at 420. Here, the Court has determined, consistent with Plaintiff's argument, that the relevant decision is the March 27 press release announcing the planned RIFs and restructuring. *See* ECF No. 73 at 37 (finding "the March 27 Communique constitutes final agency action"); *see also New York v. Kennedy*, 155 F.4th 67, 76 (1st Cir. 2025); Pls.' Opp'n to Mot. to Dismiss at 49, ECF No. 101 ("[T]he March 27 Directive is a final agency action under the APA."); Mot. for Prelim. Inj. at 31, ECF No. 43 (arguing that "the March 27 Directive" "marked the consummation of Defendants' decision making"). That announcement was quickly followed by final RIF notices. *See* NYvK-AR-206–365 (final RIF list). Thus, "the agency must justify its final action by reference to the reasons it considered at the time" that announcement was made. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). It necessarily follows that documents which postdate the challenged decision are not properly part of the administrative record. *See, e.g.*, *Common Sense Salmon Recovery*, 217 F.

Supp. 2d at 21 ("[W]ith respect to plaintiffs' requests for documents created after the agency made its . . . decision or documents that concern post-decisional events, it is established that defendants are not required to include such documents in the administrative record."); *Hesai Tech. Co., Ltd. v. U.S. Dep't of Def.*, No. 24-cv-1381, 2024 WL 3673574, at *2 (D.D.C. Aug. 5, 2024) (denying motion to complete the administrative record with post-decisional documents); *All. for the Wild Rockies v. Zinke*, 265 F. Supp. 3d 1161, 1175 (D. Mont. 2017) (same).

Yet Plaintiffs rest their arguments on numerous documents that clearly are dated later. For example, they suggest that the administrative record should have included one record from the proceeding before the Merit Systems Protection Board (MSPB) dated weeks after the decision they challenge. *See* ECF No. 123-7 at 523–75 (email and attachment dated April 21) (cited at Mot. 22 as Ex. G, pages 264–316). Likewise, they also argue the record should include the so-called "Houry Emails," some of which are from early April—again, after the relevant decision—and the documents discussed within those emails. Mot. 13. The Houry Emails make clear that the documents discussed therein were drafts on the date(s) they were circulated. For example, status designation for the "NIOSH lab closure/animal disposition memo" notes that the memo contains "OGC comments" and a "path forward to [be] submit[ted] on time," and the status of the "ASPR-CDC integration-high level picture" notes that teams were "working to have something ready for . . . review on weekend in advance of sharing with HHS." ECF No. 123-8 at 147–48. Similarly, the "NIOSH and NCEH Essential Functions Options" document was an attachment to an April 27, 2025 email stating that document was "pulled together using recent docs" and asking recipients to "see what might be missing and add/edit as you see fit." ECF No. 123-8 at 210–11; *see also* Mot. 13. Context thus indicates that document was still a draft as of April 27, 2025. In

short, all three documents Plaintiffs argue should be included in the record were drafts as of April 1, 2025 (if they existed as documents at all), and thus necessarily post-date the relevant decision.

Plaintiffs speculate that the Houry Emails "appear to have been relied upon by agency decisionmakers when implementing the reorganization," Mot. 13, but "implementing the reorganization" announced in the March 27 Announcement is necessarily post-decisional because implementation occurred after the Announcement and RIFs. *Id.* Any evidence of implementation would therefore definitionally not be part of a proper administrative record for a court-determined final action that occurred on March 27. To hold otherwise would frustrate the principle that "[i]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com.*, 588 U.S. at 780.[3]

**B. Plaintiffs Identify Materials Protected by the Deliberative Process Privilege Not Properly Part of the Administrative Record.**

Plaintiffs have also identified documents that are protected by the deliberative process privilege and thus are not part of the administrative record. *See Oceana*, 920 F.3d at 865. The deliberative process privilege "protect[s] agencies from being forced to operate in a fishbowl." *Roe*, 2024 WL 5198705, at *3 (citation omitted). It covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citations omitted). Documents protected by the deliberative process privilege are

[3] That some agency deliberations about the HHS restructuring post-date the March 27 press release should not come as a surprise. As Defendants have tried to point out, the March 27 press release was not a final agency action. Plaintiffs have asserted otherwise, however, and this Court has found that the March 27 press release is the final agency action challenged in this case. Consistent with that finding, then, the administrative record upon which this Court's review must be based is the administrative record supporting that press release, and not the deliberations of HHS restructuring actions in the months that followed.

not included in the administrative record because "[t]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *In re Subpoena Duces Tecum*, 156 F.3d at 1279.

A document must be both predecisional and deliberative to qualify for protection under the deliberative process privilege. *See Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992). A document is predecisional if it is "antecedent to the adoption" of an agency decision. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 39 (D. Mass. 2008) (a document is predecisional if it is "prior to the adoption of the agency policy"). Materials in which agency officials "make[] recommendations or express[] opinions on legal or policy matters" are deliberative. *Town of Norfolk*, 968 F.2d at 1458.

All of the documents that Plaintiffs identify from the MSPB record are protected by the deliberative process privilege. As to the predecisional prong, Plaintiffs cite several emails dated before the March 27 Announcement. Indeed, they admit that three emails are predecisional because they were sent "leading up to" the Announcement. Mot. 17. Other emails cited by Plaintiffs similarly predate the Announcement. *See* Mot. 12–13 (citing ECF No. 123-7 at 61–63 (dated March 20)). Plaintiffs also cite other emails, dated March 30 and 31, which attach "draft versions of the future state organizational charts." *See id.* at 12–13, *citing* ECF No. 123-7 at 66–67. "[A] draft document will typically be predecisional because . . . calling something a draft communicates that it is not yet final." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 270. The organizational chart itself includes a large watermark that says "Planning Use Only," reinforcing that it comes before the final decision. Similarly, the most recent email in that chain notes that "FDA may decide to change" some of the details in the organization chart. *See* ECF No. 123-7 at 66. Those emails are predecisional.

In addition, all the emails cited by Plaintiffs are deliberative in nature. Given the number and different contents of those documents, their deliberative nature is best discussed in bulleted form:

- **March 17 email, ECF No. 123-7 at 158.** The sender asks the recipient to review spreadsheets and "identify" offices for reduction and to "denote" whether an individual could be removed from the spreadsheets. These directives to make a recommendation are deliberative statements because they "formed an essential link in a specified consultative process," and any follow-on identifications by the recipient would "reflect[] the personal opinions of the [recipient] rather than the policy of the agency." *Providence*, 981 F.2d at 559; *see id.* at 560 ("[T]he appropriate judicial inquiry is whether the agency document was prepared to facilitate and inform a final decision or deliberative function entrusted to the agency.").

- **March 18 email, ECF No. 123-7 at 57.** This email describes "changes" and advises of forthcoming recommendations "once the overview approach is set." But there is no indication of a set overview approach—at most, the email is "part of a clear process leading to" the final decision to RIF employees and to restructure the agency. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Such deliberations are the type of internal communications protected by the deliberative process privilege to encourage candid discussion within a particular agency.

- **March 19 emails, ECF No. 123-7 at 61-63.** The most recent email in the chain includes deliberations about what the sender "envisioned" and suggests which functions "could be centralized" or "could be consolidated." Similarly, an attachment to this email chain carries the title "FDA's recommendation for Shared Services approach" and includes numbers for what "FDA Proposed to Realign to HHS" and "Proposed to Retain," along with explicit "Recommendations." *Id.* at 63; *see also id.* at 64 (other email attachment with same title and including the same proposals and recommendations). Such recommendations are quintessentially deliberative. *See N. Dartmouth Props., Inc. v. HUD*, 984 F. Supp. 65, 71 (D. Mass. 1997) (email containing "subjective recommendations . . . made to [a] superior in the decision-making process" were protected under deliberative process privilege).

- **March 22 email, ECF No. 123-7 at 54.** The sender writes about a "proposed approach" on behalf of FDA before listing what FDA "proposes" regarding realignment of certain personnel from certain offices to others, including one organization that she proposes *not* to realign. She further "recommends" how to staff these realigned offices and tells the recipient about FDA's "plan" for the agency going forward. These types of recommendations from one government official to another are exactly the kind of deliberative material that the deliberative process privilege protects.

- **March 30-31 emails, ECF No. 123-7 at 66–67.** These emails provide talking points to "support [a] conversation" between FDA and HHS about how to restructure FDA. The top

> email shares "key points to support" a future conversation within HHS and describes the "several steps" needed to effect said restructuring, including notification to congressional committees. The email further describes how "[t]o build the formal reorganization package" and that FDA would "need to rewire [its] processes" to accommodate the restructuring. These emails are part of an intra-agency deliberation on that topic. *See Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162, 174 (D.D.C. 2018) ("A government employee drafting talking points to advise a senior official needs to know that her advice will remain privileged regardless of whether the official ultimately sticks to the script or decides to extemporize.").

Contrary to Plaintiffs' arguments, the administrative record cannot be considered incomplete because these predecisional and deliberative documents have been omitted. They were never part of the administrative record to begin with. *See Town of Norfolk*, 968 F.2d at 1458 (excluding from record a draft letter protected by the deliberative process privilege). It is irrelevant whether these documents "contained information that was before the agency decisionmakers," Mot. 18, or might show the involvement of Government officials outside HHS, *see id.* at 14–19, because precedent makes clear that predecisional, deliberative documents internal to the Government are not part of the administrative record.

Plaintiffs offer two responses, neither of them persuasive. *First*, they ask the Court "to decline application of the privilege," Mot. 20, which requires the Court to find that "the need for disclosure outweighs" the "interest in non-disclosure." *Roe*, 2024 WL 5198705, at *5. To make that determination, courts in this Circuit engage in a balancing test that considers "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Pharm.*, 254 F.R.D. at 40.

These factors favor protection of the documents at issue here.[4] In particular, documents protected by the deliberative process privilege are "prepared to aid the decision-maker in arriving at a decision," and thus may not be the reasons that the agency gave for its decision, which is the issue before the court in an APA action. *Blue Mountains*, 99 F.4th at 445. Indeed, predecisonal and deliberative documents are "immaterial as a matter of law" when challenging agency action as arbitrary and capricious, and therefore are not relevant to the issue before this Court. *In re Subpoena Duces Tecum*, 156 F.3d at 1279. And unlike other cases where courts have struck the privilege, this APA case does not turn on whether a policy exists at all, *see Roe*, 2024 WL 5198705, at *5, or whether the Government had knowledge of particular facts when it acted, *see In re Pharm.*, 254 F.R.D. at 41.[5]

Further, where the documents in question contain intra- and inter-agency deliberations between agency personnel about the structure and personnel of the agency, as here, Defendants have "a strong institutional interest in maintaining the candid nature" of deliberations. *Roe*, 2024 WL 5198705, at *6. A purpose of the deliberative process privilege is to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protection Ass'n*, 532 U.S. 1, 8–9 (2001). Making such communications public in an administrative record risks a chilling effect on future deliberations. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) ("[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with

---

[4] Defendants acknowledge the seriousness of this litigation and the role of the Government in it, but those factors alone are not enough to support disclosure.

[5] Plaintiffs fault Defendants for not identifying specific decisionmakers. *See* Mot. 14. But the identification of these individuals is irrelevant to whether the agency's decision was supported by the administrative record.

a concern for appearances . . . to the detriment of the decisionmaking process."). The public interest in protecting "frank discussion of legal or policy matters in writing" requires that these documents be protected from disclosure. *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 141 (D. Mass. 2014).

*Second*, Plaintiffs suggest that Defendants have waived the deliberative process privilege because "the MSPB Record has been disclosed to Plaintiff States." Mot. 23. This argument misconstrues both the law and the underlying facts. An agency waives the deliberative process privilege through "voluntary disclosure of privileged material . . . to unnecessary third parties." *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997). Defendants did not "voluntarily disclose" these documents—they were ordered by the MSPB to produce them. In its case management order, the MSPB directed Defendants to "submit a consolidation agency file" that the MSPB said "must also contain the documentary evidence relevant to those issues." Ex. 1, MSPB Case Management Order at 5. That order did not permit withholding documents on privilege grounds, and HHS expressly noted in its production notice that it was not waiving the deliberative process privilege in that production. *See* ECF No. 123-7 at 12 nn.6–7 (agency was producing documents "pursuant to" and administrative judge's orders and, "in doing so, does not intend to waive the deliberative process privilege").

In addition, the disclosure by the Government was not "public." Mot. 23. MSPB dockets are accessible only by "the parties participating in a Board proceeding who have registered as e-filers with the MSPB, and authorized individuals providing legal support to designated representatives." 5 C.F.R. § 1201.14(b)(2). Plaintiffs are not parties to that proceeding and thus should not have access to that proceeding's record. That they have somehow obtained that record does not make the documents public, nor preclude the Government's assertion of the deliberative

process privilege. *See McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*, 849 F. Supp. 2d 47, 60 (D.D.C. 2012) (production of documents to congressional committee that were subsequently publicized by committee did not waive deliberative process privilege); *see also Brown v. Dep't of State*, 317 F. Supp. 3d 370, 376 (D.D.C. 2018) (holding in FOIA context that disclosure to only one person of emails did not waive deliberative process privilege).

**C. Plaintiffs Are Not Entitled To A Privilege Log.**

Plaintiffs also seek a privilege log, Mot. 23–24, but they are not entitled to one. "Given that privilege logs are only required when a party withholds information otherwise discoverable by claiming that the information is privileged and since predecisional and deliberative documents are by their nature not discoverable under the APA, they are not required to be placed on a privilege log." *Roe*, 2024 WL 5198705, at *10 (citation modified); *see also Oceana*, 920 F.3d at 865 ("The District Court correctly observed that 'predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.'" (citation omitted)); *California v. U.S. Dep't of Labor*, No. 2:13-CV-02069-KJM-DAD, 2014 WL 1665290, at *13–*14 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log."); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013) ("[R]equiring [defendant] to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA.").

Plaintiffs suggest that there is "growing consensus among district courts . . . that agencies must submit a log if they withhold privileged materials from an AR." Mot. 23 (quoting *Save the Colo. v. Spellmon*, No. 18-cv-03258-CMA, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023)). However, persuasive authority in this Circuit comes from the decision in *Roe*, where the District

of Massachusetts acknowledged a "split" on the issue before ultimately concluding, consistent with the D.C. Circuit's approach, that deliberative documents not included in an administrative record are "not discoverable" and thus "are not required to be placed on a privilege log." *Roe*, 2024 WL 5198705, at *10–11. Plaintiffs try to distinguish *Roe* by arguing that the court's decision not to require a privilege log was based on the agency "curing" previously omitted documents, Mot. 24, but Roe's decision is not cabined in that way. *Roe* unequivocally stated that a privilege log is not required for deliberative documents not included in an administrative record. *Roe*, 2024 WL 5198705, at *10–11. This Court should follow suit.[6]

* * *

In sum, Plaintiffs' attempts to rebut the presumption of regularity fall short. Plaintiffs are free to cite the materials they have identified to support a future summary-judgment motion, but those documents are not part of the administrative record.

### III. Plaintiffs Have Not Made the Strong Showing of Bad Faith Necessary to Justify Extra-Record Discovery.

Plaintiffs also ask the Court to order extra-record discovery. Mot. 26. Whereas a request to complete the administrative record seeks to "add[] material to the volume of documents the agency considered," a request for extra-record discovery is a request to add "material outside of or in addition to the administrative record that was *not* necessarily considered by the agency." *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 4 (D.D.C. 2015) (emphasis added). Discovery is "rarely proper" in an action for judicial review upon an administrative record. *USA Grp. Loan Servs., Inc.*

---

[6] If the Court nonetheless intends to order a privilege log, it should permit Defendants to prepare one that logs withheld documents by category, rather than individually. *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 273–75 (D. Mass. 2015) (upholding use of categorical privilege log). A log of every deliberative email message relating to the RIFs Plaintiffs have challenged would be extraordinarily burdensome and disproportionate to the needs of the case.

*v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996); *see also NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006) ("[T]here is a strong presumption against discovery into administrative proceedings[.]").

As a result, "[e]xtra-record discovery requires a showing of bad faith or improper behavior" by the agency. *New York v. McMahon*, 826 F. Supp. 3d 184, 200 (D. Mass. 2026). "[M]ere allegations of bad faith are inadequate[.]" *Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 138 (D. Md. 2019). Rather, "a plaintiff must put forth a 'strong showing' of impropriety to peer beyond the record." *Id.* (quoting *Dep't of Com.*, 588 U.S. at 781). The required impropriety is akin to a "showing of fraud or clear wrongdoing." *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 460–61 (4th Cir. 1993) (finding extra-record discovery warranted where agency employee filed fraudulent documents and "perjured himself repeatedly").

Plaintiffs' arguments fall far short of that high bar. They posit that HHS's reasons behind the RIFs and restructuring must be pretextual because, in their words, those reasons are "orthogonal" to the decision to "gut certain subagencies which were the only subagencies performing statutorily mandated work." Mot. 27. That argument amounts to a statement of disagreement with the agency's actions, not the strong showing of impropriety required to obtain extra-record discovery. Indeed, statutorily mandated work is continuing post-RIFs, *see, e.g.*, ECF No. 98 at 32–36, including the Pregnancy Risk Assessment Monitoring System (PRAMS), *see* ECF No. 106 at 19 (noting that PRAMS data collection has resumed). That Plaintiffs disagree with the agency's decision is not the same as showing impropriety by HHS.

In the end, Plaintiffs have no evidence beyond their say-so that the agency was acting pretextually when it stated that the RIFs and restructuring would streamline functions and reduce

redundancies while preserving HHS's core functions. But "mere allegations" are not enough.[7] *See Mayor & City Council of Balt.*, 429 F. Supp. 3d at 138.

**IV. There Is No Basis To Supplement The Administrative Record.**

Plaintiffs also ask the Court to order "supplementation" of the administrative record to include "documents regarding the various explanations given" for the RIFs and restructuring. Mot. 24. It is unclear whether this request seeks addition of materials that the agency considered or addition of materials that the agency did *not* consider. Plaintiffs do not spell it out themselves, and courts have described "motions to supplement" as covering both types of requests. *See Roe*, 2024 WL 5198705, at *7 n.10 (acknowledging "confusion" among courts on this issue); *see also Univ. of Colo. Health at Mem. Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13–14 (D.D.C. 2015) (explaining the confusion).

Either way, the request to supplement fails. If treated as a request to add materials that the agency considered, it fails for the same reasons as Plaintiffs' request to complete the record. *See supra* § II. And if treated as seeking materials that the agency did not consider, it fails for the same reasons as Plaintiffs' request for extra-record discovery. *See supra* § III; *see also Roe*, 2024 WL 5198705, at *11 (requiring "a showing of bad faith or improper behavior" for supplementing the record and citing First Circuit authorities). Under either analysis, "supplementation of the administrative record is the exception, not the rule." *Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 279 (1st Cir. 2023); *see also Town of Winthrop v. FAA*, 535 F.3d 1, 14 (1st Cir. 2008) (same).

[7] This case is also unlike *New York v. McMahon*, where the court ordered extra-record discovery into RIFs at the Department of Education. 826 F. Supp. 3d at 200–02. There, the court found that the administrative record contradicted Defendants' public statements. *Id.* at 201. The Government disagrees with the decision in *McMahon*, but at the very least there is no evidence here of similar inconsistencies, and Plaintiffs provide none.

Defendants note too that the supplementation portion of Plaintiffs' Motion asks for that remedy because Plaintiffs' view the record as "silent" about multiple things, including the "factors" relied on by HHS and whether HHS "offered an explanation for the March 27 [Announcement] that either runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or in product of agency expertise." Mot. 25–26. These statements make clear that Plaintiffs wish to argue that the record Defendants produced does not support the challenged action, but that is a merits argument for summary judgment and not one that can support discovery. *See supra* § I. As a logical matter, Plaintiffs' evident unwillingness to proceed to summary judgment now suggests that their Motion—whether for completion, supplementation, or extra-record discovery—is less about facilitating "effective judicial review" and more about something else. Mot. 26.

## V. The Constitutional and *Ultra Vires* Claims Do Not Permit Discovery.

Plaintiffs hold up their constitutional and *ultra vires* claims as "additional grounds to support [their] need for discovery." Mot. 28. That argument runs headlong into a raft of precedents. As a court in this District has noted, "[t]he APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on statutory or constitutional deficiencies was entitled to broad-ranging discovery." *Harvard Pilgrim Health Care of New Eng. v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004). On that basis, the First Circuit has rejected the argument that plaintiffs are entitled to discovery in APA cases solely because they bring constitutional claims as well. *See E. Bridge, LLC v. Chao*, 320 F.3d 84, 91 (1st Cir. 2003) ("[T]he present constitutional claim is really just a recharacterization of their administrative claim, and we will not allow plaintiffs to circumvent the statutory review process with an agile game of word play."); *see also Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413 (D.C. Cir. 1998) ("[Plaintiffs] are very much mistaken in believing that there is

some bright-line rule allowing litigants to bypass administrative processes simply because one or all of their claims are constitutional in nature."); *P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.,* 59 F. Supp. 2d 310, 327 (D.P.R. 1999) (noting that even when constitutional claims are present, a court reviewing an administrative record should not blindly authorize wide-ranging discovery). Indeed, Plaintiffs' constitutional claims are not even factual claims as to which discovery would even be useful or necessary.

For all these reasons, the Court should deny Plaintiffs' request for discovery based on their tacked-on non-APA claims.

**VI. If the Court Orders Any Relief, It Must Be More Narrowly Tailored Than What Plaintiffs Propose.**

For all these reasons, no additional documents should be added to the administrative record, and the Court should deny Plaintiffs' Motion in full. If the Court is inclined to give Plaintiffs some relief, however, the appropriate course would be to order completion of the record consistent with whatever specific gap the court has identified, not open-ended discovery along the lines of what Plaintiffs have requested.

In the rare case that discovery is permitted in an APA case, the resulting discovery must be tailored only to information necessary to, for example, "fill[] a specific gap in the administrative record." *Manker v. Spencer*, No. 3:18-cv-372, 2019 WL 1506654, at *5 (D. Conn. Apr. 5, 2019). The purpose of APA discovery is not to open the floodgates to whatever a plaintiff wants to find; it is only to resolve deficiencies in the administrative record. *See, e.g.*, *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 653–54 (W.D. Va. 2023) ("Given the presumption of completeness, I do not find additional discovery would be appropriate, which would essentially allow the plaintiffs to conduct a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist."), *reconsideration denied,* 2024 WL 3454993 (W.D. Va. July 18,

2024); *Trower v. Blinken*, No. 4:22-CV-77, 2022 WL 2304041, at *4 (E.D. Mo. June 27, 2022) (permitting discovery in an APA case only to complete the record where it was incomplete and refusing requests that amounted to a "fishing expedition"); *Skull Valley Band of Goshute Indians v. Cason*, No. 07-cv-0526-DME-DON, 2009 WL 10689787, at *23 (D. Utah Mar. 2, 2009) (granting protective order where discovery requests "appear[ed] to be merely fishing expeditions, too speculative to warrant the limited discovery available only rarely in APA litigation"); *Al-Saidi v. Noem*, No. 23-CV-4979, 2025 WL 959094, at *3 (S.D.N.Y. Mar. 31, 2025) ("[I]n the context of an APA proceeding against a federal agency that has produced the administrative record of the challenged decision, a party seeking discovery cannot simply engage in a fishing expedition based on bare speculation that additional data might reveal something beneficial." (citation omitted)).

Plaintiffs' proposed discovery goes far beyond filling any purported deficiency in the administrative record. For example, Interrogatory No. 1 seeks the identity of all individuals who were involved in the decision-making process in the RIFs and restructuring, ECF No. 123-2 at 6–7, and Interrogatory No. 3 seeks the identity of any staff members "associated with or employed by DOGE who worked . . . on *any aspect*" of the RIFs and restructuring, *id.* at 8 (emphasis added). The identity of those individuals is irrelevant to how HHS decided on the RIFs and restructuring. Similarly, Interrogatory Nos. 8 and 9 ask for details about which artificial intelligence programs the Department might have used "as part of the decision-making process," even though the identification of those programs, if any, is irrelevant to the reasons why the Department undertook the RIFs and restructuring. *Id.*

Plaintiffs' Requests for Production are likewise overbroad and not narrowly tailored to completion of the administrative record. For example, Request Nos. 5, 6, and 7 ask for all communications from over 30 custodians containing one of 31 search terms, some of which are so

broad as to encompass communications not about the RIFs and restructuring. *See* ECF No. 123-1 at 6–8; *see also id.* at 3 (listing Defined Search Terms, including the terms "shared services," "centralize," "repurpose," and "retain"). Request Nos. 15 and 18 seek post-decisional documents about how Defendants "implemented the March 27 [Announcement]," *id.* at 10, and spent or failed to spend congressional appropriations "as a result" of the RIFs and restructuring, *id.* at 11. Such broad requests are not targeted to complete or even supplement an existing record; they seek an entirely new administrative record, one that intrudes on the agency's internal deliberations, post-decisional documents, and seemingly every document of possible relevance to the RIFs and restructuring.

Accordingly, Plaintiffs' discovery requests are plainly overbroad. Even if the court determines that the record needs to be completed, it should identify the specific deficiency that requires such completion and direct the parties to meet and confer as to an appropriate manner and schedule for the production of information targeted at that specific deficiency.[8] And the Court should permit extra-record discovery only if and when it has determined that such additional inquiry into the Department's processes is necessary following completion of the administrative record.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' First Motion for Discovery and instead order the parties to confer as to a schedule for summary judgment briefing.

[8] Defendants further request that if the Court orders them to produce a privilege log, they be permitted to do so after any additional production of documents.

Dated: October 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ *Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*