**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 1:25-cv-00196 |

# PLAINTIFFS' REPLY MEMORANDUM IN SUPOPORT OF THEIR FIRST MOTION FOR DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I. Defendants' Arguments Not to Complete the AR Fail....................................................... 3

A. Defendants Are Not Entitled to the Presumption of Regularity.................................... 4

B. The AR Omits Categories of Documents Relied Upon by Agency Decisionmakers. .... 7

II. Defendants' Arguments to Apply Deliberative Process Privilege Fail. ............................. 8

A. Defendants Fail to Show, As They Must, That Withheld Documents are Both Deliberative and Predecisional. ........................................................................... 8

B. In the Alternative, the Court Should Decline to Apply the Qualified Privilege. ...........11

C. A Privilege Log Remains Necessary.......................................................................... 15

III. Defendants Concede the AR Does Not Disclose the Reason for the Challenged Action and, Instead, Ask the Court to Rule on the Record Without Supplementation......................... 16

IV. Extra-Record Discovery is Necessary to Discern the Reason for the Challenged Action. 18

V. The Proffered Discovery Requests are Narrowly Tailored............................................. 20

CONCLUSION.................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*Abramowitz v. Lake*,
824 F. Supp. 3d 1 (D.D.C. 2026) ........................................................................................6

*Am. Fed'n. of Gov. Emps., AFL-CIO v. Trump*,
No. 25-cv-03698, 2026 WL 2677331 (N.D. Cal. Sep. 11, 2026) ..........................................13

*Authors Guild v. Nat'l Endow. for the Hums.*,
No. 25-cv-3657, 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) .........................................4, 19

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971).................................................................................................................17

*City of Taunton v. EPA*,
895 F.3d 120 (1st Cir. 2018).....................................................................................................16

*Cobell v. Norton*,
213 F.R.D. 1 (D.D.C. 2003).......................................................................................................9

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)........................................................................................................ 2, 18-19

*Doe v. Noem*,
No. 26-cv-2103, 2026 WL 1076334 (S.D.N.Y. Apr. 21, 2026) ..............................................12

*Drs. for Am. v. Off. of Pers. Mgmt.*,
793 F. Supp. 3d 112 (D.D.C. 2025)...........................................................................................5

*Fla. Power & Light Co. v. Lorion,*
470 U.S. 729, 744 (1985)..........................................................................................................17

*Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Dep't of Homeland Sec.*,
291 F. Supp. 3d 69 (D.D.C. 2018)..............................................................................................9

*Housatonic River Initiative v. EPA, New England Region*,
75 F. 4th 248 (1st Cir. 2023).....................................................................................................16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008)...........................................................................................11, 15

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,*
156 F.3d 1279 (D.C. Cir 1998) ............................................................12

*Kingdom v. Trump*,
No. 1:25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025) ....................................6

*New York v. Admin. For Children and Families,*
No. 26-cv-00172, Order, ECF No. 155 (S.D.N.Y. Sept. 16, 2026) ...........................18

*New York v. McMahon*,
826 F. Supp. 3d 184 (D. Mass. 2026) ..................................................8, 19

*New York v. McMahon*,
No. 25-cv-10601, Mem. and Order, ECF No. 229 (D. Mass. Oct. 6, 2026).................16, 20

*New York v. U.S. Dep't of Commerce*,
339 F. Supp. 3d 144 (S.D.N.Y. 2018)........................................................18

*Providence Journal Co. v. U.S. Dep't of Army*,
981 F.2d 552 (1st Cir. 1992).................................................................8

*Roe v. Mayorkas*,
No. 22-cv-10808, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) ......................3-4, 7, 12, 15

*Save the Colo. v. Spellman*,
No. 18-cv-03258, 2023 WL 2402923 (D. Colo. Mar. 7, 2023).................................15

*Texaco P.R., Inc. v. Dep't of Consumer Affs.*,
60 F.3d 867 (1st Cir. 1995).................................................................8, 11

*UnitedHealthcare Ins. Co. v. Azar*,
316 F. Supp. 3d 339 (D.D.C. 2018).........................................................11

**Federal Statutes**

5 U.S.C. § 706..................................................................................17

**Executive Orders**

Exec. Order No. 14,210, 90 Fed. Reg. 9,669 (Feb. 11, 2025) .....................................5

**Rules**

Federal Rule of Civil Procedure 26(b)(5)(A).....21

## INTRODUCTION

Defendants have failed to provide, as they must, the whole administrative record (AR) which must include "all documents and materials directly or indirectly considered by the agency decisionmakers and includes evidence contrary to the agency's position." Rather, Defendants have produced an AR that omits documents, now public, that were considered by agency decisionmakers in the lead-up to the dismantling of the Department. Because the AR is so threadbare that it does not enable meaningful judicial review, and because Plaintiffs have shown Defendants acted with bad faith offering only pretextual reasons for the challenged action, this Court should order Defendants to respond to the proposed discovery requests. ECF Nos. 123-1, 123-2.

In their Opposition, ECF No. 126, Defendants argue that the inadequacy of the AR can only be raised as a merits argument at summary judgment, that post-decisional documents need not be produced, that the deliberative process privilege (the Privilege) protects an untold number of documents that Defendants need not describe, that there was no agency bad faith justifying extra-record discovery, and that the constitutional and ultra vires claims are irrelevant to discovery. Each of these arguments fails, and Defendants' steadfast refusal to concede the AR's incompleteness, coupled with longstanding precedent, justify discovery in this case. As for the Privilege, Defendants have failed to carry their burden of showing that the documents they seek to withhold are "both predecisional and deliberative" and should not be disclosed.

Remarkably, Defendants do not contest that the AR is threadbare and fails to give the required explanation for the agency action. Instead, they ask the Court to forge ahead and issue a summary judgment ruling on the AR as-is. But doing so would turn judicial review of agency

action into an "empty ritual." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). Plaintiffs therefore request that the Court grant the First Motion for Discovery. ECF No. 122.

**BACKGROUND**

On June 8, 2022, Defendants produced an AR to Plaintiffs and, beginning June 22, 2026, Plaintiffs have asked Defendants to complete the AR because it fails to include "all documents and materials directly or indirectly considered by the agency decisionmakers" including "evidence contrary to the agency's position." ECF No. 123-3, 1–2. In correspondence, Plaintiffs specifically identified categories of documents missing from the AR including documents relied upon by Defendants in designing and implementing the reductions-in-force (RIFs) and reorganization, such as briefing materials, organizational charts, analyses of statutorily-mandated duties of subagencies to be impacted; documents shared by members of DOGE, OPM, and OMB with members of HHS to aid in the design of the RIFs and reorganization which were disclosed in Defendants' public statements and testimony. ECF No. 123-3, 2–6; ECF No. 123-5, 1–5. Further, while the AR identifies four reasons for Defendants' actions (i.e., to save taxpayer money, to "combat waste, fraud, and abuse in federal health programs," to "implement the Make America Healthy Again goal of ending the chronic disease epidemic," and to "mak[e] the agency more responsive and efficient," *see* ECF No. 123-10, NYvK-AR-000015–17), the AR includes no evidence, analysis, briefings, studies regarding, or basis for those reasons. Given the odd silence of the AR on these fundamental issues, Plaintiffs asked Defendants to disclose the scope and method of their search for documents and the identities of the agency decisionmakers. ECF No. 123-3, 3; 123-5, 2–3. Defendants continue to refuse to disclose who made the decision, *see* ECF No. 126, 13 fn. 5, 21 (calling the identity "irrelevant").

Defendants continued to assert that the AR was complete and also claimed that they had reviewed and were withholding an untold number of documents protected by one or more privileges. ECF No. 123-6, 1. Defendants said that documents "protected by the deliberative process privilege are not required to be placed on a privilege log," and that no log would be made because "all documents withheld by Defendants as attorney-client or work-product protected are also protected under the deliberative process privilege." ECF No. 123-6, 2.

Having reached an impasse, Plaintiffs moved this Court to intervene and order the AR be completed with missing documents that were, in fact, before decisionmakers at the time of the decision; to supplement the AR and order extra-record discovery so the court may effectively review the agency decision and the proffered explanations for their action; and to order Defendants to provide a privilege log so their blanket assertion of the Privilege may be verified. ECF No. 122.

## ARGUMENT

### I. Defendants' Arguments Not to Complete the AR Fail.

The AR is incomplete, and Defendants have offered no real dispute that it does not contain (as it must) all documents that agency decisionmakers "directly or indirectly considered." *Roe v. Mayorkas*, No. 22-cv-10808, 2024 WL 5198705, at *7 (D. Mass. Oct. 2, 2024). First by its own terms, the AR identifies the employees terminated as part of the challenged RIFs, ECF No. 123-8, NYvK-AR-000206–367, as well as the subagencies and regional offices Defendants closed, merged and created (only by including the high-level summary in the March 27 Press Release). *Id.* at NYvK-AR-00015–22. But the AR includes no facts, materials, or analyses relied upon by any decisionmaker that would allow this Court to discern how those employees, subagencies, and regional offices were selected. *See* ECF No. 122, 9–11. The AR shows OPM and OMB reviewed

and approved the proposed RIF plans, ECF No. 123-10, NYvK-AR-000102–205, but the AR lacks any document showing OPM and OMB responding to, commenting on, or approving those plans.

External evidence further shows the AR omits documents considered by decisionmakers. Public sources attached to Plaintiffs' Motion show, and Defendants do not dispute, that members of DOGE worked closely with Defendants to design the RIFs and reorganization by providing informational documents, including an organizational chart presented by Elon Musk to Secretary Kennedy, ECF No. 122, 12–16, but the AR does not mention DOGE. The absence of documents that have been made public in other settings is strong evidence that the AR is incomplete.[1] Defendants do not meaningfully dispute that and choose, instead, to argue that they are entitled to a presumption of regularity in this case and that Plaintiffs seek post-decisional documents that are not properly in the record. Both arguments fail.

**A. Defendants Are Not Entitled to the Presumption of Regularity.**

Defendants argue the AR should not be completed by seeking the protection of the presumption of regularity. ECF No. 126, 6–7. But the AR is replete with obvious *irregularities*, and Plaintiffs have identified several categories of documents that were before the agency at the time the decision was being reviewed that were not included in the AR. ECF No. 122, 6 & 17 (citing *Mayorkas*, 2024 WL 5197805, at *7, *8). Defendants cannot proffer an obviously deficient AR, waffle on the decision date while also claiming that some categories of documents cannot be included because they are post-decisional, and still reap the benefit of the presumption of regularity. *Authors Guild v. Nat'l Endow. for the Hums.*, No. 25-cv-3657, 2025 WL 3678097, at

[1] Plaintiffs do not simply seek the inclusion of documents made public in other settings but instead seek *all* omitted documents. The omissions that have become public are referenced herein as evidence of incompleteness and the inadequacy of the procedures used by Defendants to gather and compile the AR.

*12 (S.D.N.Y. Dec. 18, 2025) ("Where the record omits materials that were before the agency decisionmakers, the presumption of regularity gives way, and the court cannot meaningfully discharge its duty of review under the APA.").

Defendants take the (improbable) position that the current AR is complete because "the relevant decision is the March 27 press release announcing the planned RIFs and restructuring" and not the "plan" itself. ECF No. 126, 7. Defendants did not raise this position with Plaintiffs before this motion was filed, *see* ECF Nos. 123-4, 123-6, and cannot maintain the position in their own briefing; they give the game away by saying that the decision was "announced," not made, on March 27, 2025, ECF No. 126, 6 fn. 2; *see also id.* at 1 (Plaintiffs bring claims "against last year's reductions-in-force (RIFs) by the Department of Health and Human Services (HHS) and the planned restructuring of certain agency components announced at the same time"); ECF No. 52, 2 ("Plaintiffs lack standing to challenge the restructuring and RIFs."); *id.* at 26 ("[Plaintiffs] seek comprehensive judicial review of a planned restructuring outlined by a press release").

Defendants' position is belied by the AR they produced. If the agency did not decide to issue RIFs and reorganize until March 27, 2025, as Defendants implausibly suggest, then why had HHS requested approval from OMB/OPM for their RIFs two days earlier? *See* ECF No. 123-10, NYvK-AR-000102. This interpretation would also turn an already paper-thin AR even thinner. If documents on and after March 27, 2025, are excluded as "post-decisional," ECF No. 126, 7, then the AR has only seven documents that were before the agency at the time of decisionmaking. *See* ECF No. 119-1 (AR Index). Of those seven, two are guidance documents from the President, *id.* (Docs. 1–2), and one is an OMB/OPM guidance document regarding how to submit a RIF plan in accordance with Executive Order 14,210. *Id.* (Doc. 3). Both are documents from the executive that cannot be the sole basis for agency action. *See Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d

112, 145 (D.D.C. 2025) ("Even when 'implement[ing] an executive order,' agencies are bound by their APA obligations to 'analyz[e] the impacts, costs, and benefits of alternative policy options.'") (citing *State v. Su*, 121 F.4th 1, 16 (9th Cir. 2024)); *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 23 (D.D.C. 2026) ("If an agency could avoid the need to justify its decisions simply by gesturing to an Executive Order . . . the President could unilaterally eviscerate . . . the APA simply by issuing a carbon-copy executive order mandating that an agency act in a particular way before it does so.") (citing *Kingdom v. Trump*, No. 1:25-cv-691, 2025 WL 1568238, at *10 (D.D.C. June 3, 2025)); *Kingdom v. Trump*, 2025 WL 1568238, at *10 ("A command in an Executive Order does not exempt an agency from the APA's reasoned decision-making requirement. A decision supported by no reasoning whatsoever in the record cannot be saved merely because it involves an Executive Order.") (citing *Louisiana v. Biden*, 622 F. Supp. 3d 267, 294–95 (E.D. La. 2022)).

Another three documents are emails from Thomas Nagy (HHS) to OMB/OPM seeking approval of competitive groups which HHS *already* selected for RIFs and, thus, are not records the agency considered when making their decision. ECF No. 119-1 (Docs. 8, 9). In sum, if Defendants' dubious March 27 date-of-decision is applied, then the AR includes a total of **two documents** upon which the agency relied when making its decision to issue RIFs and reorganize the Department: *Administration for Children & Families, ACF Overview, FY25*, and *FDA Functions: Statutory Requirements and Mission Support*. *Id.* (Docs. 6–7). This Court has been consistent in its view that the challenged conduct is the decision to RIF and reorganize,[2] not the announcement alone, and Defendants' interpretation should be rejected.

---

[2] *See* ECF No. 113, 2 ("[T]his action involves a challenge brought by nineteen states and the District of Columbia seeking to invalidate Defendants' decision to overhaul HHS's structure and operations as an administrative agency."); ECF No. 89, 3 (enjoining Defendants from implementing the RIFs and restructuring "announced" in the March 27

Defendants are also wrong to claim Plaintiffs' arguments rest on documents that are "dated later" than the decision. ECF No. 126, 8. Plaintiffs have cited evidence of excluded documents and categories of documents which date as early as March 17, 2025, *see, e.g.,* ECF No. 122, 9–11, as well as evidence of DOGE's cooperation with Secretary Kennedy in selecting who would be RIFed and how the Department would be reorganized, *id.* at 13 (March 28, 2025, Secretary Kennedy interview on NewsNation).

**B. The AR Omits Categories of Documents Relied Upon by Agency Decisionmakers.**

Defendants' argument to exclude the Merit Systems Protection Board Record, ECF No. 123-7 (MSPB Record) from the AR also fails. When directing HHS to compile the MSPB Record, MSPB wrote "the agency must submit the following: . . . any authority relied upon by the agency in deciding to implement and in implementing the RIF." ECF No. 126-1, 5–6. The MSPB's direction further referred to issues central to the case at bar: " . . . Whether the agency had the legal authority for the RIF. Whether the Agency properly defined competitive Areas. Whether there was a transfer of function and, if so, whether the transfer of function regulations were followed . . . ." ECF No. 126-1, 5; *see also id.* (ordering production of "Any reorganization or other similar plans related to the actions taken in any of these appeals. If no such plans were prepared the agency must submit evidence of the agency-wide reorganization strategy that led to the RIF separations at issue in the appeals contained in this consolidation."). The AR must include all of these documents, as Defendants' decision to include them in the MSPB Record is sufficient proof to show they were considered by agency decisionmakers and will be relevant to this case. *See Mayorkas*, 2024 WL

---

Communiqué); ECF No. 73, 11 ("The States filed a Motion for Preliminary Injunction on May 9, asking this Court to enjoin the terminations and agency restructuring as announced in the March 27 Communiqué . . . .").

5198705, at *8 (rejecting the presumption of regularity where documents were omitted from the administrative record "and appear directly relevant to the issues and time period before this Court.").

Plaintiffs have offered specific documents that Defendants identified as before the agency at the time Defendants decided to issue RIFs and reorganize HHS. The court should order ECF Nos. 122-7 (MSPB Record) and 122-8 (Houry Emails) into the administrative record.

## II. Defendants' Arguments to Apply Deliberative Process Privilege Fail.

The Privilege only applies to documents that are "both predecisional and deliberative." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992). And, even in instances in which the Privilege could be applied, it is not an absolute privilege. *Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995) ("Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic."). Defendants do not contest that it was their burden to establish that the documents they seek to withhold are subject to the Privilege. They have not met that burden, and, separately, many of these documents have been made public and there are good reasons to set aside the Privilege in this case.

### A. Defendants Fail to Show, As They Must, That Withheld Documents are Both Deliberative and Predecisional.

Documents that are "informational," such as factual summaries, cannot be described as "deliberative." ECF No. 122, 20 (citing *Cobell v. Norton*, 213 F.R.D. 1, 6 (D.D.C. 2003) (informational material should be disclosed, and "must be disclosed," if severable from privileged information)); *see also New York v. McMahon*, 826 F. Supp. 3d 184, 197 (D. Mass. 2026) ("The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it,

which are not.”). As explained in Plaintiffs’ opening brief, ECF No. 122, 19–22, Defendants have not shown that the documents identified by Plaintiffs as missing from the AR are protected by the Privilege.

Defendants argue that documents are automatically “predecisional” where they communicate something “not yet final,” or are labeled “draft” and “Planning Use Only.” ECF No. 126, 10 (citing *U.S. Fish & Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 270 (2021)). But this argument misreads precedent. *See Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Dep’t of Homeland Sec.*, 291 F. Supp. 3d 69, 80 (D.D.C. 2018) (“The fact that the documents are drafts and contain edits does not, alone, qualify them for protection under the deliberative process privilege: they must be part of an articulated decision-making process.”). Defendants quote *U.S. Fish and Wildlife*, but omit a key passage immediately following that quotation, which anticipates an agency may hide a functionally final decision in a draft document, warning courts that “determining whether an agency’s position is final for purposes of the deliberative process privilege is a functional rather than formal inquiry.” 592 U.S. at 272–273.

Furthermore, the documents Defendants challenge as “drafts on the date(s) they were circulated,” all found in the Houry Emails, ECF No. 123-8, are plainly informational. ECF No. 126, 8–9. The “NIOSH and NCEH Essential Functions Options” document was created at the request of Matthew Buzzelli, Chief of Staff to Secretary Kennedy, who asked for “a list” of CDC programs regarding firefighters, miners, and “whatever program we administer that involves Lead.” *See* ECF No. 123-8 at 212 of 254 (page G5-8). In response, Sara Patterson, Defendants’ own declarant in this case, *see* ECF Nos. 70-1, 82-1, created and provided the requested list, *id.*; *see also* ECF No. 122, 11. And if “NIOSH lab closure/animal disposition memo” contains privileged material, then Defendants should produce the documents with redactions. *Cobell*, 213

F.R.D. at 6 ("[I]f the factual material is severable from the information protected under the privilege, the former must be disclosed."). Because Defendants have not shown that documents labeled or referred to as "drafts" are predecisional, they have failed to carry their burden of showing the documents qualify for the Privilege.

If the Court reaches Defendants' arguments that documents are "deliberative" sufficient to warrant Privilege protection, ECF No. 126, 11–12, the Court should still deny the application of the Privilege. Taking the following emails, which Defendants contend are protected by the Privilege, they are either post-decisional or informational, not both, and are therefore not protected by the Privilege:

- March 17 email, ECF No. 123-7 at 158 of 709. Email from Rachel Riley (DOGE) to Sara Brenner (FDA) includes factual summaries of "every office and FTE count in [Ms. Brenner's] division."

- March 18 email, ECF No. 123-7 at 57 of 709. Email from Jennifer Wade (FDA) to other members of FDA and then forwarded to Rachel Riley (DOGE): "FDA will first conduct a large-scale RIF and then realign functions and personnel to the new structure (implement on October 1, 2025)." The RIFs and "realignment" are not speculative—they "will" occur.

- March 19 emails, ECF No. 123-7 at 61–65 of 709. The email from Sara Brenner (FDA) to Jennifer Wade (FDA) describes functions that "[we] (NIH, CDC, FDA along with HHS)" viewed as opportunities for consolidation given the planned action. The email from Jennifer Wade (FDA) to Sara Brenner (FDA) includes detailed summaries of shared services changes with realigning security vetting as "the only change to our approach."

- March 22 email, ECF No. 123-7 at 54 of 709. Email from Jennifer Wade (FDA) to Rachel Riley (DOGE): "We will have a continued and ongoing need to have that SME support for statutory functions related to recalls and product information alerts, so we recommend that HHS staff this office based on this ongoing statutory requirement and critical need to issue information to consumers."

- March 30–31 emails, ECF No. 123-7, 66–67. Emails postdate the March 27 Press Release and speak to implementation of the already made decision to issue RIFs and reorganize the Department. They describe "our understanding of what IOS

> agreed to for the future state structure," while FDA can simply "decide to change the titles shown." The emails describe building "the formal reorganization package" as coming after the "agreed to . . . future state structure."

Defendants have failed to show, as they must, that the MSPB Record and Houry Emails are both predecisional and deliberative. The Privilege should not apply.

**B. In the Alternative, the Court Should Decline to Apply the Qualified Privilege.**

Even if the Court finds that Defendants have shown the proffered documents qualify for the Privilege, the Privilege is not absolute and the Court should decline it. Courts considering whether to apply the Privilege balance "'the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government.'" *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008) (quoting *Texaco P.R.*, 60 F.3d at 885); ECF No. 122 at 18–19. These interests favor disclosure especially where, as here, the documents are public and already before the court. ECF No. 122, 21; *see UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 349 (D.D.C. 2018) ("[A] document that was privileged as part of the deliberative process can lose its privilege when revealed outside the agency.").

Under *In re Pharmaceutical Industry Average Wholesale Price Litigation*, courts "consider" a non-exhaustive list of five "competing interests": "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." 254 F.R.D. at 40 (citing *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)). Plaintiffs need not prevail on all five interests for the balance of interests to

favor including the documents in the record. *See Mayorkas*, 2024 WL 5198705, at *6 (finding that the balance of interests "outweighs non-disclosure" due to the relevance of evidence, seriousness of litigation, and central role of government despite other potential sources of evidence and potential chilling effect on government employees); *see also Doe v. Noem*, No. 26-cv-2103, 2026 WL 1076334, at *2 (S.D.N.Y. Apr. 21, 2026) (finding in favor of disclosure due to the documents being "extremely relevant," "the 'seriousness' of the litigation," "the government's decision-making process is at the core of a Plaintiff's claims," and limited evidentiary alternatives, despite a potential chilling effect on government employees).

The government admits that factors (iii) and (iv) do not favor withholding documents. ECF No. 126, 13 fn. 4. Defendants' efforts to defend on the three remaining factors (the relevance of the evidence sought to be protected, the availability of other evidence, and the risk of timidity by government employees who will be forced to recognize that their secrets are violable) fail.

Under the first interest—the "relevance of the evidence sought to be protected"—Defendants claim "predecisional and deliberative documents are 'immaterial as a matter of law' when challenging agency action as arbitrary and capricious, and therefore are not relevant to the issue before this Court." ECF No. 126, 13 (quoting *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir 1998)). But *In re Subpoena*, 156 F.3d at 1279–80, is not so broad. Instead, that case holds that, for an APA arbitrary and capricious challenge, "the actual subjective motivation **of agency decisionmakers** is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior." *Id*. (emphasis added). In any event, the material that Plaintiffs seek is information upon which decisionmakers relied, and that is per se relevant in an APA action.

Defendants also argue that the evidence sought also immaterial because "this APA case does not turn on . . . whether the Government had knowledge of particular facts when it acted." ECF No. 126, 13. That, too, is plainly wrong, as "whether the Government had knowledge of particular facts" (here, the impact of the RIFs, the statutory functions performed by different units with HHS, and other factual matters) is central to the Plaintiffs' APA claims. *See Am. Fed'n. of Gov. Emps., AFL-CIO v. Trump*, No. 25-cv-03698, 2026 WL 2677331 (N.D. Cal. Sep. 11, 2026) (similar RIFs and reorganization at FEMA were contrary to law, in excess of statutory authority, and arbitrary and capricious—all in violation of the APA).

Additionally, Defendants do not contest the evidence may be relevant to any of Plaintiffs' other claims—claims about which *In re Subpoena* is silent—including that the RIFs and reorganization were contrary to law as they effectively stopped statutorily mandated work from being performed. Nor could they because the evidence is relevant. In an email, Sara Patterson, Defendants' own declarant in this case and Acting Chief Operations Officer of CDC, when speaking of the NIOSH mining program, wrote: "This work will not continue unless these [RIFed] individuals are reinstated." ECF No. 123-8 at 213–14 of 254 (page G5-8 through G5-9). And regarding the National Firefighter Registry for Cancer, employees had "unique and extensive knowledge" of relevant rules and medical standards and "were all riffed." *Id.*

Defendants fail to address the second interest, the "availability of other evidence," likely conceding that the interest favors disclosure. But given the paucity of evidence in the AR, *supra* Section I, and the obligation to rely on the administrative record in an APA case, there is every reason to lift the Privilege here so that the Court can review and base its decision upon the evidence the agency decisionmakers *actually* considered.

Under the last interest, "the possibility of future timidity by government employees," Defendants' counsel argue for protecting "open and frank discussion among those who make [agency discussions]" from disclosure. ECF No. 126, 13 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)). But they make no argument or showing that this factor is implicated here any more than it would be in any APA case. Nor could they: many of these deliberations have already been aired publicly by Defendant Secretary Kennedy, who has disclosed many internal matters and processes directly to the press. ECF No. 122, 13 (telling Chris Cuomo on NewsNation that Elon Musk and DOGE are "using AI to improve health, to improve efficiency, to improve delivery" at HHS); ECF No. 43, 4 ("In a later interview, [Secretary Kennedy] agreed that he could have gone 'line-by-line' to ensure he was terminating employees whose jobs were not necessary, but that such a careful approach 'took too long' and he would 'lose political momentum.'"); ECF No. 94, 16 (Secretary Kennedy tweeting that "We are streamlining HHS to make our agency more efficient and more effective. We will eliminate an entire alphabet soup of departments, while preserving their core functions by merging them into a new organization called the Administration for a Healthy America or AHA."); *id.* at 18 (Secretary Kennedy stating to reporters, "at DOGE, we talked about this from the beginning, is we're going to do 80% cuts, but 20% of those are going to have to be reinstated, because we'll make mistakes."); ECF No. 123-3, 4 (Secretary Kennedy stated during a Cabinet Meeting attended by the press: "We are, with Elon's help, eliminating the redundancies [at HHS].").

Rather, Defendants argue they did not "voluntarily disclose" the now-public MSPB Record and, therefore, the Privilege remains available. ECF No. 126, 14 (citing *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997)). But here again, Defendants stretch authorities beyond what they can support. The quoted passage from *In re Sealed Case* relates to the attorney-client privilege, not

the deliberative process privilege. ECF No. 126, 14. In any event, the MSPB Record is already public which mitigates against the decried "chilling effect." ECF No. 126, 13.

Ultimately, Defendants do not and cannot contest that many (if not all) of the *In re Pharmaceutical Industry Average Wholesale Price Litigation* factors favor lifting the Privilege here and requiring Defendants to produce these documents.

**C. A Privilege Log Remains Necessary.**

Defendants should be ordered to produce a privilege log in line with the "growing consensus among district courts" that one is appropriate where the Privilege is invoked. ECF No. 122, 21; *see Save the Colo. v. Spellman*, No. 18-cv-03258, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023) (citing Second Circuit, Fourth Circuit, Ninth Circuit, and D.C. district opinions ordering production of a privilege log where the Government asserted the Privilege). Courts have rejected Defendants' position that documents protected by the Privilege need not be logged as they are not within the record. *Save the Colo.*, 2023 WL 2402923, at *5 ("[T]his Court concludes privileged documents are not categorically excluded from the administrative record," and ordering a privilege log) (citation modified). Defendants contend that *Roe v. Mayorkas* "unequivocally state[s] that a privilege log is not required for deliberative documents not included in an administrative record." ECF No. 126, 16. This is not so. In *Roe v. Mayorkas,* the District Court concluded that, in the absence of binding authority and where Defendants had cured the omission of relevant documents from the administrative record, there was "no material irregularity sufficient to warrant the production of a privilege log for documents withheld." 2024 WL 5198705, at *11. Here, Defendants have steadfastly refused to cure omissions from the AR, and there are numerous irregularities that justify the production of a privilege log. *Supra* Section I. Without a privilege log,

Defendants remain at liberty to claim the privilege without enabling Plaintiffs or the Court to assess the claim.

**III. Defendants Concede the AR Does Not Disclose the Reason for the Challenged Action and, Instead, Ask the Court To Rule on the Record Without Supplementation.**

The First Circuit permits supplementation of the administrative record to facilitate a court's "comprehension of the record or the agency's decision" where there is a "failure to explain administrative action as to frustrate effective judicial review," *City of Taunton v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) (citation omitted), or where "there is a strong showing of bad faith or improper behavior," *Housatonic River Initiative v. EPA, New England Region*, 75 F. 4th 248, 278–79 (1st Cir. 2023) (citation modified). In this case, Defendants have produced an AR that is not only incomplete but also totally bereft of documents necessary to evaluate the stated reasons for the agency's action. ECF No. 122, 22–24. This Court should, therefore, order production of documents to supplement the record sufficient to "explain the reasoning behind their decision." ECF No. 122, 22–24; *see New York v. McMahon*, No. 25-cv-10601, Mem. and Order, ECF No. 229, 1–2 (D. Mass. Oct. 6, 2026) (the Court ordered supplementation because it "found that the administrative record contained 'virtually no reasoning' explaining the Department's decisionmaking and did not permit meaningful review of why particular employees were terminated, why particular offices were closed, or whether the Department considered relevant factors in implementing the RIF"). Defendants contend that Plaintiffs' request for supplementation is "unclear" as to whether it "seeks addition of materials the agency considered or addition of materials that the agency did not consider." ECF No. 126 at 18. The proposed discovery seeks both categories of material—all with the aim of ensuring that this Court will have an adequate record by which to judge the legality of the Defendants' actions. To the extent that materials were

considered, they should be included as records that complete the AR; if they were not considered, they should be included as records that supplement the AR.

Indeed, Defendants do not dispute that the AR fails to explain the action challenged in this lawsuit. Rather, to avoid producing the "whole record" as required, 5 U.S.C. § 706, Defendants ask the Court to issue a judgment on the record as-is, and, if the record does not support the agency's decision, simply remand to the agency. ECF No. 126 at 2, 6 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Such an outcome would unjustly deprive the Plaintiffs of their rights under the APA and tacitly endorse the grossly mishandled agency action underpinning this action.

Defendants' citation to *Florida Power & Light Co.* is inapposite as the Court did not review a request for the administrative record to be completed, supplemented, or for extra-record discovery. Instead, the Court only considered the statutory issue: whether a provision of the Hobbs Act granted exclusive jurisdiction to the courts of appeals to review the Nuclear Regulatory Commission's denial of a citizen petition without a hearing. *Fla. Power & Light Co.*, 470 U.S. at 731–35. In reaching its decision that exclusive jurisdiction for such appeals should rest in the courts of appeals, the Court noted that the reviewing court is not "generally" empowered to conduct a *de novo* inquiry into the matter being reviewed. *Id.* at 744. Defendants use select language in *Florida Power & Light Co.* to suggest that the court has no authority to order discovery beyond the agency's initial administrative record, but such an interpretation would undercut the doctrine of completion and supplementation of any administrative record and would ban extra-record discovery in all circumstances.

But any such summary judgment order issued on an incomplete record would be untethered to the documents that were actually before the agency, *Citizens to Preserve Overton Park v. Volpe*,

401 U.S. 402, 419–20 (1971), and would lack the guidance necessary for the agency to conform their practices when the action is sent back to it. *See New York v. Admin. For Children and Families*, No. 26-cv-00172, Order, ECF No. 155 (S.D.N.Y. Sept. 16, 2026) (A court "cannot conduct an appropriate review of an agency decision" if the agency has failed to "disclose the basis for its action.").

## IV. Extra-Record Discovery Is Necessary to Discern the Reason for the Challenged Action.

Defendants' stated reasons for the RIFs and reorganization (i.e., taxpayer savings, combating "waste, fraud, and abuse in federal health programs," "ending the chronic disease epidemic," and making the agency more responsive and efficient") are incompatible with the design of the RIFs and reorganization, which eliminated agencies that addressed precisely those problems. ECF No. 122 at 24–25. Rather, the list of employees who were RIFed and of subagencies that were completely eliminated indicates that the reason given does not explain the Defendants' decision. *Id.*

Defendants claim Plaintiffs have failed to make a "showing of bad faith necessary to justify extra-record discovery," ECF No. 126 at 16–18, but courts may infer bad faith where evidence suggests that the agency's explanation for its decision is pretextual. ECF No. 122 at 24–25. In *Department of Commerce v. New York*, the Secretary of Commerce reinstated a question about citizenship on the 2020 census because, he said, the Department of Justice requested it to improve its enforcement of the Voting Rights Act (VRA). 588 U.S. at 761. The district court ordered extra-record discovery based on a strong showing of bad faith, including that the VRA rationale was pretextual because the Secretary "had already decided to add the citizenship question" before the VRA rationale was provided by the Justice Department. *See New York v. U.S. Dep't of Com.*, 339

F. Supp. 3d 144, 150 (S.D.N.Y. 2018); *see also Dep't of Com.*, 588 U.S. at 782–783 (entire record, including extra-record evidence, ultimately "reveal[ed] a significant mismatch between the decision the Secretary made and the rationale he provided."); *see also McMahon*, 826 F. Supp. 3d at 201 (ordering extra-record discovery as "the goals stated in the AR of improving 'operational efficiency' and 'fiscal sustainability' are inconsistent with public statements that the RIF is intended to shut down the Department, return education to the states, and cut employees who the Department considers are not doing a good job.").

Here, Plaintiffs have offered far more than "mere allegations," ECF No. 126, 17–18, to show that the RIFs and reorganization stopped statutorily mandated work by gutting departments uniquely capable of its performance. ECF No. 122, 25 (listing targeted subagencies). Defendants' suggestion that "some statutorily mandated work is continuing post-RIFs," ECF No. 126, 17, is no replacement for discovery evidence upon which the Court can base its finding. *Dep't of Com. v. New York*, 588 U.S. at 785 ("The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise.) (quoted by *McMahon*, 826 F. Supp. 3d at 202); *see Authors Guild*, 2025 WL 3678097, at *15 (ordering extra-record discovery on a 27-document administrative record) ("The Court cannot meaningfully discharge its duty of review under the APA by accepting at face value an administrative record whose completeness or candor is in genuine doubt.").

Defendants seek to distinguish *McMahon*, saying that extra-record discovery was appropriate there because "the court found that the administrative record contradicted Defendants' public statements." ECF No. 126 at 18 fn. 7. But that reading marginalizes much of the court's fulsome analysis, *McMahon*, 826 F. Supp. 3d at 202 ("In this case, extra-record discovery is

warranted in order for the court to scrutinize the Agency's decision."), and contradicts the District Court's clear statements that its review must go beyond the administrative record because the record was threadbare. *McMahon*, Mem. and Order at 1–2 ("I found that the administrative record contained 'virtually no reasoning' explaining the Department's decisionmaking and did not permit meaningful review of why particular employees were terminated, why particular offices were closed, or whether the Department considered relevant factors in implementing the RIF."). The same is true here.

## V. The Proffered Discovery Requests are Narrowly Tailored.

The Court should deny Defendants' request that discovery be limited to "specific gap[s]" identified by the Court. ECF No. 126, 20–21. Defendants do not explain *how* Plaintiffs' proposed requests are overbroad, except by repeating many of their arguments about whether completion, supplementation, and extra-record discovery are permissible (as discussed above). Nor do they offer a narrowing principle or counter proposal that the court or Plaintiffs could apply. ECF No. 126, 21–22. Defendants argue that this Court should direct the parties to "meet and confer as to an appropriate manner and schedule for the production of information targeted at [] specific deficienc[ies]." *Id.* at 22. But Plaintiffs tried, repeatedly, to discuss the scope of discovery and Defendants refused to engage, instead taking the blanket position that no discovery was necessary. ECF Nos. 128-4, 128-6. Seeking the opportunity to meet and confer now, when they previously refused to engage in productive discussions, is gamesmanship that should not be rewarded.

## CONCLUSION

The Court should grant Plaintiffs' First Motion for Discovery, ECF No. 122, and order Defendants respond to the proffered discovery requests, ECF Nos. 123-1, 123-2; order ECF

Nos. 123-7 and 123-8, and the documents attached therein, added to the administrative record; and order Defendants serve a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5)(A).

Dated: October 23, 2026

Respectfully Submitted,

**NICHOLAS W. BROWN**
Attorney General of Washington

By: *<u>/s/ Spencer W. Coates</u>*
Spencer W. Coates
Kelsey E. Endres
*Assistant Attorneys General*
Cynthia Alexander
William McGinty
*Deputy Solicitors General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
spencer.coates@atg.wa.gov
kelsey.endres@atg.wa.gov
cynthia.alexander@atg.wa.gov
william.mcginty@atg.wa.gov

*Counsel for the State of Washington*

**LETITIA JAMES**
Attorney General for the State of New York

By: *<u>/s/ Molly Thomas-Jensen</u>*
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Andres Ivan Navedo
Molly Brachfeld
*Assistant Attorneys General*
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
jessica.ranucci@ag.ny.gov
ivan.navedo@ag.ny.gov
molly.brachfeld@ag.ny.gov

*Counsel for the State of New York*

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

*<u>By: /s/ Dorothea Calvano Young</u>*
Dorothea Calvano Young
(RI Bar No. 6661)
*Special Assistant Attorney General*
Kathryn M. Sabatini (RI Bar No. 8486)
*Chief, Civil Division*
Sarah W. Rice (RI Bar No. 10465)
*Deputy Chief, Public Protection Bureau*
Chandana Pandurangi (RI Bar No. 10922)
*Special Assistant Attorney General*

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: <u>/s/ *Alexa G. Salas*</u>
Alexa G. Salas
*Assistant Attorney General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Alexa.Salas@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400
Fax: (401) 222-2995
ksabatini@riag.ri.gov
srice@riag.ri.gov
dyoung@riag.ri.gov
cpandurangi@riag.ri.gov

*Counsel for the State of Rhode Island*

**ROB BONTA**
Attorney General for the State of California

By: /s/ Crystal Adams
Crystal Adams
*Deputy Attorney General*
Michael L. Newman
Neli Palma
*Senior Assistant Attorneys General*
Kathleen Boergers
Virginia Corrigan
Srividya Panchalam
*Supervising Deputy Attorneys General*
Jesse Basbaum
Jeanelly Orozco Alcala
*Deputy Attorneys General*
1515 Clay Street
Oakland, CA 94612-1499
(510) 879-3428
Crystal.Adams@doj.ca.gov
Michael.Newman@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Virginia.Corrigan@doj.ca.gov
Srividya.Panchalam@doj.ca.gov
Jesse.Basbaum@doj.ca.gov
Jeanelly.OrozcoAlcala@doj.ca.gov

*Counsel for the State of California*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ David Moskowitz*
David Moskowitz
*Deputy Solicitor General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General of the State of Connecticut

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: /s/ *Vanessa L. Kassab*

By: */s/ Michael K. Skold*
Michael K. Skold
Solicitor General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

*Counsel for the State of Connecticut*

Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew C. Mendrala*
Andrew C. Mendrala
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**KWAME RAOUL**
Attorney General of the State of Illinois

By: */s/ Caitlyn G. McEllis*

Caitlyn G. McEllis
Senior Policy Counsel
Katharine P. Roberts
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
Caitlyn.McEllis@ilag.gov

*Counsel for the State of Illinois*

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Margaret Machaiek*
Margaret Machaiek
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
August, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
margaret.machaiek@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Michael Drezner*
Michael Drezner
*Senior Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6959
mdrezner@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
HaidarD1@michigan.gov

*Counsel for the People of the State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 300-0711
Lindsey.middlecamp@ag.state.mn.us

*Counsel for the State of Minnesota*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Justine M. Longa*
Justine M. Longa
Jessica L. Palmer
*Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Justine.Longa@law.njoag.gov
Jessica.Palmer@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Anjana Samant*
Anjana Samant
Impact Litigation Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
acarrete@nmdoj.gov

**DAN RAYFIELD**
Attorney General of the State of Oregon

By: /s/ *Elleanor H. Chin*
Elleanor H. Chin
*Senior Assistant Attorney General*
100 Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
elleanor.chin@doj.oregon.gov

*Counsel for the State of New Mexico*

*Counsel for the State of Oregon*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

*Counsel for the State of Vermont*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (phone)
(608) 294-2907 (Fax)
Charlie.Gibson@wisdoj.gov

*Counsel for the State of Wisconsin*